**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

OTO ANALYTICS, INC. d/b/a WOMPLY,

                Plaintiff,

       v.

CAPITAL PLUS FINANCIAL, LLC, *et al.*,

                Defendants.

Civil Action No. 3:21-cv-2636-B


**THE BLUEACORN DEFENDANTS'**
**MOTION TO DISMISS IN FAVOR OF ARBITRATION**
**AND UNDER RULES 12(b)(2) AND 12(b)(6)**
**AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 5

I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE BLUEACORN
     DEFENDANTS ......................................................................................................... 5

     A.   Legal Standard ................................................................................................. 5

     B.   Womply Has Established neither General nor Specific Jurisdiction over the
          Blueacorn Defendants ..................................................................................... 6

II.  THE COURT SHOULD ENFORCE THE ARBITRATION CLAUSES AND DISMISS
     AS TO THE BLUEACORN DEFENDANTS ............................................................. 11

III. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS AS TO THE
     BLUEACORN DEFENDANTS FOR FAILURE TO STATE A CLAIM ...................... 14

     A.   Legal Standard ................................................................................................. 14

     B.   Fraud and Negligent Misrepresentation (Counts 3 & 4) .................................. 15

     C.   Breach of Oral Contract (Count 7) .................................................................. 18

     D.   Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 9) ...... 18

     E.   Civil Conspiracy (Claim 10) ............................................................................ 19

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019) .................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................14

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
  590 S.W.3d 471 (Tex. 2019) ............................................................................15, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................14, 19

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ............................................................................15, 18

*Brendel v. Meyrowitz*,
  No. 15-cv-1928-D, 2016 WL 302282 (N.D. Tex. Jan. 25. 2016) ...........................12

*Buckhorn v. St. Jude Heritage Med. Grp.*,
  18 Cal. Rptr. 3d 215 (Cal. App. 2004) ..................................................................12

*In re Capco Energy Inc.*,
  669 F.3d 274 (5th Cir. 2012) ................................................................................18

*Casa Herrera, Inc. v. Beydoun*,
  83 P.3d 497 (Cal. 2004) ......................................................................................18

*Conn Appliances, Inc. v. Williams*,
  936 F.3d 345 (5th Cir. 2019) ..................................................................................7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...............................................................................................6

*Def. Distrib. v. Grewal*,
  971 F.3d 485 (5th Cir. 2020) ..................................................................................5

*Domain Vault LLC v. Rightside Grp. Ltd.*,
  3:17-CV-0789-B, 2018 WL 638013 (N.D. Tex. Jan. 30, 2018) .............................13

*Dryer v. Los Angeles Rams*,
  709 P.2d 826 (Cal. 1985) ......................................................................................12

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
   948 F.3d 289 (5th Cir. 2020) ................................................................5

*EFund Cap. Partners v. Pless*,
   59 Cal. Rptr. 3d 340 (Cal. App. 2007) ...............................................12

*Elson v. Black*,
   No. H-20-2125, 2021 WL 2832971 (S.D. Tex. June 8, 2021)...............16

*Engalla v. Permanente Med. Grp., Inc.*,
   938 P.2d 903 (Cal. 1997) ...................................................................13

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*,
   673 P.2d 251 (Cal. 1983) .............................................................11, 13

*Formosa Plastics Corp. U.S. v. Presidio Eng'rs & Contractors*,
   960 S.W.2d 41 (Tex. 1998)................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)............................................................................6

*Griggs v. S.G.E. Mgt., L.L.C.*,
   905 F.3d 835 (5th Cir. 2018) .............................................................14

*Guidry v. U.S. Tobacco Co.*,
   188 F.3d 619 (5th Cir. 1999) ...............................................................8

*Guz v. Bechtel Nat'l, Inc.*,
   8 P.3d 1089 (Cal. 2000) ....................................................................18

*Hanson v. Denckla*,
   357 U.S. 235 (1958).......................................................................7, 11

*Janvey v. Alguire*,
   846 F. Supp. 2d 662 (N.D. Tex. 2011) ...............................................15

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*,
   546 S.W.3d 648 (Tex. 2018)..........................................................15, 16

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) ...............................................................8

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
   111 Cal. Rptr. 3d 876 (Cal. App. 2010)..........................................12, 13

*Monkton Ins. Servs., Ltd. v. Ritter*,
   786 F.3d 429 (5th Cir. 2014) ...............................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................................................... 11

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
   898 F.3d 461 (5th Cir. 2018) ........................................................................................ 17

*Rainey v. Citigroup, Inc.*,
   779 F. App'x 258 (5th Cir. 2019) ................................................................................. 13

*SEC v. Scammell*,
   No. 2:11-cv-6597 (C.D. Cal. Mar. 17, 2014) ............................................................... 15

*Thomas v. Westlake*,
   139 Cal. Rptr. 3d 114 (Cal. App. 2012) ................................................................. 12, 13

*Tigue Inv. Co. v. Chase Bank of Tex., N.A.*,
   No. 3:03-CV-2490-N, 2004 WL 3170789 (N.D. Tex. Nov. 15, 2004) ...................... 16, 17

