IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OTO ANALYTICS, INC. d/b/a WOMPLY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-2636-B |
| | § | |
| CAPITAL PLUS FINANCIAL, LLC, | § | |
| CROSSROADS SYSTEMS, INC., ERIC | § | |
| DONNELLY, BA FIN ORION, LLC d/b/a | § | |
| BLUEACORN, and BARRY CALHOUN | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF WOMPLY'S MEMORANDUM OF LAW IN OPPOSITION TO THE
BLUEACORN DEFENDANTS' MOTION TO DISMISS**

Alexander L. Cheney (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
One Front Street
San Francisco, CA 94111
(415) 858-7400
acheney@willkie.com

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

Nina Cortell
Texas Bar No. 04844500
Jason P. Bloom
Texas Bar No. 24045511
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
(214) 651-5000
jason.bloom@haynesboone.com
nina.cortell@haynesboone.com

*Attorneys for Plaintiff Oto Analytics, Inc.
d/b/a Womply*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................4

    A.    Blueacorn Partners with Texas-Based Capital Plus. ...................................4

    B.    Blueacorn Proposes that Womply Provide PPP Loan Referral and
Technology Services to Blueacorn and to Capital Plus in Texas. ..........................6

    C.    Blueacorn and Capital Plus Make Material Misrepresentations to Induce
Womply to Contract with Blueacorn and Agree to Arbitrate Disputes. .................7

    D.    Blueacorn Coordinates Closely with Capital Plus in Texas to Review,
Process, and Fund More Than 86,000 Womply-Referred PPP Loans....................9

    E.    Blueacorn and Capital Plus Refuse to Pay Fees to Womply. ...............................10

ARGUMENT ...................................................................................................................11

I.     THIS COURT HAS PERSONAL JURISDICTION OVER THE BLUEACORN
DEFENDANTS. ..........................................................................................................11

II.    THE ARBITRATION PROVISION IN THE AGREEMENTS IS NOT
ENFORCEABLE BECAUSE IT WAS OBTAINED BY FRAUD. .................................15

    A.    Agreements to Arbitrate Obtained by Fraud Are Not Enforceable. ......................15

    B.    Blueacorn Defrauded Womply Into Agreeing to Arbitrate. ..................................16

III.   THE BLUEACORN DEFENDANTS' MOTION TO DISMISS IS MERITLESS. .........19

    A.    The Amended Complaint Alleges Fraud and Negligent Misrepresentation
with Particularity.....................................................................................................19

    B.    The Amended Complaint Adequately Pleads that Blueacorn Breached Its
Oral Contract with Womply.....................................................................................22

    C.    The Amended Complaint Adequately Pleads that Blueacorn Breached the
Duty of Good Faith and Fair Dealing. ...................................................................23

    D.    The Amended Complaint Adequately Pleads that the Blueacorn Defendants
Conspired with Capital Plus, Crossroads, and Donnelly. .....................................24

CONCLUSION.................................................................................................................25

CERTIFICATE OF SERVICE .........................................................................................27

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Adams v. Unione Mediterranea Di Sicurta,*
220 F.3d 659 (5th Cir. 2000) ........................................................................4, 11, 12

*Aetna Cas. & Sur. Co. v. Met. Baptist Church,*
967 F. Supp. 217 (S.D. Tex. 1996) ...............................................................22

*Amerigas USA, LLC v. Standard Capital SA, Inc.,*
2021 WL 5052658 (N.D. Tex. Nov. 1, 2021) .................................................15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................19

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,*
748 F.3d 631 (5th Cir. 2014) .........................................................................5

*Bridgewater v. Double Diamond-Del., Inc.,*
2010 WL 1875617 (N.D. Tex. May 10, 2010) ................................................21

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006) ......................................................................................16

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)........................................................................................11, 13

*Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.,*
214 F.3d 1030 (9th Cir. 2000) .......................................................................22, 23

*Calder v. Jones,*
465 U.S. 783 (1984) ......................................................................................13

*Campanile Invs. LLC v. Westmoreland Equity Fund LLC,*
2019 WL 2213877 (W.D. Tex. May 22, 2019) ...............................................16, 18

*Cent. Freight Lines Inc. v. APA Transport Corp.,*
322 F.3d 376 (5th Cir. 2003) .........................................................................11

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs.,*
497 F.3d 546 (5th Cir. 2007)  ........................................................................19

*City of Hollister v. Monterey Ins. Co.,*
165 Cal. App. 4th 455 (2008) ........................................................................23, 24

*Comcast Corp. v. Houston Baseball Partners LLC*,
    627 S.W.3d 398 (Tex. App. 2021) .......................................................................25

*Corchado v. Foulke Mgmt. Corp.*,
    2016 WL 2727268 (D.N.J. May 6, 2016) .......................................................18, 19

*Corchado v. Foulke Mgmt. Corp.*,
    707 F. App'x 761 (3d Cir. 2017) ....................................................................16, 19

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .............................................................................................11

*D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*,
    754 F.2d 542 (5th Cir. 1985) ..........................................................................11, 13

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681 (1996) .............................................................................................16

*Domain Vault LLC v. Rightside Grp., Ltd.*,
    2017 WL 4298133 (N.D. Tex. Sept. 28, 2017).....................................................18

*Domingo v. Mitchell*,
    257 S.W.3d 34 (Tex. App. 2008) ..................................................................22, 23

*Elson v. Black*,
    542 F. Supp. 3d 556 (S.D. Tex. 2021) .................................................................21

*Engalla v. Permanente Med. Grp.*,
    938 P.2d 903 (Cal. 1997) .....................................................................................19

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
    623 F. Supp. 2d 798 (S.D. Tex. 2009) ...........................................................24, 25

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*,
    673 P.2d 251 (Cal. 1983) .....................................................................................16

*Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)..........................................................................................14

*Grant v. Houser*,
    469 F. App'x 310, 315 (5th Cir. 2012) ................................................................15

*Guidry v. U.S. Tobacco Co.*,
    188 F.3d 619 (5th Cir. 1999) ..........................................................................13, 14

*Guz v. Bechtel Nat'l, Inc.*,
    8 P.3d 1089 (Cal. 2000) .......................................................................................24

*Huckaba v. Ref–Chem, L.P.*,
   892 F.3d 686, 688 (5th Cir. 2018) ....................................................................15

*In4Network, Inc. v. Univ. of S. Cal.*,
   2004 WL 957693 (Cal. Ct. App. May 5, 2004) ...................................................20

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
   341 S.W.3d 323 (Tex. 2011).............................................................................20

*Jackson v. Royal Caribbean Cruises, Ltd.*,
   389 F. Supp. 3d 431 (N.D. Tex. 2019) .................................................3, 4, 15, 17

*Joe Hand Promotions, Inc. v. Martin*,
   2019 WL 111209 (N.D. Tex. Jan. 4, 2019) .........................................................19

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
   546 S.W.3d 648 (Tex. 2018)..............................................................................20

*KB Home v. Antares Homes, Ltd.*,
   2007 WL 1893370 (N.D. Tex. June 28, 2007) ....................................................18

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019)......................................................................................15

*Manderville v. PCG&S Grp.*,
   146 Cal. App. 4th 1486 (2007) ..........................................................................20

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) .............................................................................14

*Mumblow v. Monroe Broadcasting, Inc.*,
   401 F.3d 616 (5th Cir. 2005) .............................................................................20

*Pervasive Software Inc. v. Lexware BmgH & Co. KG*,
   688 F.3d 214 (5th Cir. 2012) .............................................................................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)..........................................................................................16

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ...............................................................................4

*Roberts v. Secure Stone, LLC*,
   2019 WL 3543614 (Cal. Ct. App. Aug. 5, 2019)..................................................23

*Rocha v. Macy's Retail Holdings, Inc.*,
   2017 WL 4399575 (W.D. Tex. Oct. 3, 2017) ......................................................16

*Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.*,
   2007 WL 914464 (N.D. Cal. Mar. 20, 2007)..........................................................16

*Sedillo ex rel. Filo & Fran Sedillo Revocable Tr. v. Team Techs., Inc.*,
   2020 WL 6870711 (N.D. Tex. Nov. 23, 2020).......................................................13

*Smal v. Fritz Cos., Inc.*,
   65 P.3d 1255 (Cal. 2003) .........................................................................................22

*Springs Indus., Inc. v. Am. Motorists Ins.*,
   137 F.R.D. 238 (N.D Tex. 1991) .............................................................................18

*Sutton v. Advanced Aquaculture Sys., Inc.*,
   621 F. Supp. 2d 435 (W.D. Tex. 2007)....................................................................11

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
   218 Cal. App. 4th 1230 (2013) ................................................................................23

*Trois v. Apple Tree Auction Ctr., Inc.*,
   882 F.3d 485 (5th Cir. 2018) ...................................................................................14

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................................14

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
   517 F.3d 235 (5th Cir. 2008) ...................................................................................14

*Webb v. Investacorp, Inc.*,
   89 F.3d 252 (5th Cir. 1996) .....................................................................................15

*West v. Quintanilla*,
   573 S.W.3d 237 (Tex. 2019).....................................................................................23

*Whiddon v. Chase Home Fin., LLC*,
   666 F. Supp. 2d 681 (E.D. Tex. 2009).....................................................................21

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
   336 F.3d 375 (5th Cir. 2003) ..............................................................................21, 22

**Statute, Regulation, and Rules**

9 U.S.C. § 4...............................................................................................................15, 19

13 C.F.R. § 103.1(d) .......................................................................................................5

Fed. R. Civ. P. 9(b) ......................................................................................................21

Fed. R. Civ. P. 12(b)(2)...............................................................................................1, 14

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 1, 4

**Other Authority**

4A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure
    § 1069.4 (4th ed. 2021) ......................................................................................................... 13

Plaintiff Oto Analytics, Inc. d/b/a Womply ("Womply") respectfully submits this memorandum of law in opposition to BA Fin Orion, LLC d/b/a Blueacorn's ("Blueacorn") and Barry Calhoun's ("Calhoun"; together, the "Blueacorn Defendants") Motion to Dismiss in Favor of Arbitration and under Rules 12(b)(2) and 12(b)(6) ("Motion" or "Br."; ECF No. 31).

## PRELIMINARY STATEMENT

In response to the COVID-19 pandemic, Congress enacted the Paycheck Protection Program ("PPP") to provide federally guaranteed and potentially forgivable loans to businesses. The PPP was administered by the Small Business Administration ("SBA"), which paid private lenders generous "processing fees" to fund PPP loans. Many local and regional lenders, however, lacked the technological capabilities to process and manage such a large volume of loans on the PPP's highly expedited timetable, leaving many small businesses unable to obtain PPP loans. That problem was particularly acute for the smallest loans—often totaling just a few thousand dollars— which offered correspondingly lower processing fees to lenders.

Plaintiff Womply is a technology company that played a pivotal role in ensuring the success of the PPP for these smallest loans. In 2021, Womply invested enormous resources to create the technology infrastructure for lenders that removed these structural barriers to PPP participation by offering lenders an integrated, turnkey technology solution. Numerous lenders contracted with Womply to refer PPP loans to the lender and/or for the technology services that Womply offered. All told, Womply's lender partners funded more than 1.4 million PPP loans to small businesses, totaling more than $20 billion in principal amount.

Defendants Capital Plus Financial, LLC ("Capital Plus") (a lender) and Blueacorn (loan-service provider to Capital Plus) took full advantage of Womply's loan referral and technology services. As detailed in the Amended Complaint ("Am. Compl."; ECF No. 20), Womply entered into two agreements with Blueacorn: one agreement was to provide Capital Plus and Blueacorn

with PPP loan referrals, and the other agreement was to provide Capital Plus and Blueacorn with technology services. By using Womply's services, Capital Plus funded more than 86,000 PPP loans, for which it received more than $186 million in processing fees from the SBA. Under its agreements with Blueacorn, Womply is entitled to more than $76 million in fees plus more than $7.6 million in finance charges that continue to accrue on the delinquent fees. But neither Blueacorn nor Capital Plus has paid Womply a nickel of what it is owed. As the first page of Blueacorn's Motion acknowledges (Br. 1), none of this is in dispute.

Blueacorn nonetheless claims that it owes Womply nothing, because Capital Plus purportedly has not paid Blueacorn in connection with the Womply-referred PPP loans. But Capital Plus *has* paid Blueacorn more than $500 million in fees for *other* loans, and Blueacorn has not taken any meaningful steps to compel payment from Capital Plus for the Womply-referred loans. (Am. Compl. ¶¶ 9, 47, 96–100.) Indeed, Blueacorn and Capital Plus devised this purported impasse preventing payment to Womply—Capital Plus and Blueacorn induced Womply to enter into a contract only with Blueacorn based on the misrepresentation that Blueacorn would receive fees directly from the SBA. If that representation were true, Blueacorn would have received its fees and, as the Blueacorn Defendants admit, Blueacorn would be obligated to pay Womply directly. (Br. at 1.)

The Blueacorn Defendants contend that Womply cannot even seek relief against them in the same forum Womply is seeking relief against Capital Plus. Instead, the Blueacorn Defendants claim that Womply must pursue the Blueacorn Defendants in Arizona or in arbitration. These jurisdictional maneuvers are but the latest misguided attempt by the Blueacorn Defendants to avoid reckoning with its crystal clear obligations to Womply. The Blueacorn Defendants' efforts to seek dismissal on the merits are equally meritless.

*First*, this Court has personal jurisdiction over the Blueacorn Defendants. Contrary to Blueacorn's contention that it merely has "a relationship with a Texas lender" (Br. at 11), Blueacorn's contacts with Texas are substantial. Blueacorn has a very large and nearly exclusive partnership with Capital Plus[1]—which indisputably is "at home" in Texas (*id.* at 1)—and serves as Capital Plus's "Lender Service Provider," making Blueacorn the "agent" of Capital Plus under SBA regulations. Indeed, Capital Plus credits its partnership with Blueacorn for the "windfall" Capital Plus received from funding more than ***470,000 PPP loans*** totaling more than ***$7.6 billion***.

What is more, the contracts between Blueacorn and Womply have substantial relationships with Texas, and the Blueacorn Defendants engaged in fraudulent conduct that had effects in Texas. As discussed below, numerous contemporaneous emails, text messages, and chats show that Capital Plus and the Blueacorn Defendants coordinated closely on the negotiation of the agreements, and that the Blueacorn Defendants made fraudulent misrepresentations to Womply to induce it to enter into the agreements. These records also show that the Blueacorn Defendants acted on Capital Plus's behalf to implement the terms of the agreements. Womply referred PPP loan applications to Blueacorn as the contracts required, and Blueacorn, after conducting its own review of the loan applications, then referred ***all*** of the more than 86,000 Womply-referred PPP loans to Capital Plus ***in Texas***. All of this roots Blueacorn's business firmly in Texas soil and the jurisdiction of this Court.

*Second*, the arbitration provisions on which the Blueacorn Defendants rely were procured through fraud and therefore are unenforceable as a matter of law. The Blueacorn Defendants bear the burden of proving, on a "summary judgment standard," a valid agreement to arbitrate. *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–44 (N.D. Tex. 2019). Womply has

---

[1] Blueacorn concedes that it provides services to just one other lender. (Br. at 3.)

submitted with this Opposition sworn declarations, emails, text messages, and chats demonstrating that the Blueacorn Defendants fraudulently induced Womply to agree to arbitrate. Specifically, Blueacorn and Capital Plus falsely represented that they had a joint account into which the SBA would pay fees directly, and that they would provide Womply with visibility into that joint account. Moreover, the declaration of Womply's CEO establishes that he relied on those representations and would not have otherwise agreed to arbitrate disputes with Blueacorn because it would not make business sense to agree to arbitrate disputes with a counterparty that did not hold the disputed funds. The Blueacorn Defendants did not submit *any* evidence with their Motion and therefore cannot carry their burden.