*Trois v. Apple Tree Auction Ctr., Inc.*,
   882 F.3d 485 (5th Cir. 2018) ........................................................................................... 7

*United States v. Scammell*,
   No. 2:13-cr-733 (C.D. Cal. Aug, 7, 2014) .................................................................... 15

*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................................................... 9, 10

*Whiddon v. Chase Home Fin., LLC*,
   666 F. Supp. 2d 681 (E.D. Tex. 2009) .......................................................................... 16

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
   336 F.3d 375 (5th Cir. 2003) .............................................................................. 14, 16, 17

## <u>Statutes/Rules</u>

9 U.S.C. § 2 ....................................................................................................................... 12

Fed. R. Civ. P. 12(b) ...................................................................................................... 5, 14

Fed. R. Civ. P. Rule 9(b) .............................................................................................. 16, 17

## INTRODUCTION

The essence of this action is Plaintiff Womply's claim that it is owed fees under two related written agreements.  Womply and Movant-Defendant BA Fin Orion, LLC d/b/a Blueacorn ("Blueacorn") were both in the business of helping bring lenders and small-business owners together to apply for pandemic-relief loans under the federal government's Paycheck Protection Program (PPP).  In May 2021, near the end of the program, Womply entered into two contracts with Blueacorn under which Womply would process and refer PPP loan applications to Blueacorn so that Blueacorn could submit them to one or more of the lenders with which Blueacorn worked. Through this collaboration, Blueacorn was able to help Womply's applicants obtain needed loans at a time when the overall PPP fund that was available to Womply's own lending partners had been exhausted, but a fund available specifically to community development financial institutions (CDFIs)—Blueacorn's lending partners—remained open.  The contracts provided that Womply would earn a fee on the referred loans, to be paid after Blueacorn was itself paid by its associated lenders.

Blueacorn received hundreds of thousands of Womply-referred applications, and, after applying Blueacorn's own evaluation criteria, was able to help approximately 86,000 small businesses obtain loans from co-defendant Capital Plus, a CDFI small-business lender.  Capital Plus undisputedly owes Blueacorn fees in connection with those loans, but Blueacorn has not yet been paid.  For its part, Womply wants to be paid what it claims will be its share of those not-yet-received fees, even though its right to payment is not triggered until Capital Plus pays Blueacorn, making Womply's claim for breach of contract premature.

Womply commenced this action first against Capital Plus, Capital Plus's parent-company, and that parent-company's CEO (the "Capital Plus Defendants"), filing the suit in Texas because that is where Capital Plus and its parent-company are at home.  Womply demanded that the Capital

Plus defendants pay Womply its fees, even though Womply has no contractual relationship with, or right to direct payment from, any of them.

More recently, Womply has amended its complaint to add Blueacorn and Blueacorn CEO Barry Calhoun (together, the "Blueacorn Defendants"). Womply asserts a number of contract and non-contract theories to try to compel Capital Plus and Blueacorn to move faster in paying Womply's fees.

But Womply (a Delaware company headquartered in California) cannot sue Blueacorn (a Wyoming company headquartered in Arizona) or Calhoun (an Arizona resident) in this Texas court. There is no general jurisdiction over those non-resident defendants and Womply's claims against these defendants do not arise out of any activity that they directed at Texas. So Womply cannot obtain personal jurisdiction over the Blueacorn Defendants in this state. Moreover, even if personal jurisdiction existed, this suit would have to be dismissed in favor of arbitration under the parties' broad arbitration clause, which obligates Womply to arbitrate, in California, "any dispute between the parties related to the subject matter of this Agreement[.]" Finally, even absent those clear procedural bars, each of Womply's causes of action—whether sounding in tort or contract— fails to state a claim because none of them can surmount the problem that Womply and Blueacorn executed written agreements and, under those agreements, Blueacorn's payment obligation to Womply has not yet matured. Accordingly, Womply's claims against the Blueacorn Defendants should be dismissed.

## STATEMENT OF FACTS

The Small Business Administration's Paycheck Protection Program (PPP) was one of the federal government's flagship relief programs during the COVID-19 pandemic. Moving Defendant Blueacorn is a financial technology company that was founded to help small businesses—principally individuals and sole proprietorships—obtain loans under the PPP. Compl.

¶¶ 46, 98.  Co-defendant Capital Plus is a community development financial institution and an SBA-authorized PPP lender.  *Id.* ¶¶ 44-45.  Blueacorn acted as a service provider to Capital Plus (and to another, similar lender), earning fees by assisting Capital Plus and its customers in making and processing loan applications.  *Id*. ¶ 47.  Blueacorn's website and technology platform helped applicants gather and submit the information and documentation needed to apply for PPP loans. *Id*. ¶ 46.  Once the application information was collected, Blueacorn assisted Capital Plus in evaluating the applications, submitting them to the SBA, and ensuring that approved borrowers received their funds.  *Id*. ¶ 98.