*Third*, Womply's claims against the Blueacorn Defendants easily survive a Federal Rule of Civil Procedure 12(b)(6) motion. The Amended Complaint alleges every one of the Blueacorn Defendants' misrepresentations and false promises in detail, including references to particular emails, telephone calls, and messages. Those specific allegations are more than sufficient to adequately plead claims for fraud, negligent misrepresentation, breach of contract, and civil conspiracy.

## BACKGROUND[2]

### A.    Blueacorn Partners with Texas-Based Capital Plus.

Blueacorn was created in April 2020 to refer and service PPP loans for two lenders, one of which is Texas-based Capital Plus. (Am. Compl. ¶¶ 9, 46, 60; Crossroads Jan. 11, 2021 press

---

[2] "In determining personal jurisdiction, a court is not restricted to a review of the plaintiff's pleadings," and "may resolve a jurisdictional issue by receiving affidavits . . . or any recognized form of discovery." *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000). Similarly, when considering whether the parties agreed to arbitrate, courts "must go beyond [the] pleadings" and consider "evidence in the record." *Jackson*, 389 F. Supp. 3d at 445–46. "[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). "The court

release (APP'X 4–5); Blueacorn June 9, 2021 press release (APP'X 8–9); June 27, 2021 *N.Y. Times* article (APP'X 22–26); Crossroads July 8, 2021 letter (APP'X 27–31); Jan. 14, 2022 *ProPublica* article (APP'X 44–51).) Blueacorn is a "Lender Service Provider" to Capital Plus (Blueacorn June 9, 2021 press release (APP'X 8–9)) and therefore is Capital Plus's agent under SBA regulations. *See* 13 CFR § 103.1(d) ("Lender Service Provider means an Agent . . . .").

Capital Plus is a Community Development Financial Institution located in Bedford, Texas that specializes in residential mortgage lending in North Texas. (Am. Compl. ¶¶ 12, 44–45; Jan. 12, 2021 *Dallas Business Journal* article (APP'X 6–7); Capital Plus, "About Us" (APP'X 76–77); Crossroads 2021 Annual Report (APP'X 52–75).) In January 2021, Capital Plus partnered with Blueacorn to originate PPP loans. (Am. Compl. ¶ 46; Crossroads Jan. 11, 2021 press release (APP'X 4–5); Jan. 12, 2021 *Dallas Business Journal* article (APP'X 6–7); Blueacorn June 9, 2021 press release (APP'X 8–9); June 17, 2021 *N.Y. Times* article (APP'X 22–26); Crossroads July 8, 2021 letter (APP'X 27–31).) Before the PPP, Capital Plus provided loans only to borrowers in Texas. (Am. Compl. ¶ 44; Crossroads 2021 Annual Report (APP'X 56).) Through its partnership with Blueacorn, Capital Plus funded more than 470,000 PPP loans totaling more than $7.6 billion in principal amount, which generated more than $1 billion in revenue for Capital Plus. (Am. Compl. ¶¶ 5, 50–54; Crossroads July 8, 2021 letter (APP'X 27–31); Crossroads 2021 Q3 disclosures (APP'X 32–43); Crossroads 2021 Annual Report (APP'X 52–75); Jan. 14, 2022 *ProPublica* article (APP'X 44–51).) Blueacorn took in at least $314 million in fees from Capital

---

may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). All internal quotations, citations, and alterations are omitted unless otherwise indicated.

Plus in the quarter ending on April 30, 2021. (Am. Compl. ¶ 47; Crossroads 2021 Q2 disclosures (APP'X 10–21); June 17, 2021 *N.Y. Times* article (APP'X 22–26).)

### B.   Blueacorn Proposes that Womply Provide PPP Loan Referral and Technology Services to Blueacorn and to Capital Plus in Texas.

Womply is a technology company that was founded in 2011 to help small businesses. (Am. Compl. ¶¶ 3, 39; Declaration of Toby Scammell ("Scammell Decl.") ¶¶ 2–4 (APP'X 78–79).) In 2020, Womply created a website through which potential PPP borrowers could enter their own information and upload documents to apply for PPP loans for free, and Womply would refer that information to lenders. (Am. Compl. ¶¶ 3, 39; Scammell Decl. ¶¶ 6–10 (APP'X 79–80).) In February 2021, Womply launched a technology platform that provided (i) a borrower-facing internet portal, called "PPP Fast Lane," through which PPP loan applicants could enter their loan information and upload documents for free; and (ii) a lender-facing portal that gave lenders the tools to process, manage, and track PPP loans, and incorporated numerous integrated technology services that allowed lenders to collect, verify, and analyze the information and documentation provided by applicants (the "Technology Platform"). (Am. Compl. ¶¶ 3, 40–42; Scammell Decl. ¶¶ 11–13 (APP'X 81).) Using the Technology Platform, Womply's lender partners funded more than 1.4 million PPP loans to small businesses totaling more than $20 billion. (Am. Compl. ¶ 3; Scammell Decl. ¶ 15 (APP'X 82).)

In early May 2021, Blueacorn's CEO, Barry Calhoun, texted Womply's CEO to propose that Womply refer PPP loan applicants to Capital Plus through Blueacorn. (Am. Compl. ¶ 55; Scammell Decl. ¶¶ 17–23 (APP'X 82–84) Exs. 2–6 (APP'X 101–10); Declaration of Cory Capoccia ("Capoccia Decl.") ¶ 4 (APP'X 198).) Under Calhoun's proposal, Womply would contract with Blueacorn and provide both Blueacorn and Capital Plus with access to Womply's Technology Platform. (*Id.*) In return, Womply would receive fees from Blueacorn for the Womply-

referred PPP loans that Capital Plus funded and managed through Womply's Technology Platform.

(*Id.*)

### C.  Blueacorn and Capital Plus Make Material Misrepresentations to Induce Womply to Contract with Blueacorn and Agree to Arbitrate Disputes.

The accompanying Declarations of Toby Scammell, Womply's CEO, and Cory Capoccia, Womply's President, detail the contract negotiations among Blueacorn, Capital Plus, and Womply and include relevant emails, text messages, and chats. Those materials establish that the Blueacorn Defendants have substantial contacts with Texas, including by negotiating and executing the contracts at the center of this lawsuit, which required Womply to provide referral and technology services to Capital Plus in Texas. Those records also show that there were detailed discussions among Womply's, Blueacorn's, and Capital Plus's CEOs regarding key contract issues:

- On May 9, 2021, at 6:00 PM, Womply's CEO emailed Defendant Calhoun that "[i]f our agreements aren't with Capital Plus directly, I think we'd just want an email from them confirming they understand the high level structure and economics." Womply never received the requested email. (Am. Compl. ¶ 57; Scammell Decl. ¶ 25 (APP'X 84) Ex. 8 (APP'X 114–16).)

- On May 9, 2021, at 10:56 PM, Womply's CEO emailed Defendant Calhoun requesting a "clear line of sight to the funds," and noted that Blueacorn's representative "mentioned that we would have visibility into [the] FBO account with Evolve." Defendant Calhoun responded that he would "get this done," but did not do so. (Am. Compl. ¶ 57; Scammell Decl. ¶ 26 (APP'X 84–85) Ex. 9 (APP'X 117–18).)