Plaintiff Womply is a technology company that also offered services to potential borrowers intended to help them obtain PPP loans.  *Id.* ¶ 3.  In May 2021, Blueacorn simultaneously entered into two related contracts with Womply: the Womply Developer Order Form; and the PPP Loan Referral Agreement (together, the "Contracts").  *Id*. ¶ 61 & Ex. 3 & 4.  The Contracts allowed Womply to process and refer loan applications to Blueacorn so that Blueacorn could submit them to one of its associated lenders.  *Id*. ¶ 62.  The Contracts contemplated that Blueacorn would earn a fee from the lenders for its services and provided that, five days after receiving such a fee, Blueacorn would be obligated to pay a share of it to Womply.  Order Form §§ 3.3 & 3.5; Referral Agreement §§ 2.2 & 3.3; Compl. ¶¶ 63, 65.  The Contracts were solely between Blueacorn and Womply; no lender was a party to them or had any obligation under them.  *Id.* ¶¶ 56, 103.

The Contracts contain identical arbitration clauses, which state as follows:

> <u>Arbitration</u>. Without limiting a party's right to seek injunctive or other equitable relief in court, any dispute between the parties related to the subject matter of this Agreement will be resolved by binding arbitration in the English language in San Francisco County, California under the rules of JAMS; the decision of the arbitrator will be enforceable in any court. The prevailing party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees.

Order Form § 10; Referral Agreement § 10; Compl. ¶ 101.

The parties engaged in discussions leading up to the execution of the Contracts. Compl. ¶¶ 55-58. According to the Amended Complaint, on May 11, 2021, Blueacorn's CEO Barry Calhoun spoke by phone with Capital Plus's CEO Eric Donnelly and Womply's CEO Toby Scammell. *Id*. ¶ 58. The Complaint alleges that Womply expressed concern about how SBA fees would reach Blueacorn and then Womply; Womply received and supposedly relied on a representation that Blueacorn and Capital Plus would maintain a joint account that would receive the SBA fees and into which Womply would have visibility; but, ultimately, Womply was not given visibility into such an account. *Id*. ¶¶ 58, 73. The parties are not alleged to have discussed the arbitration provisions of the Contracts during that call (or during any other pre-execution communications described in the Amended Complaint). Although it was a full eight days before the Contracts were executed, no term or provision of the sort alleged by Womply appears anywhere in them, and each of the Contracts expressly provides that "this Agreement constitutes the entire agreement between the parties and supersedes any and all prior communications or agreements between them, whether written or oral, with respect to the subject matter hereof." *Id.* ¶ 59; Order Form § 16; Referral Agreement § 16.

Womply is alleged to have referred loan applications to Blueacorn under the Contracts, which Blueacorn in turn submitted to Capital Plus. Compl*, ¶¶ 55, 72, 166. Certain of these applications matured into funded PPP loans, entitling Capital Plus to the payment of fees from the SBA. *Id.* ¶ 72. Womply alleges that Capital Plus has received those fees. *Id.* ¶ 76*.* Blueacorn, however, has not been paid any of the amounts it is owed in connection with those loans. *Id.* ¶¶ 85, 94. Womply asserts that Blueacorn has an "obligation to pay Womply," but acknowledges

that the "timing of Blueacorn's payment to Womply" is set by the Contracts and does not come due until Blueacorn has, itself, been paid.  *Id.* ¶¶ 94-95.

ARGUMENT

**I.    THE COURT LACKS PERSONAL JURISDICTION OVER THE BLUEACORN DEFENDANTS**

The Blueacorn Defendants are not residents of Texas, nor is Womply.  Womply does not allege that any of its tort or contract claims arise from any activity directed at Texas by the Blueacorn Defendants, or that Womply suffered any injury in Texas.  Accordingly, under Federal Rule of Civil Procedure 12(b)(2), the Court should dismiss Womply's claims for lack of personal jurisdiction over the Blueacorn Defendants.

**A.    Legal Standard**

The party seeking to invoke the power of the court "bears the burden of establishing jurisdiction."  *Pervasive Software Inc. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.* 472 F.3d 266, 270 (5th Cir. 2006)).  In particular, to establish personal jurisdiction over non-resident defendants like Blueacorn and its CEO, Barry Calhoun, a plaintiff like Womply must demonstrate that (1) the long-arm statute of the relevant state (here, Texas) confers personal jurisdiction over the defendants, and (2) the exercise of jurisdiction comports with due process.  *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295-96 (5th Cir. 2020).  Because Texas's long-arm statute is coterminous with the limits of due process, these two requirements are the same; *i.e.*, the limits of due process control.  *Def. Distrib. v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020) (quoting *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019)).

Due process requires that in order for a court to exercise personal jurisdiction over a defendant, that defendant must have "certain minimum contacts with [the forum State] such that

the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 923 (2011)).   Functionally, the "conception of 'fair play and substantial justice'" is implemented by determining the presence or absence of one of "two categories of personal jurisdiction."  *Daimler*, 571 U.S. at 126.  A court may assert "*general* or *all-purpose* jurisdiction … over foreign … corporations to hear *any and all* claims against them when their affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home in the forum."  *Goodyear*, 564 U.S. at 919 (emphasis added).  "[*S*]*pecific* or *case-linked* jurisdiction[,] … on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum.…"  *Id*. (emphases added) (alterations and citations omitted).