- On a May 11, 2021 telephone call, Defendants Calhoun and Eric Donnelly ("Donnelly"), Capital Plus's CEO, represented to Womply's CEO that Blueacorn would pass all Womply-referred PPP loans to Capital Plus for origination. (Am. Compl. ¶ 58; Scammell Decl. ¶ 33 (APP'X 86–87); Capoccia Decl. ¶ 11 (APP'X 200).)

- On that same call, Calhoun and Donnelly represented that (i) Blueacorn and Capital Plus had a joint account at Evolve Bank & Trust into which all fees received from the SBA for PPP loans funded by Capital Plus were deposited directly; (ii) the SBA fees for all Womply-referred PPP loans funded by Capital Plus would be deposited directly into the joint account; and (iii) Blueacorn and Capital Plus would provide Womply with visibility into the joint account so that Womply could verify when Blueacorn and Capital Plus received funds from the SBA. After the call, Defendant Donnelly emailed Womply's CEO that he was "glad we were able to connect today and look forward to working together." (*Id.*; Scammell Decl. ¶ 34 (APP'X 87) Ex. 16 (APP'X 128).)

- Womply never received any visibility into the purported joint account. (Am. Compl. ¶ 73; Scammell Decl. ¶ 56 (APP'X 93).)

- On May 12, 2021, Womply's counsel emailed Blueacorn's counsel that "Blue Acorn is acting as the lender service provider on behalf of Capital [Plus]," and asked "[h]ow do you typically ensure in these agreements that Capital [Plus] will fulfill its rev[enue] share obligations? Does Capital [Plus] sign as an additional party or otherwise provide a guarantee?" Blueacorn's counsel never answered these questions. (Scammell Decl. ¶ 37 (APP'X 88) Ex. 14 (APP'X 124–26).)

- On August 13, 2021, Defendant Calhoun stated by Signal message that Blueacorn and Capital Plus have a joint account into which SBA fees are deposited, but did not give Womply any visibility into the purported joint account. (Am. Compl. ¶¶ 87, 133–37; Scammell Decl. ¶ 72 (APP'X 97) Ex. 45 (APP'X 194).)

On May 19, 2021, Womply executed two agreements with Blueacorn: a PPP Loan Referral Agreement, dated May 10, 2021 (the "Referral Agreement"), and the Womply Developer Order Form, dated May 10, 2021 (the "Order Form"; together, the "Agreements"). (Am. Compl. ¶¶ 59, 61 Exs. 3–4; Scammell Decl. ¶ 54 (APP'X 93) Ex. 32 (APP'X 151–64).) The Agreements contain an arbitration provision that Womply agreed to in reliance on Blueacorn's and Capital Plus's representations that fees Capital Plus received from the SBA would be deposited into a joint account with Blueacorn and that Womply would have visibility into that account. (Am. Compl. ¶¶ 101–02; Scammell Decl. ¶¶ 55–56 (APP'X 93).) As detailed in the declaration of Womply's CEO, (i) he "sought to ensure that Womply had a clear line of sight to funds in any dispute resolution process"; (ii) he "agreed that Womply would arbitrate disputes under the Agreements with Blueacorn because Calhoun and Donnelly represented to [him] that Blueacorn and Capital Plus had a Joint Account into which the SBA would pay loan processing fees directly, and that Womply would have visibility into that Joint Account"; (iii) these representations "gave [him] assurance that Womply would be able to obtain fees directly from Blueacorn, and that Capital Plus would not be able to withhold funds from Blueacorn"; (iv) he "would not have agreed that Womply would arbitrate disputes with Blueacorn under the Agreements if Calhoun and Donnelly did not

make these representations"; and (v) "[i]t would not make business sense to agree to arbitrate disputes with a counterparty that did not have funds, because that counterparty would not be able to satisfy any arbitral award." (Scammell Decl. ¶ 56 (APP'X 93); *see id.* ¶ 14 (APP'X 82); Capoccia Decl. ¶¶ 5, 12 (APP'X 198, 200–01); Am. Compl. ¶¶ 102–05.)

### D. Blueacorn Coordinates Closely with Capital Plus in Texas to Review, Process, and Fund More Than 86,000 Womply-Referred PPP Loans.

Blueacorn acknowledges that it received PPP loan applications from Womply under the Agreements, and "after applying Blueacorn's own evaluation criteria, was able to help approximately 86,000 small businesses obtain loans from co-defendant Capital Plus." (Br. at 1.) Those loans totaled more than $950 million in principal amount. (Am. Compl. ¶ 72; Scammell Decl. ¶ 57 (APP'X 94); Capoccia Decl. ¶ 13 (APP'X 201).) Womply also provided both Blueacorn and Capital Plus with direct access to Womply's Technology Platform and technology services via their corporate email accounts. (Am. Compl. ¶¶ 5, 154, 166; Scammell Decl. ¶ 57 (APP'X 94); Capoccia Decl. ¶¶ 9–10 (APP'X 199–200) Exs. 3–4 (APP'X 215–18).) Among other benefits, Capital Plus received $186,882,948 million in fees from the SBA. (Am. Compl. ¶¶ 5, 72–76.) Blueacorn admits that "Capital Plus undisputedly owes Blueacorn fees in connection with those loans." (Br. at 1.)

Blueacorn coordinated closely with Capital Plus on the review, processing, and funding of the Womply-referred loans using the Womply Technology Platform. For example:

- On May 10, 2021, Womply created a private Slack chat channel called "ppp-fast-lane-blue-acorn" for four Womply employees and eight Blueacorn employees and contractors, including Calhoun, and provided Blueacorn personnel with access to Womply's Technology Platform. (Scammell Decl. ¶ 58 (APP'X 94) Ex. 33 (APP'X 165); Capoccia Decl. ¶¶ 9–10 (APP'X 199–200) Exs. 3–4 (APP'X 215–18).)

- On May 18, 2021, Blueacorn sent Womply via Slack chat "Capital Plus PPP Loan Documents" that would be provided to PPP loan applicants referred to Capital Plus. (Scammell Decl. ¶ 59 (APP'X 94) Ex. 34 (APP'X 166–73).)

- Also on May 18, 2021, Donnelly emailed Calhoun and others at Blueacorn and Capital Plus regarding a process for managing loans funded by Capital Plus referred through the "Womply portal." (*Id.* ¶ 60 (APP'X 94) Ex. 35 (APP'X 174); Capoccia Decl. ¶ 14 (APP'X 201) Ex. 5 (APP'X 107).)

- On May 19, 2021, Calhoun emailed Womply's CEO to "get a process in place to manage this stuff" among Capital Plus, Blueacorn, and Womply. (*Id.*)

- On June 2, 2021, Blueacorn sent Womply chats about a promissory note for a particular PPP loan borrowers titled "Loan by Lender, Capital Plus Financial, LLC to Borrower." Blueacorn wrote that "[w]e have approval on PROM note" for this particular borrower, using "we" to refer to both Blueacorn and Capital Plus. (Scammell Decl. ¶ 62 (APP'X 95) Ex. 37 (APP'X 176–77).)

- On June 9, 2021, Blueacorn sent Womply a chat stating that "we will process additional fundings," and clarifying that "*we = Cap Plus." (*Id.* ¶ 64 (APP'X 95) Ex. 39 (APP'X 179–80).)