### B.   Womply Has Established neither General nor Specific Jurisdiction over the Blueacorn Defendants

Womply does not contend that Blueacorn or Calhoun are subject to *general* personal jurisdiction in Texas.  Compl. ¶¶ 22-23.  A Court may exercise general jurisdiction only when a defendant is "essentially at home in the forum State."  *Daimler*, 571 U.S. at 122 (quoting *Goodyear*, 564 U.S. at 919).  A corporate defendant is "at home" in the states in which it is incorporated or has its principal place of business (*id.* at 137 & 139 n.19), while an individual defendant is subject to general personal jurisdiction in the state of his "domicile[.]"  *Id.* at 137.  Neither Blueacorn nor Calhoun are at home in Texas—the Complaint alleges that Calhoun is a resident of Arizona, and that Blueacorn is a Wyoming company with its principal place of business in Arizona.  Compl. ¶¶ 15-16.  This Court *does* have general jurisdiction over Capital Plus and its parent-company, *id*. ¶¶ 18, 19—which is no doubt why Womply originally filed its complaint against those defendants in Texas, before it changed course and decided to sue the Blueacorn

Defendants as well—but in order for Womply to maintain a suit against the Blueacorn Defendants in Texas, Womply needs to establish specific jurisdiction.

Womply has not carried its burden of establishing specific jurisdiction over Blueacorn and Calhoun, nor could it.  To establish specific jurisdiction, a plaintiff must show that the claims it is asserting against a defendant arise from "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Trois v. Apple Tree Auction Ctr., Inc*., 882 F.3d 485, 489 (5th Cir. 2018).  This means that the plaintiff must show (1) that the defendant has "purposefully directed [its] activities at the forum state" and (2) that the claim itself "results from alleged injuries that arise out of or relate to those activities."  *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347-48 (5th Cir. 2019) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power. Co*., 253 F.3d 865, 868 (5th Cir. 2001)).

Here, none of Womply's claims against the Blueacorn Defendants arise from activity by those defendants in Texas.  Womply asserts three *tort* claims, each of them naming Blueacorn *and* Calhoun:

| Count | Tort Claim Asserted | Blueacorn Defendants Named |
|---|---|---|
| Count 3 | Fraud | Blueacorn; Calhoun |
| Count 4 | Negligent Misrepresentation | Blueacorn; Calhoun |
| Count 10 | Civil Conspiracy[1] | Blueacorn; Calhoun |

Compl. ¶¶ 131-39, 140-48, 186-91.

---

[1] Civil conspiracy is not actually a cause of action but, rather, a theory of liability for other causes of action. *See infra* at III.E.

All three of these tort claims are expressly based on misrepresentations supposedly made by Calhoun to Womply's CEO "[o]n the May 11 Call" alleged to have taken place before the contracts between Blueacorn and Womply were executed. *Id*. ¶¶ 132, 141. But the Complaint does not allege that anyone on the call was in Texas, much less that Blueacorn or Calhoun themselves did anything that was purposefully directed at Texas with the intent to avail themselves of the benefits and protections of Texas's laws.[2] Nor does Womply claim to have suffered any injury in Texas. There is no alleged connection between the tort claims and Texas at all, much less one that would support personal jurisdiction over the Blueacorn Defendants. *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999); *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009) (specific jurisdiction turns on whether defendants "commit[ted] a tort within the state, or [committed] an act outside the state that cause[d] tortious injury within the state").

The other two claims for breach of contract are asserted *only* against Blueacorn:

| Count | Contract Claim Asserted | Blueacorn Defendant Named |
|---|---|---|
| Count 7 | Breach of Oral Contract | Blueacorn |
| Count 9 | Breach of Written Contract | Blueacorn |

Compl. ¶¶ 164-71, 178-85.

Count 7 alleges that, on that same May 11 call, Blueacorn entered into a "valid and enforceable oral contract" by supposedly promising to maintain a particular bank account and provide Womply with visibility into it. *Id.* ¶¶ 165-67. As discussed below, even as described by Womply, the conversation on May 11 did not form a contract. *See infra* at III.C. But in any event,

---

[2] To be clear, even if Womply could allege that one of the parties to the conversation participated from Texas, that would not confer specific jurisdiction over Blueacorn or Calhoun. *See, e.g., Monkton Ins. Servs., Ltd. v. Ritter*, 786 F.3d 429, 434-434 (5th Cir. 2014). But for present purposes, it is enough that Womply has not even alleged that much.

as with the tort claims that are likewise based on the May 11 call, Womply does not allege anything about that supposed oral contract or Womply's injury from the supposed breach thereof that involved Blueacorn directing activity at Texas.