### E.  Blueacorn and Capital Plus Refuse to Pay Fees to Womply.

Womply is currently owed $76,724,482.67 for the services it provided to Blueacorn and Capital Plus under the Agreements, plus more than $7.6 million in financing charges that continue to accrue, but Womply has not received any payments from Blueacorn or Capital Plus. (Am. Compl. ¶¶ 79, 96, 192; Scammell Decl. ¶ 74 (APP'X 97); Capoccia Decl. ¶ 23 (APP'X 204).) Blueacorn and Capital Plus are acting in concert in the hopes of avoiding paying Womply. (*Id.*) Womply sent invoices to Blueacorn on July 1, July 21, and August 4, 2021, but did not receive any payments. (Am. Compl. ¶¶ 77–78; Scammell Decl. ¶¶ 67–71 (APP'X 96–97) Exs. 42–44 (APP'X 187–93); Capoccia Decl. ¶¶ 16–22 (APP'X 202–03) Exs. 7–11 (APP'X 222–31).) Contrary to its representations that it has a joint account with Capital Plus into which the SBA deposited fees, Blueacorn claims that it has not received payment from Capital Plus and therefore is not required to pay Womply. (Br. at 1; Am. Compl. ¶¶ 85–87, 94–95; Scammell Decl. ¶ 70 (APP'X 96) Ex. 42 (APP'X 187–91).) Blueacorn, however, refuses to initiate any action against Capital Plus to obtain payment, and in fact asked Womply to drop its lawsuit against Capital Plus for no consideration in return. (Am. Compl. ¶¶ 96–97.) Blueacorn is hoping that Capital Plus

prevails in this action so Capital Plus will pay Blueacorn but Blueacorn will not have to pay Womply. (*Id.* ¶¶ 99–100.)

## ARGUMENT

## I.   THIS COURT HAS PERSONAL JURISDICTION OVER THE BLUEACORN DEFENDANTS.

This Court has personal jurisdiction over any party that has "minimum contacts" with Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). "When a nonresident defendant has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities,' the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant." *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Where, as here, there are claims for both "fraud and breach of contract," this Court has "jurisdiction over the entire matter where the same set of contacts gave rise to both the fraud and breach of contract claims." *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 441–42 (W.D. Tex. 2007) (citing *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542 (5th Cir. 1985)). "[T]he party seeking to assert jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Cent. Freight*, 322 F.3d at 380. "The court shall accept as true that party's uncontroverted allegations" and "resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction." *Id.*

Womply's contract claims against Blueacorn arise out of Blueacorn's substantial activities directed at Texas, easily satisfying the requirements for specific personal jurisdiction.[3] Blueacorn's

---

[3] Contrary to the Blueacorn Defendants' assertions (*see* Br. at 9–11 & n.4), this Court's jurisdictional analysis is not limited to the pleadings and contracts. *See Adams*, 220 F.3d at 667 (permitting courts to "resolve a jurisdictional issue by receiving affidavits"). In addition, while this Court need not reach this issue, Blueacorn also is subject to general jurisdiction based on its extensive and sustained activities directed at Texas. Blueacorn provides services to just two

CEO texted, emailed, and called Womply's CEO to induce Womply to enter into the Agreements, pursuant to which Womply provided PPP loan referral and technology services to Capital Plus in Texas. (*See* Br. at 3–4; Scammell Decl. ¶¶ 17–25 (APP'X 82–84) Exs. 2–8 (APP'X 101–16); Capoccia Decl. ¶¶ 4–5, 11 (APP'X 198, 200); Am. Compl. ¶¶ 8, 55–59.) Blueacorn and Capital Plus together negotiated the Agreements with Womply, including by sending diligence lists and participating in joint telephone calls. (*See* Br. at 3–4, 8–9; Scammell Decl. ¶¶ 24–34 (APP'X 84–87) Exs. 7–16 (APP'X 111–28); Capoccia Decl. ¶¶ 8, 11 (APP'X 199–200) Ex. 2 (APP'X 212–14); Am. Compl. ¶ 58.) After the Agreements were executed, Blueacorn applied its "own evaluation criteria" to the more than 86,000 PPP loans Womply referred to Blueacorn under the Agreements, and then referred ***all*** of those loans to Capital Plus in Texas. (Br. at 1; Scammell Decl. ¶ 57 (APP'X 94); Capoccia Decl. ¶ 13 (APP'X 201); Am. Compl. ¶¶ 72, 166.) Blueacorn also acted on Capital Plus's behalf to implement the Agreements, including by sending PPP loan borrower promissory notes to Womply, coordinating with Womply about customer service inquiries, and negotiating with Womply the language to send to PPP loan applicants. (Br. at 1; Scammell Decl. ¶¶ 59–66 (APP'X 94–96) Exs. 34–41 (APP'X 166–86); Capoccia Decl. ¶¶ 14–15 (APP'X 201) Exs. 5–6 (APP'X 219–21); Am. Compl. ¶¶ 158, 169, 174.) Blueacorn further concedes that, as a result of the Agreements and Blueacorn's activities, Capital Plus funded more

---

lenders, one of which is Capital Plus in Texas. Although Blueacorn contends that it "submitted the majority of its loans" to a California-based lender (Br. at 11 n.4), the evidence shows that Blueacorn has received more than $314 million in fees from Capital Plus for services provided to the Texas-based lender. (*See supra* at 5–6.) As a result of Blueacorn's nearly exclusive relationship with Capital Plus and the services Blueacorn provided, Capital Plus funded more than 470,000 PPP loans totaling more than $7.6 billion in principal amount, making the Texas-based lender one of the largest PPP lenders in the country. (*Id.*) Moreover, Blueacorn is Capital Plus's Lender Service Provider, meaning it is Capital Plus's agent under applicable SBA regulations. (*Id.*) Under these circumstances, Blueacorn is subject to jurisdiction in this forum as if it were "at home" in Texas. (Br. at 1, 6.)

than 86,000 PPP loans—with a principal amount of nearly $1 billion—and incurred a debt to Blueacorn for services rendered. (Br. at 1.)

Because this "dispute grew directly out of a contract" between Womply and Blueacorn, "which had a *substantial* connection with" Texas—including "prior negotiations and contemplated future consequences," and "the parties' actual course of dealing"—this Court has personal jurisdiction over Blueacorn. *Burger King*, 471 U.S. at 479–80 (emphasis in original).[4] And, because Defendant Calhoun admits he "is Blueacorn's agent" and "Womply's claims against Calhoun rely on and are intertwined with the Contracts" (Br. at 12–13 & n.7), he is subject to personal jurisdiction in Texas for the same reasons as Blueacorn. *See* 4A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1069.4 & n.16 (4th ed. 2021).

This Court also has personal jurisdiction over the Blueacorn Defendants with respect to Womply's tort claims because "the facts relating to the contract and fraudulent inducement claims are intertwined." *Sedillo ex rel. Filo & Fran Sedillo Revocable Tr. v. Team Techs., Inc.*, 2020 WL 6870711, at *3 (N.D. Tex. Nov. 23, 2020) (quoting *D.J. Invs.*, 754 F.2d at 548).

The Court also has personal jurisdiction with respect to those tort claims because the Blueacorn Defendants "knowingly [] engaged in tortious activity outside the state that had an effect in the forum state." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 629 (5th Cir. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). The Blueacorn Defendants fraudulently (or, at the very least, negligently) induced Womply to enter into contracts that have had a substantial impact in Texas. (*See* Am. Compl. ¶¶ 5–9, 55–59, 72–79, 132–48; Scammell Decl. ¶¶ 17, 25–26, 33, 57, 67–72 (APP'X 82, 84–87, 94, 96–97); Capoccia Decl. ¶¶ 11–12 (APP'X 200–01).) Even the cases upon

---

[4] Contrary to the Blueacorn Defendants' assertions (*see* Br. at 8 & n.2), personal jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King*, 471 U.S. at 476 (emphasis in original).

which the Blueacorn Defendants rely recognize that conduct "outside the state that has consequences or effects within the states will suffice as a basis for [personal] jurisdiction." *Guidry*, 188 F.3d at 628–30 (collecting cases).[5] Because Blueacorn "has continuously and deliberately exploited [Texas's] market, it must reasonably anticipate being haled into [Texas] court[] to defend actions." *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021).