The other contract cause of action against Blueacorn—Count 9's claim that Blueacorn breached the written Contracts' implied covenant of good faith and fair dealing—is the same. Compl. ¶¶ 178-85. The Contracts are between Womply ("a Delaware corporation," *id*. ¶ 11) and BA Fin Orion LLC d/b/a Blueacorn (a Wyoming company with its principal place of business in Arizona., *id*. ¶ 15).[3] Per the Contracts' choice of law provisions, they are each governed by California law. Order Form § 9; Referral Agreement § 9. And they each calls for disputes to be arbitrated "in San Francisco County, California." Order Form § 10; Referral Agreement § 10. Again, Womply has alleged nothing about the contracts that involved Blueacorn directing activity at Texas with the intent to avail itself of the benefits and protections of Texas's laws.

Womply ignores all of foregoing, instead offering only a single purported basis for the assertion of specific jurisdiction over the Blueacorn Defendants—the summary allegation that the Blueacorn Defendants "purposefully conducted activities in Texas, including through [their] business relationship with Capital Plus." Compl. ¶¶ 22-23. But this sole (and generic) reliance on the defendants' "business relationship" with a Texas resident is patently insufficient. As the Supreme Court has explained, although "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with … other parties" in that state, "*a defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction*." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (emphasis added); *see also Pervasive Software*, 688 F.3d at 222-23. In other words, it is only a defendant's "own affiliation with the State" that can support

---

[3] Womply does not address it in the Complaint, but Womply's principal place of business is California.

specific jurisdiction, not "contacts [the defendant] makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286. Because Womply has premised specific jurisdiction on something the Supreme Court has said categorically cannot support it—"a defendant's relationship with a … third party, standing alone," *id.*—it necessarily has not carried its burden.

Moreover, whatever relationship existed between Capital Plus and Blueacorn, it was not part of the Contracts. The Contracts are bilateral agreements solely between Womply and Blueacorn. Referral Agreement at 1 (introductory paragraph); Order Form at 1 (cover sheet/signature page). Specifically, they are each *service* contracts with *Womply* as the contractor or service provider to Blueacorn, and with Blueacorn's principal obligation simply to pay the designated amount if and when it comes due. Thus, under the Referral Agreement, the express purpose of the contract was "to establish *an independent contractor relationship whereby Womply provides referrals to Blueacorn* in connection with potential loan applicants seeking loans under the PPP from third-party lenders." Referral Agreement at 1 ("Whereas" clause) (emphasis added). Similarly, the Order Form agreement expressly identified Blueacorn as Womply's "Client," to whom Womply would provide the "Service" of collecting and transmitting information like "Tax Documents," "Bank Data," and "Identity" information from applicants. Order Form at 1 (cover sheet/signature page). Blueacorn had no obligation to do anything with the referrals and services Womply provided. Referral Agreement § 2.2 ("Blueacorn retains the right, in its sole and absolute discretion, to refuse to submit any Referred Loan to a third party lender for any reason."). Nothing about these bilateral service agreements in which a Delaware company headquartered in California agreed to provide services to a Wyoming company headquartered in Arizona gives rise to personal

jurisdiction over the latter in Texas, and Womply's single, generic jurisdictional allegation that Blueacorn had a relationship with a Texas lender does not change that.[4]

In sum, Womply has not alleged, nor could it, that either its tort or contract claims against the Blueacorn Defendants arise from "some act by which the defendant[s] purposefully avail[ed] [themselves] of the privilege of conducting activities within" Texas, "thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. Accordingly, Womply's claims against the Blueacorn Defendants should be dismissed for lack of personal jurisdiction.

## II.  THE COURT SHOULD ENFORCE THE ARBITRATION CLAUSES AND DISMISS AS TO THE BLUEACORN DEFENDANTS

The Federal Arbitration Act (FAA) reflects a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. California law, which governs the Contracts, similarly reflects a "strong public policy in favor of arbitration," under which "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 673 P.2d 251, 257 (Cal. 1983).

---

[4] Consistent with the fact that the focus of the Contracts was Womply providing services to Blueacorn, the Contracts neither mentioned Capital Plus nor contemplated that Blueacorn would submit applications to *any* particular lender. Instead, they referred generically to Blueacorn's "submission to third-party lenders of loans funded and created under the U.S. Small Business Administration ('SBA') Paycheck Protection Program (the 'PPP')," and described the potential lenders with generally applicable language like, "Blueacorn and Womply specifically acknowledge that any third-party lender retains ultimate responsibility for all loan decisions." Referral Agreement at 1 ("Whereas" clauses). Womply does not allege that Capital Plus was Blueacorn's only lending partner, nor could it. Indeed, over the course of the PPP, Blueacorn submitted the *majority* of its loans to a *different* CDFI, California-based Prestamos CDFI, LLC.

Here, the relationship between Womply and Blueacorn is governed by the Contracts, and the Contracts undisputedly contain (identical) arbitration clauses.[5]  The language of those clauses is broad, providing that "any dispute between the parties related to the subject matter of this Agreement will be resolved by binding arbitration[.]"  Order Form § 10; Referral Agreement § 10. Broad language like that of course renders contract claims arbitrable; it also renders claims that are "framed in tort" arbitrable "when they arise out of the contractual relationship between the parties."  *Dryer v. Los Angeles Rams*, 709 P.2d 826, 834 n.12 (Cal. 1985).  That includes claims of fraud, fraudulent inducement, and negligent misrepresentation.[6]  Such a clause is "enforceable" under the FAA, 9 U.S.C. § 2, and that is the end of the analysis as to Blueacorn.