The Blueacorn Defendants' remaining authority (Br. at 9–11) supports this Court's exercise of personal jurisdiction. Courts lack personal jurisdiction only where a party "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" the forum state, *see Walden v. Fiore*, 571 U.S. 277, 289 (2014), or did "not promote, market, or sell its products inside Texas," *see Pervasive Software Inc. v. Lexware BmgH & Co. KG*, 688 F.3d 214, 218 (5th Cir. 2012). Here, by contrast, the Blueacorn Defendants conducted hundreds of millions of dollars of business in Texas, including through the Agreements with Womply.

Accordingly, the Blueacorn Defendants' Rule 12(b)(2) motion should be denied. At a minimum, this Court should permit jurisdictional discovery regarding, *inter alia*, Blueacorn's business relationship with Texas-based Capital Plus, including contracts, communications, and PPP loan information regarding persons or entities in Texas. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008) (reversing dismissal on personal jurisdiction grounds for "curtailing the amount of discovery that could be obtained").

---

[5] *See also Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489–92 (5th Cir. 2018) (reversing dismissal for lack of personal jurisdiction over Ohio defendant who was "a willing participant on a conference call who actively engaged in conversation regarding his business"); *McFadin v. Gerber*, 587 F.3d 753, 763 (5th Cir. 2009) (reversing dismissal for lack of personal jurisdiction over Colorado defendants who "purposefully directed" economic activity "in Texas" through a third party).

## II.   THE ARBITRATION PROVISION IN THE AGREEMENTS IS NOT ENFORCEABLE BECAUSE IT WAS OBTAINED BY FRAUD.

### A.   Agreements to Arbitrate Obtained by Fraud Are Not Enforceable.

"The first principle" of the Federal Arbitration Act ("FAA") "is that arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–16 (2019) (collecting cases). Accordingly, this Court first "must determine whether (1) the parties have a valid agreement to arbitrate and (2) whether the dispute at issue falls within the scope of the agreement." *Amerigas USA, LLC v. Standard Capital SA, Inc.*, 2021 WL 5052658, at *3 (N.D. Tex. Nov. 1, 2021) (Boyle, J.) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam)). "[T]here is 'no presumption in favor of arbitration when determining whether a valid arbitration agreement exists.'" *Id.* (quoting *Huckaba v. Ref–Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018)).

"A party seeking to compel arbitration must prove the existence of an agreement by a preponderance of the evidence." *Id.* at *2 (citing *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam)); *see* 9 U.S.C. § 4 (requiring that the court "be[] satisfied that the making of the agreement for arbitration . . . is not in issue").[6] On a motion to compel arbitration, courts "apply a summary judgment-like standard, giving deference to the claims of the non-movant." *Jackson*, 389 F. Supp. 3d at 443–44 (collecting cases). "[T]he moving party must first present evidence sufficient to demonstrate an enforceable agreement to arbitrate," and "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* at 445.

---

[6] The Blueacorn Defendants style their Motion a "Motion to Dismiss in Favor of Arbitration" without citing any statute or Rule supporting that characterization. Womply construes the motion as one to compel arbitration under the FAA. (*See* Br. at 11–12 (citing "the FAA" and seeking "to compel arbitration").)

"An arbitration agreement is unenforceable if a party fraudulently induced the provision in violation of state law." *Campanile Invs. LLC v. Westmoreland Equity Fund LLC*, 2019 WL 2213877, at *4 (W.D. Tex. May 22, 2019) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)), *aff'd*, No. 17 Civ. 337, ECF No. 152 (W.D. Tex. Sept. 13, 2019), *reconsideration denied*, 2019 WL 4577112 (W.D. Tex. Sept. 20, 2019), *aff'd*, 2020 WL 10051763 (W.D. Tex. Feb. 3, 2020). "Where the fraudulent inducement pertains to the agreement to arbitrate . . . it is for the court—not the arbitrator—to decide whether the agreement should be enforced." *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)); *see Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 673 P.2d 251, 253–56 (Cal. 1983) (adopting "the federal rule" of *Prima Paint*).[7] Where, as here, "the arbitration agreement at issue was procured by fraud," a motion to compel arbitration should be denied. *Campanile*, 2019 WL 2213877, at *7.[8]

### B.    Blueacorn Defrauded Womply Into Agreeing to Arbitrate.

Womply can defeat the Blueacorn Defendants' motion by "contest[ing] the opponent's proof or present[ing] evidence supporting the elements of a defense to enforcement." *Rocha v. Macy's Retail Holdings, Inc.*, 2017 WL 4399575, at *2 (W.D. Tex. Oct. 3, 2017).

Womply has submitted substantial evidence with this Opposition (*see supra* at 7–9) showing that Womply's agreement to arbitrate was obtained by fraud. That evidence includes

---

[7] The parties agree that the Agreements are governed by California law. (Br. at 12 n.5; Referral Agreement § 9; Order Form § 9.)

[8] *See also Corchado v. Foulke Mgmt. Corp.*, 707 F. App'x 761, 762 (3d Cir. 2017) (affirming denial of motion to compel arbitration where plaintiffs "specifically allege that they were fraudulently induced to sign the arbitration agreement"); *Santana Row Hotel Partners, LP v. Zurich Am. Ins. Co.*, 2007 WL 914464, at *3 (N.D. Cal. Mar. 20, 2007) (denying motion to compel arbitration where party "could plead facts which would support its claim that it was fraudulently induced into entering the Arbitration Agreement").

sworn testimony that, during a May 11, 2021 telephone call, Defendants Calhoun and Donnelly each represented to Womply's CEO that SBA fees for all Womply-referred PPP loans funded by Capital Plus would be deposited directly into a joint account between Blueacorn and Capital Plus, and that Womply would have visibility into the joint account. As Womply's CEO attests, Womply would not have agreed to arbitrate disputes with Blueacorn but for these representations. It would not make business sense to arbitrate disputes with a counterparty that did not have funds, he further explains, since that counterparty would not be able to satisfy any arbitral award. Womply submitted emails between Womply and Blueacorn showing that Womply sought a "clear line of sight to the funds" to "ensure in these agreements that Capital [Plus] will fulfill its rev[enue] share obligations," and Womply relied on representations it "would have visibility into an FBO account with Evolve." And Womply submitted messages between Defendant Calhoun and Womply's CEO showing that Defendants ultimately did not provide Womply with visibility into the joint account.

The Blueacorn Defendants, however, have not submitted *any* evidence with their Motion. Instead, they assert that "nothing in the Complaint suggests that the arbitration clauses in particular—as opposed to the Contracts generally—were procured by fraud." (Br. at 13.) That is demonstrably false. The Amended Complaint alleges that: (i) "Womply entered into the Arbitration Provision in reliance on Defendants Donnelly's and Calhoun's representations during the May 11 Call"; (ii) "Defendants Donnelly's and Calhoun's representations during the May 11 Call were false"; and (iii) "the Arbitration Provision was procured by fraud and is therefore unenforceable." (Am. Compl. ¶¶ 102–05.) Having failed to submit evidence in response to those allegations, and in light of the substantial evidence submitted by Womply, the Blueacorn Defendants cannot satisfy their burden to prove an enforceable agreement to arbitrate. *See Jackson*, 389 F. Supp. 3d at 443–45.

- 17 -

The recent decision in *Campanile* is instructive. The arbitration provision there provided that arbitration would occur in Miami, Florida; however, the defendant was "prohibited from entering the United States due to a criminal conviction and therefore has never been able to attend an arbitration in Miami, Florida." 2019 WL 2213877, at *4. The plaintiffs submitted declarations that they "agreed to arbitrate all disputes in Florida in reliance on the implicit representation by [defendant] that he was personally available to attend an arbitration in that state," and the defendant "did not inform Plaintiffs of his inability to enter the United States." *Id.* at *5. The court held that "Plaintiffs have established they were fraudulently induced to arbitrate their claims," because the defendant's "failure to disclose his inability to enter the United States in negotiating the arbitration agreement constituted fraud through the omission of material facts, the disclosure of which would have altered contract negotiations." *Id.* at *6–7.