Calhoun is also entitled to compel arbitration under the same broad clauses.  Where an "individual defendant" was "acting as agent[] for" the signatory to an arbitration clause, the agent is equally "entitled to the benefit of the arbitration provisions."  *Dryer*, 709 P.2d at 834; *see also, e.g.*, *Thomas v. Westlake*, 139 Cal. Rptr. 3d 114, 120 (Cal. App. 2012) ("agent of a party to an arbitration agreement" may "enforce the agreement even though … not a party thereto").  As CEO, Calhoun was and is Blueacorn's agent.  He signed the Contracts in that capacity, and Womply expressly alleges that the representations he is alleged to have made were on Blueacorn's "behalf."

---

[5] California law, rather than Texas law, governs interpretation of the arbitration clause under the California choice of law clause in the Contracts.  *Brendel v. Meyrowitz*, No. 15-cv-1928-D, 2016 WL 302282, at *4 (N.D. Tex. Jan. 25. 2016) (finding that "[u]nder the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied[]" in adjudicating whether there is an enforceable agreement to arbitrate).

[6] *See Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 111 Cal. Rptr. 3d 876, 892 (Cal. App. 2010) (fraud); *Brendel*, 2016 WL 302282, at *8 (fraud); *Buckhorn v. St. Jude Heritage Med. Grp.*, 18 Cal. Rptr. 3d 215, 218 (Cal. App. 2004) (fraudulent inducement); *EFund Cap. Partners v. Pless*, 59 Cal. Rptr. 3d 340, 350-51 (Cal. App. 2007) (negligent misrepresentation).

Compl. ¶¶ 132, 141.  Accordingly, he too may compel arbitration.  *Thomas*, 139 Cal. Rptr. 3d at 120.[7]

In its Complaint, Womply suggests that it may resist arbitration because its commitment to arbitrate was procured by fraud.  Compl. ¶¶ 102-03, 105.  Its claim of fraudulent inducement first of all fails in its entirety because, as laid out below, it lacks the necessary particularly.  *See infra* at III.B.  But it is anyway irrelevant because nothing in the Complaint suggests that the arbitration clauses in particular—as opposed to the Contracts generally—were procured by fraud. Under California law, "claims of fraud in the inducement of the contract (as distinguished from claims of fraud directed to the arbitration clause itself) will be deemed subject to arbitration." *Ericksen*, 673 P.2d at 257-58.  So Womply would have to "show that the asserted fraud claim goes specifically to the making of the agreement to arbitrate, rather than to the making of the contract in general."  *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 916-17 (Cal. 1997).

All of Womply's claims against the Blueacorn Defendants are therefore subject to arbitration, and Womply is contractually barred from continuing this action.   "[D]ismissal, as opposed to a stay pending arbitration, is proper" in these circumstances.  *Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 (5th Cir. 2019) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d

---

[7] Calhoun is also entitled to arbitrate under the doctrine of equitable estoppel, under which a "nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations." *Molecular Analytical*, 111 Cal. Rptr. 3d at 886; *see also Rowe*, 63 Cal. Rptr. 3d at 795 (claims that "rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable" pursuant to the equitable estoppel doctrine).  Womply's claims against Calhoun rely on and are intertwined with the Contracts.  Womply alleges that Calhoun made misrepresentations in order to induce Womply to enter the Contracts (Compl. ¶¶ 132-39, 140-48), and that on that basis he engaged in civil conspiracy with the other defendants (*id.* ¶¶ 186-90).  As in *Rowe*, Womply also seeks recovery under the Contracts for "more than $76 million in fees and finance charges due under the Agreements" for each cause of action alleged against Calhoun.  Compl. ¶¶ 139, 148, 190.  Womply may not invoke the Contracts as the basis for its claims against Calhoun while refusing to arbitrate those claims.  *Molecular Analytical*, 111 Cal. Rptr. 3d at 884.  *See also Domain Vault LLC v. Rightside Grp. Ltd.*, 3:17-CV-0789-B, 2018 WL 638013, at *5 (N.D. Tex. Jan. 30, 2018) (compelling arbitration under the doctrine of equitable estoppel and stating that "[plaintiff] cannot take advantage of the [contract] … then circumvent the burden of arbitration required by the [contract]."

---

**BLUEACORN DEFENDANTS' MOTION TO DISMISS IN FAVOR OF ARBITRATION**        **Page 13**

1161, 1164 (5th Cir. 1992) (internal quotations removed)); *see also Griggs v. S.G.E. Mgt., L.L.C.,* 905 F.3d 835, 839 (5th Cir. 2018) (similar).   The Court should dismiss as to the Blueacorn Defendants.