Here, the record supporting a finding of fraud are even stronger. Whereas in *Campanile* the defendant committed fraud by omission, the Blueacorn Defendants affirmatively misrepresented that Blueacorn would receive funds directly from the SBA in a joint account and provide Womply with visibility into that account. As in *Campanile*, this misrepresentation rendered the arbitration provisions in the Agreements ineffective to accomplish arbitration's objective of providing prompt and meaningful relief.

The motion to compel arbitration should be denied.[9] At a minimum, this Court should permit discovery regarding arbitration and, if needed, hold an evidentiary hearing. *See Corchado*

_____

[9] The Blueacorn Defendants cannot "present[] dispositive evidence" "for the first time in a reply brief," which "deprives the nonmovant of a meaningful opportunity to respond." *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at *2 (N.D. Tex. June 28, 2007) (quoting *Spring Indus., Inc. v. Am. Motorists Ins.*, 137 F.R.D. 238, 239 (N.D Tex. 1991)) (striking and refusing to "consider the additional evidence submitted" on reply). This Court has held that the same standards "apply to motions to compel arbitration." *Domain Vault LLC v. Rightside Grp., Ltd.*, 2017 WL 4298133, at *1 (N.D. Tex. Sept. 28, 2017) (Boyle, J.).

- 18 -

*v. Foulke Mgmt. Corp.*, 2016 WL 2727268, at *1, *5 (D.N.J. May 6, 2016) (denying motion to compel arbitration where plaintiffs submitted "sworn statements" that "they were fraudulently induced" to arbitrate, and ordering "further discovery"), *aff'd*, 707 F. App'x 761 (3d Cir. 2017); 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").[10]

## III.   THE BLUEACORN DEFENDANTS' MOTION TO DISMISS IS MERITLESS.

"To survive a 12(b)(6) motion, 'enough facts to state a claim to relief that is plausible on its face' must be pled." *Joe Hand Promotions, Inc. v. Martin*, 2019 WL 111209, at *1 (N.D. Tex. Jan. 4, 2019) (Boyle, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." *Id.* (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)). Womply has pleaded all of its claims in detail, while the Blueacorn Defendants ignore or misread the facts alleged in the Amended Complaint.

### A.   The Amended Complaint Alleges Fraud and Negligent Misrepresentation with Particularity.

Womply alleges that the Blueacorn Defendants fraudulently (or at least negligently) induced Womply to enter into the Agreements, causing Womply significant damages. (Am. Compl. ¶¶ 131–48.) The Blueacorn Defendants raise four arguments in response. None has merit.

*First*, the Blueacorn Defendants assert that "Womply's fraud claim is precluded" by a "negation-of-warranties clause." (Br. at 15–16.) A negation-of-warranties clause provides that a

---

[10] *See also Engalla v. Permanente Med. Grp.*, 938 P.2d 903, 922 (Cal. 1997) (affirming that "there is evidence to support the Engallas' claims that Kaiser fraudulently induced Engalla to enter the arbitration agreement," and remanding to "resolve conflicting factual evidence in order to properly adjudicate Kaiser's petition to compel arbitration").

contract "is made without warranties of any kind, either express or implied." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 651 (Tex. 2018). The Blueacorn Defendants invoke Section 16 of the Agreements, *but those are not negation-of-warranties clauses*. Instead, Section 16, titled "Entire Agreement," provides that "this Agreement constitutes the entire agreement between the parties and supersedes any and all prior communications or agreements between them, whether written or oral, with respect to the subject matter hereof." As the Blueacorn Defendants acknowledge, these are "merger and superseding clauses" (Br. at 18), which are *not* the same as negation-of-warranty clauses. *See, e.g.*, *In4Network, Inc. v. Univ. of S. Cal.*, 2004 WL 957693, at *5–6 (Cal. Ct. App. May 5, 2004) (distinguishing between "the negation of warranty and integration clauses in the License Agreement").[11] It is settled law that a merger clause does not preclude liability for fraud, because "a party who has induced the other party to enter into the contract based on an intentional misrepresentation cannot be relieved of liability by any exculpatory clause." *Manderville v. PCG&S Grp.*, 146 Cal. App. 4th 1486, 1499–1502 (2007).

*Second*, the Blueacorn Defendants assert that the Amended Complaint does not allege fraud with sufficient particularity. (Br. at 16.) Tellingly, however, the Blueacorn Defendants do not cite or quote any language from the Amended Complaint, which alleges, *inter alia*, that:

- On May 9, 2021, Womply's CEO emailed Calhoun that he sought "visibility into [the] FBO account with Evolve" (Am. Compl. ¶ 57);

---

[11] The Blueacorn Defendants admit that "California law, rather than Texas law, governs" the Agreements. (Br. at 12 n.5.) This Court "need not engage in a choice-of-law analysis" for Womply's claims for fraudulent inducement and negligent misrepresentation because the laws of California and Texas "do not conflict." *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620–21 (5th Cir. 2005); *see Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011) (interpreting similar language and holding that "a plain reading of the contract language at issue indicates that the parties' intent was merely to include the substance of a standard merger clause, which does not disclaim reliance").

- On May 11, 2021, Donnelly and Calhoun each represented to Womply's CEO that, among other things, SBA fees for all Womply-referred PPP loans funded by Capital Plus would be deposited directly into a joint account between Blueacorn and Capital at Evolve Bank & Trust, and that Womply would have visibility into the joint account (*id.* ¶¶ 58, 132); and

- On May 19, 2021, in reliance on Donnelly's and Calhoun's representations, Womply executed two contracts with Blueacorn, but never received visibility into the purported joint account and never received any fees under the contracts (*id.* ¶¶ 59, 73, 133–38).

Womply has thus alleged the "who, what, when, where, and how of the alleged fraud." (Br. at 16 (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).)[12]

*Third*, the Blueacorn Defendants wrongly assert that Womply "lumps together" Donnelly and Calhoun. (Br. at 16–17.) In fact, the Amended Complaint alleges that "Defendants Donnelly and Calhoun **each** made critical and material representations to Womply's CEO" during a May 11, 2021 telephone call. (Am. Compl. ¶ 58 (emphasis added).) This is "sufficient to meet the requirements of Rule 9(b)," which requires only "that the plaintiff allege facts specifying each defendant's contribution to the fraud." *Bridgewater v. Double Diamond-Del., Inc.*, 2010 WL 1875617, at *8 (N.D. Tex. May 10, 2010) (Boyle, J.) (denying motion to dismiss "fraud-based predicate acts of Plaintiffs' RICO claim").

*Finally*, the Blueacorn Defendants assert that allegations that they "'did not intend to give Womply visibility into the Joint Account' and that 'Defendants did not intend to directly deposit into the Joint Account the SBA fees that Capital Plus received for Womply-referred PPP loans,'" are insufficient to adequately plead scienter. (Br. at 17 (quoting Am. Compl. ¶¶ 134, 136).) But

---

[12] *See also Elson v. Black*, 542 F. Supp. 3d 556, 561 (S.D. Tex. June 8, 2021) (dismissing claims where "plaintiffs have not pleaded fraud with particular facts of time, place, and content"); *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 691 (E.D. Tex. 2009) (dismissing fraud claim where complaint "does not identify the individuals who made the alleged misrepresentations, when the misrepresentations were made, or the specific content of the misrepresentations").