### III.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS AS TO THE BLUEACORN DEFENDANTS FOR FAILURE TO STATE A CLAIM

For the reasons set forth above, this Court lacks personal jurisdiction over the Blueacorn Defendants, and, even if it concludes it has jurisdiction, the case must be dismissed in favor of arbitration.   For the avoidance of doubt, Blueacorn first stands by its right to compel arbitration, does not waive that right, and does not believe that the Court should reach the merits of Womply's claims.   But in the alternative, if the Court does not dismiss on the prior two grounds, it should dismiss because Womply's claims against the Blueacorn Defendants are each fatally defective.

### A.   Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Although "the court accepts as true the well-pled factual allegations in the complaint," "conclusory allegations will not suffice."   *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (internal quotation marks and alterations omitted).   When "deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint."   *Id.*

### B.      Fraud and Negligent Misrepresentation (Counts 3 & 4)

Even assuming, as the Court must, the truth of allegations Womply makes about the May 11 call,[8] Womply's fraud claim fails for four reasons:  the claim is precluded by the Contracts' provisions disclaiming reliance on any pre-contract representations; it fails to allege a fraudulent statement with particularity; it lumps alleged misrepresentations together; and it fails to allege facts showing an intent to deceive.[9]

As to the first of these, Womply's fraud claim is precluded by the Contracts' negation-of-warranties clause.  "[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law."  *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 498 (Tex. 2019) (internal quotation marks omitted).   A direct contradiction occurs when reliance on a representation would "in effect read [the] provision out of the parties' agreement."  *Id.* at 500.  The Contracts each state that, excluding each other, "this Agreement constitutes the entire agreement between the parties and *supersedes any and all prior communications or agreements between them*, whether written or oral, with respect to the subject matter hereof."  Order Form § 16; Referral Agreement § 16 (emphasis added); *see also* Order Form § 3.5; Referral Agreement § 2.3 (providing that Blueacorn's payment obligations are triggered when "Blueacorn receives its fees from [] *the*

---

[8] It bears noting that Womply appears to base its self-serving allegations about what was said on the call on the account of its CEO, Toby Scammell, who has been prosecuted and convicted of securities fraud by the Department of Justice and is barred by the SEC from the participating in the securities industry. *See United States v. Scammell*, No. 2:13-cr-733 (C.D. Cal. Aug, 7, 2014); *SEC v. Scammell*, No. 2:11-cv-6597 (C.D. Cal. Mar. 17, 2014).

[9] The elements of a fraud claims are that "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018) (internal quotation marks omitted).   Courts in Texas presumptively apply Texas law, so Texas law will govern Womply's tort claims. *Janvey v. Alguire*, 846 F. Supp. 2d 662, 670-71 (N.D. Tex. 2011).  The Contracts' California choice-of-law provisions only reach "the construction and interpretation of the contract" and so do not cover tort claims.  *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003) (similarly worded choice of law clause).

---

*lender*" as opposed to the SBA (emphasis added)).  A "negation of warranties clause" like this contradicts all prior representations.  *See*, *e.g.*, *Orca Assets*, 546 S.W.3d at 599, 659-60 (so holding).  Womply, a sophisticated business, *see* Compl. ¶ 3, claims that it was defrauded because it relied on a supposed representation made in a May 11 phone call that appears nowhere within the four corners of subsequently executed Contracts that expressly state that they reflect the parties' entire agreement.  Allowing Womply to rely on such an alleged pre-contractual representation would "essentially eliminat[e] [the negation-of-warranties clause] from the agreement," and "require [Womply] to ignore the meaning of the [that] clause," *Barrow-Shaver*, 590 S.W.3d at 499.  That defeats its claim of fraudulent inducement.

Second, Womply's claim of fraud fails because it fails to allege a misrepresentation with the requisite particularity.  Rule 9(b) requires a fraud plaintiff to "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), which means the plaintiff must provide the "'who, what, when, where, and how' of the alleged fraud," *Willard*, 336 F.3d at 384 (internal citations omitted).  Womply does not allege what was purportedly said by anyone.  *See* Compl. ¶ 132.  It "merely alleg[es] the 'effect' of [the alleged] representations," which is insufficient.  *Elson v. Black*, No. H-20-2125, 2021 WL 2832971, at *2 (S.D. Tex. June 8, 2021). A general allegation that the defendant represented that a particular transaction "would be done" fails to "identify the … the specific content of the misrepresentations as required by Rule 9(b)." *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 691 (E.D. Tex. 2009).

Third, Womply impermissibly "'lumps together' the individuals accused of making fraudulent statements." *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. 3:03-CV-2490-N, 2004 WL 3170789, at *1 (N.D. Tex. Nov. 15, 2004).  Its Complaint claims that both Calhoun and Capital

Plus collectively made the same representation, but each alleged false statement must be identified with particularity.  *Id.*  Womply's claim of fraud should therefore be dismissed under Rule 9(b).