Rule 9(b) "relaxes the particularity requirement for conditions of the mind, such as scienter," which "may be averred generally," including by "motive to commit the fraud." *Willard*, 336 F.3d at 384–85; *see* Br. at 17 (citing same). Womply alleges that the Blueacorn Defendants had a motive to fraudulently induce Womply to enter into the Agreements so that Capital Plus would pay fees to Blueacorn, while Blueacorn would seek to avoid paying fees to Womply. (*See* Am. Compl. ¶¶ 96–100, 138–39.) Moreover, if Blueacorn and Capital Plus have a joint account into which the SBA deposited fees as they represented, then Blueacorn could provide Womply with visibility into that account at any time but refuses to do so. (*Id.* ¶¶ 73, 85–90, 135, 137.) These detailed allegations are a far cry from the "one-sentence allegation, devoid of any factual information" the Blueacorn Defendants' authority found insufficient. *Willard*, 336 F.3d at 385.[13]

### B. The Amended Complaint Adequately Pleads that Blueacorn Breached Its Oral Contract with Womply.

"The existence of an oral contract may be proved by circumstantial evidence," including "the communications between the parties and the acts and circumstances surrounding those communications," and requires only "offer, acceptance, and consideration." *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App. 2008) (collecting cases).[14] The Amended Complaint alleges that (i) on a May 11, 2021 telephone call, Blueacorn offered to "provide Womply with visibility into the Joint Account" (Am. Compl. ¶¶ 58, 165); (ii) Womply accepted this offer and agreed to provide

---

[13] The Blueacorn Defendants do not raise any independent arguments against Womply's negligent misrepresentation claim (*see* Br. at 17–18), which "does not require scienter or intent to defraud." *Smal v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003); *see Aetna Cas. & Sur. Co. v. Met. Baptist Church*, 967 F. Supp. 217, 223 (S.D. Tex. 1996).

[14] As discussed *supra* at note 11, this Court need not conduct a choice-of-law analysis to determine whether California or Texas law governs the oral agreement because they do not conflict. *See Cable & Comput. Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1035 (9th Cir. 2000) (holding that, under California law, "an exchange of promises, supported by consideration, . . . established an oral contract").

referral and technology services as consideration (*id.* ¶¶ 59, 166); and (iii) Blueacorn breached the oral agreement by failing to provide any visibility into the purported joint account (*id.* ¶¶ 73, 180). The Amended Complaint thus plausibly alleges that Womply and Blueacorn formed a valid contract, which Blueacorn breached. *See Domingo*, 257 S.W.3d at 40–41 (holding that "exchange of promises is sufficient consideration to create a binding contract"); *Cable*, 214 F.3d at 1035 (recognizing contract formation based on "exchange of oral promises").

The Blueacorn Defendants' assertion that this oral agreement is "barred by the parol evidence rule" (Br. at 18) is wrong. The oral agreement does not vary the terms of, and is entirely consistent with, the written Agreements, and is thus a ***separate*** agreement. The "parol evidence rule does not preclude enforcement" of "oral agreements [that] resulted from the same negotiations as the written agreements and addressed related subjects, but th[at] did not vary or contradict the parties' obligations under the written contracts." *West v. Quintanilla*, 573 S.W.3d 237, 246–48 (Tex. 2019); *see Roberts v. Secure Stone, LLC*, 2019 WL 3543614, at *9 (Cal. Ct. App. Aug. 5, 2019) (reversing dismissal based on integration clause because parol evidence is admissible "to prove the existence of a separate oral agreement").

### C. The Amended Complaint Adequately Pleads that Blueacorn Breached the Duty of Good Faith and Fair Dealing.

"The implied covenant of good faith and fair dealing is implied by law in every contract," and "functions as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (emphasis in original). The covenant "impose[s] a duty to *affirmatively* cooperate," and to "refrain from doing anything that prevents realization of the fruits of performance." *City of Hollister v. Monterey Ins. Co.*, 165 Cal.

App. 4th 455, 490 (2008) (emphasis in original). The Blueacorn Defendants cannot avoid these duties based on *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110–12 (Cal. 2000), which addressed the termination rights of at-will employees under California law and is therefore irrelevant to this action (*see* Br. at 19 (citing same)).

Blueacorn admits that it has not paid Womply any fees owed under the Agreements, asserts that it has "not been paid" by Capital Plus for the Womply-referred loans, and argues that it need not pay Womply "until Blueacorn has, itself, been paid." (Br. at 4–5 (citing Am. Compl. ¶¶ 85, 94–95).) The Amended Complaint alleges that Blueacorn refuses to take any meaningful action— and has sought to dissuade Womply from taking action—to obtain payment from Capital Plus. (Am. Compl. ¶¶ 96–98.) Blueacorn provides no explanation for its refusal to seek payment from Capital Plus (*see* Br. at 18–19), and the only logical explanation is that Blueacorn is hoping that Capital Plus prevails in this action, so that Blueacorn will not have to pay Womply any fees it receives from Capital Plus (Am. Compl. ¶¶ 99–100). These allegations more than plausibly allege that Blueacorn is withholding cooperation and frustrating Womply's rights to the benefits of the Agreements in breach of the covenant of good faith and fair dealing. *See City of Hollister*, 165 Cal. App. 4th at 490.

### D.   The Amended Complaint Adequately Pleads that the Blueacorn Defendants Conspired with Capital Plus, Crossroads, and Donnelly.

"The elements of a cause of action for civil conspiracy in Texas are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 623 F. Supp. 2d 798, 809 (S.D. Tex. 2009). "Typically a conspiracy is proved by circumstantial evidence," and "inferences of concerted action may be drawn from participation in the transactions." *Id.* at 810, 812.

- 24 -

The Amended Complaint alleges that Blueacorn and Capital Plus worked in concert to fraudulently (or at least negligently) induce Womply to enter into the Agreements, use Womply's referral and technology services under the Agreement to obtain more than $186 million in fees from the SBA, refuse to pay Womply any fees, and then challenge the validity of the Agreements in the hopes of avoiding paying Womply any fees. (Am. Compl. ¶¶ 8–9, 96–100, 187–90.) As discussed above, Blueacorn and Capital Plus "repeated the same misrepresentations" to Womply *after* Womply "made clear that it was seeking the information for purposes of due diligence prior to agreeing to" the Agreements, which "is sufficient circumstantial evidence from which a common plan and intent may be reasonably inferred based on the nature of the representations and their timing." *Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 421–23 (Tex. App. 2021). Womply thus plausibly alleges civil conspiracy. *See id.* (affirming denial of dismissal of civil conspiracy based on fraudulent inducement); *In re Enron*, 623 F. Supp. 2d at 832 (denying summary judgment for civil conspiracy where defendant "participated in the underlying fraud").

## CONCLUSION

For the foregoing reasons, Womply respectfully requests that this Court deny the Blueacorn Defendants' motion to dismiss in its entirety. Womply respectfully requests oral argument at the Court's convenience.

Dated: February 14, 2022

Respectfully submitted,

*Of Counsel:*

Willkie Farr & Gallagher LLP

Alexander L. Cheney (admitted *pro hac vice*)
One Front Street
San Francisco, CA 94111
(415) 858-7400
acheney@willkie.com

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

By: */s/ Jason P. Bloom*
    Nina Cortell
    Texas Bar No. 04844500
    Jason P. Bloom
    Texas Bar No. 24045511
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
(214) 651-5000
jason.bloom@haynesboone
nina.cortell@haynesboone

*Attorneys for Plaintiff Oto Analytics, Inc. d/b/a Womply*

- 26 -

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served

on the following counsel of record, this 14th day of February 2022, by using the electronic case

filing system of the United States District Court for the District of Texas:

Penny P. Reid, pred@sidley.com
Claire Homsher, chomsher@sidley.com
Michael A. Levy, mlevy@sidley.com
Christopher M. Egleson, cegleson@sidley.com
Katelin Everson, keverson@sidley.com
Terrell W. Oxford, toxford@susmangodfrey.com
Harry P. Susman, hsusman@susmangodfrey.com
Megan Elise Griffith, mgriffith@susmangodfrey.com


*/s/ Jason P. Bloom*
Jason P. Bloom