Fourth, and finally, Womply fails to allege facts showing an intent to deceive.  "[T]o adequately plead *scienter*, a plaintiff must set forth specific facts that support an inference of fraud."  *Willard*, 336 F.3d at 385 (internal quotation marks omitted).  Where intent is pled on information and belief, the plaintiff must "set forth a *factual basis* for such belief."  *Id.*  (internal quotation marks omitted).  The complaint here alleges that the Blueacorn Defendants made an oral representation that Blueacorn would hold a joint account with Capital Plus into which SBA fees would be received and into which Womply would have visibility, and that those things did not happen.  Compl. ¶ 132.  But even a broken promise is not fraud unless there was a present intention not to honor it.  *Formosa Plastics Corp. U.S. v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 48 (Tex. 1998).  On that score, Womply says only that "[o]n information and belief, Defendants did not intend to give Womply visibility into the Joint Account" and that "Defendants did not intend to directly deposit into the Joint Account the SBA fees that Capital Plus received for Womply-referred PPP loans."  Compl. ¶¶ 134, 136.  But these bare, conclusory allegations are not supported by allegations of fact: Womply does not allege the information on which its belief is founded.  For all of these reasons, Womply fails to state a claim for fraud.

These same reasons require dismissal of Womply's negligent misrepresentation claims. The elements of fraud and negligent misrepresentation are largely the same.  *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 474 (5th Cir. 2018).  And Rule 9(b)'s "heightened pleading requirements" apply when "fraud and negligent misrepresentation claims are based on the same set of alleged facts."  *Benchmark*, 343 F.3d at 723.  Womply's negligent

misrepresentation claim relies on the same allegations as the fraud claim, so it should be dismissed for the same reasons.

### C.      Breach of Oral Contract (Count 7)

Womply asserts a contract claim arising out of an alleged oral contract formed on the May 11 call, before the Contracts were executed.  Any such oral agreement would be barred by the parol evidence rule, in light of the Contracts' merger and superseding clauses.  *See* Order Form § 16; Referral Agreement § 16; *see, e.g.*, *Casa Herrera, Inc. v. Beydoun*, 83 P.3d 497, 505 (Cal. 2004) ("the parol evidence rule, as a practical matter, provides 'absolute protection from liability' for prior or contemporaneous statements at variance with the terms of a written integrated agreement").  But in any event, Womply's allegations about what was said on the May 11 call are insufficient on their face to support its claim that an oral contract was formed. "[T]he existence of a valid contract," requires "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; [] (5) execution and delivery of the contract with intent that it be mutual and binding," and (6) "consideration."  *In re Capco Energy Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012).  Womply's allegations about the substance of the May 11 call, even if credited, satisfy none of these.  *See* Compl. ¶¶ 165-66.  They show at most a unilateral statement simpliciter, with no offer, no acceptance, no meeting of the minds, no mutual consent, no terms, no execution, and no consideration.

### D.      Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 9)

Womply's cause of action for breach of the written Contracts—Count 9—is based exclusively on the allegation that Blueacorn breached the covenant of good faith and fair dealing implied in the Contracts by "refus[ing] to initiate any action against Capital Plus to obtain payment."  Compl. ¶ 182.  While every contract imposes on the parties an implied duty of good

faith and fair dealing in its performance, that implied duty "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000). The Contract imposes no duty on Blueacorn to sue Capital Plus at all (and certainly imposes no duty to race to court immediately, years before the expiration of any conceivable statute of limitations, rather than attempting to pursue a consensual resolution). Womply's implied covenant claim therefore fails.

### E.      Civil Conspiracy (Claim 10)

"[C]ivil conspiracy is a theory of vicarious liability and not an independent tort." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019); *see id.* (discussing elements). Because civil conspiracy is not a cause of action, Womply's civil conspiracy claim should be dismissed. Womply also fails to plausibly allege a conspiratorial agreement. As *Twombly* holds, to allege a wrongful conspiracy, a complaint must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. The Complaint, however, offers only the bare conclusion that "[a]t all relevant times, Defendants Capital Plus, Crossroads, Donnelly, Blueacorn, and Calhoun conspired together, acted in concert, and came to a mutual understanding to commit the tortious and unlawful actions alleged herein." Compl. ¶ 189. That is insufficient to plausibly allege a conspiracy, and this count should be dismissed.

### CONCLUSION

For the foregoing reasons, Womply's claims against the Blueacorn Defendants should be dismissed for lack of personal jurisdiction, in light of the parties' agreement to arbitrate, and in the alternative, for failure to state a claim. Further, pursuant to the Contracts' fee-shifting provision (§ 10), the Court should award "costs and attorneys' fees" to Blueacorn.

Dated: January 24, 2022

Respectfully submitted,

/s/ *Penny P. Reid*

Penny P. Reid
Texas Bar No. 15402570
preid@sidley.com
Claire Homsher
Texas Bar No. 24105899
chomsher@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave No. 2000
Dallas, Tex. 75201
(214) 981-3300
(214) 981-3400 (facsimile)

Michael A. Levy
(*pro hac vice* to be filed)
mlevy@sidley.com
Christopher M. Egleson
(*pro hac vice to* be filed)
cegleson@sidley.com
Katelin Everson
(*pro hac vice* to be filed)
keverson@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, N.Y. 10019
TEL: (212) 839-5300
FAX: (212) 839-5599

*Attorneys for the Blueacorn Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on this day, January 24, 2022.


/s/ *Penny P. Reid*
Penny P. Reid