IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OTO ANALYTICS, INC. d/b/a WOMPLY,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL PLUS FINANCIAL, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 3:21-cv-2636-B |

**THE BLUEACORN DEFENDANTS'
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

REPLY ........................................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     Womply's Claim Should Be Dismissed for Lack of Personal Jurisdiction ........................ 1

II.    Womply's Claims Should Be Dismissed in Favor of Arbitration. .................................... 3

        A.     It is Undisputed that Womply's Claims Must Be Arbitrated Unless Womply Proves That Blueacorn Specifically Obtained the Arbitration Clause by Fraud. ....................................................................................................... 3

        B.     Womply's New Evidence of Prior Communications Is Barred by the Contracts' Integration Clauses .................................................................................. 4

        C.     Womply's New Evidence Does Not Show Intent to Induce Arbitration ................ 5

        D.     Womply's Evidence Is Not Credible on Its Face or in Light of the Record ........... 6

III.   The Amended Complaint Must Be Dismissed for Failure to State a Claim ....................... 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
   580 S.W.3d 136 (Tex. 2019) ...........................................................................................10

*Archer v. Comm'r of Internal Revenue*,
   227 F.2d 270 (5th Cir. 1955) .............................................................................................7

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
   590 S.W.3d 471 (Tex. 2019) .........................................................................................5, 9

*Bridgewater v. Double Diamond-Del., Inc.*,
   09-cv-1758-B, 2010 WL 1875617 (N.D. Tex. May 10, 2010) (Boyle, J.) .......................9

*Campanile Invs. LLC v. Westmoreland Equity Fund LLC*,
   No. 17-cv-337, 2019 WL 2213877 (W.D. Tex. May 22, 2019) .......................................6

*Carter v. Countrywide Credit Indus., Inc.*,
   362 F.3d 294 (5th Cir. 2004) ........................................................................................4, 9

*City of Hollister v. Monterey Ins. Co.*,
   165 Cal. App. 4th 455 (2008) .........................................................................................10

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .........................................................................................................2

*Engalla v. Permanente Med. Grp., Inc.*,
   938 P.2d 903 (Cal. 1997) ..................................................................................................6

*Fuel Husky, LLC v. Total Energy Ventures Int'l, S.A.S.*,
   No. H-19-cv-4277, 2021 WL 4086226 (S.D. Tex. Sep. 8, 2021) .....................................4

*Gallagher v. Vokey*,
   860 F. App'x 354 (5th Cir. 2021) .....................................................................................7

*Guidry v. U.S. Tobacco Co., Inc.*,
   188 F.3d 619 (5th Cir. 1999) ........................................................................................1, 2

*ICEE Distribs., Inc. v. J&J Snack Foods*,
   325 F.3d 586 (5th Cir. 2003) ............................................................................................3

*Jones v. Halliburton Co.*,
   625 F. Supp. 2d 339 (S.D. Tex. 2008) .............................................................................5

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*,
   546 S.W.3d 648 (Tex. 2018) ..................................................................................................5

*Leininger v. Leininger*,
   705 F.2d 727 (5th Cir. 1983) ..................................................................................................8

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) ...............................................................................................1, 2

*Mumblow v. Monroe Broad., Inc.*,
   401 F.3d 616 (5th Cir. 2005) ..................................................................................................9

*Murex, LLC v. GRC Fuels, Inc.*,
   No. 15-cv-3789-B, 2016 WL 4207994 (N.D. Tex. Aug. 10, 2016) (Boyle, J.) .........................5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ................................................................................................................4

*Smith v. Santander Consumer USA, Inc.*,
   No. 18-CV-195-A, 2018 WL 2225085 (N.D. Tex. May 15, 2018) ..........................................4

*Total RX Care, LLC v. Great N. Ins. Co.*,
   No. 16-cv-2965-B, 2017 WL 3034083 (N.D. Tex. July 17, 2017) (Boyle, J.) .........................6

*U.S. v. Samples*,
   897 F.2d 193 (5th Cir. 1990) ..................................................................................................7

*U.S. v. Scammell*,
   No. 13-cr-733 (C.D. Cal. Aug. 7, 2014) .................................................................................8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ................................................................................................................3

*West v. Quintanilla*,
   573 S.W.3d 237 (Tex. 2019) .................................................................................................10

**Other Authorities**

Fed. R. Evid. 106 ............................................................................................................................7

**REPLY**

As set forth in the Blueacorn Defendants' motion, this Court should dismiss for lack of personal jurisdiction, in light of Womply's agreement to arbitration, and alternatively for failure to state a claim. Womply's personal jurisdiction rebuttal fails to demonstrate that any of Womply's claims arise from contacts between Blueacorn, Womply, and Texas, because there are none. Womply does not dispute that it agreed to arbitrate and instead seeks to invalidate its voluntary agreement on grounds of fraud. But its claim of reliance on prior representations is legally barred by the Contracts' integration clauses, fails to show intent to defraud, and is factually implausible and contradicted by the record. And Womply does not meaningfully respond to the deficiencies in its effort to plead each of its causes of action. The Court should grant Blueacorn's motion to dismiss.

**ARGUMENT**

**I.    Womply's Claim Should Be Dismissed for Lack of Personal Jurisdiction**

Womply's response with respect to personal jurisdiction refuses to grapple with the actual law of personal jurisdiction. First, with respect to Womply's tort claims—the only claims alleged against Defendant Calhoun—the law is clear: specific personal jurisdiction arises *only* when a defendant either "commits a tort within the state" or commits an act outside of the state that "causes tortious injury within the state." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). The only torts alleged here are that the Blueacorn Defendants deliberately (Count 3) or negligently (Count 4) misrepresented on a May 11, 2021 telephone call that they would hold a joint bank account with Capital Plus, and conspired to do the same (Count 10). There is no suggestion that they committed this single, allegedly tortious act in Texas, and no allegation that Womply suffered an injury in Texas, or even has any presence in, property in, or connection to Texas. That ends the analysis.

Womply tries to fudge the law by suggesting that any "effect" of a defendant's conduct in Texas is enough, but that is not the rule: it must be an effect *on the plaintiff*. So in *Guidry*, the

Louisiana plaintiffs obtained personal jurisdiction over the out-of-state defendant tobacco companies in Louisiana because the companies' products were alleged to have foreseeably caused those Louisiana plaintiffs to get cancer in Louisiana. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 629 (5th Cir. 1999) ("causing death or serious physical harm" to plaintiffs in forum state is sufficient). Likewise, in *McFadin*, the "effect" at issue was that the Texas plaintiffs suffered their trademark-infringement "injury in Texas," and even so the Fifth Circuit held that "the effects doctrine" was "not … expansive" enough to establish jurisdiction because the defendant had not directed its injurious conduct at Texas. *McFadin,* 587 F.3d at 762. In this case, Womply itself has no alleged connection with Texas, and does not point to an injury it suffered in Texas. It suffered no "effects" in Texas from the alleged conduct, so tort jurisdiction is lacking.[1]

Second, with respect to the contract claims—asserted only against Defendant Blueacorn— the motion explained that the Contracts required one non-Texas party (Womply) to provide services to another non-Texas party (Blueacorn)[2] in exchange for the latter party's payment at a contractually specified time, while specifying that California law will apply and disputes will be resolved through arbitration in California. The Contracts simply do not involve Texas. And even if Capital Plus were a party to the Contracts, which it is not, that would not matter for asserting

---

[1] Womply tries to salvage jurisdiction over the tort claims by asserting without explanation that its contract and tort claims are intertwined. (Opp. 13). That argument is no help. The written-contract claim (Count 9) is not intertwined with the tort claims; it is an unrelated claim that Blueacorn somehow breached the Contracts by failing to sue Capital Plus. The oral-contract claim (Count 7) might be intertwined with the tort claims, since it alleges (insufficiently) that Blueacorn entered an oral contract on the May 11 phone call to hold a joint bank account with Capital Plus and then breached that promise. But no matter, since, as already explained, that claim—whether sounding in tort or contract—involves no activity by Blueacorn directed at Texas and no injury suffered by Womply in Texas.

[2] Womply contends in an unalleged footnote that Blueacorn is "at home" and subject to *general* jurisdiction in Texas because it had a "nearly exclusive" business relationship with a Texas party. (Opp. 11 n.3.) This violates *Daimler*'s rule that a corporate entity is at home only in its state of incorporation and principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Plus, as Womply well knows from the documents it submitted, Blueacorn's relationship with Capital Plus was not "nearly exclusive," but accounted for only about half its business. *Compare* Opp. 11 n.3 (alleging Blueacorn facilitated $7.6 billion in Capital Plus loans) *with* Opp. Appx. 8-9 (reporting Blueacorn's facilitation of $14 billion in loans in total for its two lender partners).

jurisdiction *over Blueacorn* because the Supreme Court has held that a "defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction," and that the Court must "look[] to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Even "[c]ontracting with a resident of the forum state does not alone support the exercise of jurisdiction over [a] defendant" (*ICEE Distribs., Inc. v. J&J Snack Foods*, 325 F.3d 586, 591 (5th Cir. 2003)), so even if a Texas party like Capital Plus were a party to the Contracts, that *still* would not be enough for jurisdiction over Blueacorn, much less here, where no party to the Contracts is a Texas resident.

Womply tries to confuse the issue by suggesting that Blueacorn actually performed the Contracts in Texas.  (Opp. 12).  But Blueacorn has had no contractual duties to perform.  Although the Contracts called for Womply to provide Blueacorn with referrals and services, Blueacorn's only substantial obligation under the Contracts is to pay over a share of any resulting revenue if and when received, and Blueacorn has not yet received any; *i.e.*, Blueacorn has had no contractual duties to perform and so could not have performed them in Texas no matter what contractually irrelevant Texas activity Womply might allege.  Put simply, disputes over these non-Texas Contracts between non-Texas parties belong in California, precisely as the parties agreed.

II. **Womply's Claims Should Be Dismissed in Favor of Arbitration.**

    A. **It is Undisputed that Womply's Claims Must Be Arbitrated Unless Womply Proves That Blueacorn Specifically Obtained the Arbitration Clause by Fraud.**

Most of the points in Blueacorn's motion as it relates to arbitration are undisputed:  Womply does not dispute that, if the arbitration clauses are enforceable, they cover all claims against both Blueacorn and Calhoun.  Nor does it dispute that dismissal (rather than a stay) would be the proper remedy.  And although Womply notes that a party seeking arbitration must show the existence of a contract with an arbitration clause (Opp. 15), Womply affirmatively alleges the formation

and existence of the Contracts (Compl. ¶ 61), so that is undisputed as well. Womply also does not dispute that it failed to allege in its Complaint, with the requisite particularity, fraud in the inducement with respect to the arbitration clause.

Womply also accepts the principle that "the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967), meaning that Womply must affirmatively demonstrate "'fraud directed to the arbitration clause itself'" (Mot. 13 (quoting *Ericksen Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 673 P.2d 251, 257-58 (Cal. 1983))). And Womply must accept that "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).[3] Womply's sole contention is that the new evidence that it has supplied shows that the otherwise undisputedly valid arbitration provisions in the Contracts are unenforceable because they were procured by fraud. Its attempted showing fails both legally and factually.

### B. Womply's New Evidence of Prior Communications Is Barred by the Contracts' Integration Clauses

First, legally, Womply's newly supplied evidence cannot show fraud in the inducement because it relies on "prior communications." The Contracts' integration clause provides that each Contract "supersedes any and all prior communications or agreements between" the parties. Under

---

[3] Womply's brief is confused about the burdens that apply to each party. The movant must show the "existence of an agreement" (Opp. 15), but that is alleged (Compl. ¶ 101) and undisputed. *See, e.g.*, *Fuel Husky, LLC v. Total Energy Ventures Int'l, S.A.S.*, No. H-19-cv-4277, 2021 WL 4086226 at *3 (S.D. Tex. Sep. 8, 2021) ("The existence of a written arbitration agreement . . . is not in dispute."). After that, as *Carter* shows, there is a "strong presumption" in favor of arbitration and the burden of defeating it is Womply's. As another court in this District put it, "[o]nce the existence of an arbitration agreement is shown, the party opposing arbitration bears the burden of defeating the agreement." *Smith v. Santander Consumer USA, Inc.*, No. 18-CV-195-A, 2018 WL 2225085 at *1 (N.D. Tex. May 15, 2018).

Texas law, "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 498 (Tex. 2019) (internal quotation marks omitted). Womply's purported reliance on a "prior communication" would "in effect read [the integration clause] out of the parties' agreement," thereby creating a direct contradiction which defeats Womply's fraud claim. *Id.*[4]

### C.     Womply's New Evidence Does Not Show Intent to Induce Arbitration

Second, in its new factual submission, Womply claims that Blueacorn orally promised that money it received would go into a joint account, and that Womply agreed to arbitrate based on that representation. But that is not fraud in the inducement of an agreement to arbitrate. Blueacorn's alleged statement had nothing to do with arbitration. The fraud that Womply claims induced its agreement to arbitrate is nothing more than the fraud that it says induced it to agree to the Contracts generally. But courts compel arbitration where a plaintiff's allegations of an inducement to arbitrate are identical to its allegations of fraudulent inducement of the contract overall. *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 345 (S.D. Tex. 2008). "Because [Womply's] claim does not attack the arbitration clause on an independent basis, [its] fraud in the inducement claim is a question for the arbitrator." *Id.* at 346.

Further, Womply does not contend, could not plausibly contend, and offers no evidence that Blueacorn *intended* the allegedly fraudulent statement about a bank account to induce Womply to enter into an arbitration agreement. To prove fraudulent inducement, a plaintiff must show,

---

[4] Womply never disputes that the contracts' integration clauses "contradict" the alleged oral representations and therefore "negate justifiable reliance" under the Texas Supreme Court's recent approach to such issues laid out in *Barrow-Shaver* and *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 654 n.1 (Tex. 2018). This case "falls outside *Italian Cowboy*'s purview" (*id.*; *contra* Opp. 20) because Defendants argue contradiction, not waiver; for that reason, *Murex, LLC v. GRC Fuels, Inc.*, No. 15-cv-3789-B, 2016 WL 4207994 (N.D. Tex. Aug. 10, 2016) (Boyle, J.), which preceded *Orca Assets* and *Barrow-Shaver*, addresses a different question.

*inter alia*, that "the defendant knew the representation was false and intended to induce the plaintiff to enter into" the relevant agreement. *Total RX Care, LLC v. Great N. Ins. Co.*, No. 16-cv-2965-B, 2017 WL 3034083, at *9 (N.D. Tex. July 17, 2017) (Boyle, J.). Here, the claim is of fraudulent inducement to enter an agreement to arbitrate, so Womply must show that Blueacorn intended to deceive Womply specifically *into agreeing to arbitrate*. But Womply offers no evidence that Blueacorn had any intent to deceive Womply into agreeing to arbitrate, and the alleged false statements—which concerned a bank account—suggest no arbitration-focused intent by Blueacorn.

By contrast, Womply's few cited cases illustrate allegations of fraud that went specifically to the making or performance of an arbitration agreement. In *Engalla*, the defendant tricked the plaintiff into agreeing to arbitrate by lying about the *speed of its arbitration program*. *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 922 (Cal. 1997). In *Campanile*, the Court found that the defendant's agreement to arbitrate in Florida implicitly represented that he could attend such an arbitration, when in fact he was barred from traveling to the United States. *Campanile Invs. LLC v. Westmoreland Equity Fund LLC*, No. 17-cv-337, 2019 WL 2213877 (W.D. Tex. May 22, 2019). Unlike in those cases, the alleged statement about where Blueacorn would receive the fees at issue does not relate to arbitration. So Womply has not shown inducement to arbitrate.

### D. Womply's Evidence Is Not Credible on Its Face or in Light of the Record

Third, even if it supported a claim of fraud, Womply's evidence is not credible on its face. Womply CEO Toby Scammell claims that on May 11, Womply and Blueacorn each orally "represented" on a phone call that funds would be deposited into a "joint account" into which Womply would have "visibility," and that that supposedly "gave [him] assurance" that "Capital Plus would not be able to withhold funds from Blueacorn." Scammell Decl. ¶ 56. And yet, the next day, Womply exhibited no such assurance, instead asking Blueacorn by email how it would "typically" ensure that a lender like Capital Plus "will fulfill its rev[enue] share obligations[.]" *Id* at ¶ 37.

Without pressing for any answer to that question, Womply went ahead and signed the Contracts on May 19. The Contracts contained integration clauses saying that they were the parties' complete agreements and disclaiming reliance on prior communications. The Contracts neither referenced any "joint account" into which funds should be received nor imposed any obligation on Blueacorn to ensure that Capital Plus would "fulfull" its "rev[enue] share obligations."

Scammell now testifies here that he agreed to arbitration only because he was given assurances about the "joint account." He "would not have agreed that Womply would arbitrate disputes with Blueacorn under the Agreements" absent these representations, he says, because it "would not make business sense to agree to arbitrate disputes with a counterparty that did not have funds, because that counterparty would not be able to satisfy any arbitral award." Opp. 17; Scammell Decl. ¶ 56. That self-serving account is not credible[5] for a cascade of reasons:

- Womply *itself* was the author and proponent of the arbitration clause reflected in the final Contracts, and it proposed the clause—using exactly the language ultimately adopted—in its very *first* draft of the Contracts, which it transmitted to Blueacorn on May 7, four days before the May 11 call that Scammell now claims induced him to agree to arbitration. Everson Declaration, Ex. A, Appx. 7-8 & 11.[6] Scammell does not claim that this provision was discussed on the May 11 call, nor does his evidence show that it was discussed in any of the later negotiations. Having requested the provision before the putative false statements, he cannot claim that he was induced to agree to it.

- Scammell's own emails show that he was seeking assurances about an "FBO" (for the benefit of) account, not a "joint account." Scammell Decl. Ex. 9, Appx. 117. And Scammell likewise referenced an "FBO" account in his text to Blueacorn months later. Scammell Decl. ¶ 72. Thus, his current (false) assertion that he was promised

---

[5] Blueacorn's other arbitration arguments assume the truth of Womply's facts. Only this subsection presents a factual issue—the inherent incredibility of Scammell's sworn account. Womply contends that if it can show an issue of material fact under Rule 56, the Court must hold an evidentiary hearing. Opp. 18. The Fifth Circuit has not endorsed that rule, *see Gallagher v. Vokey,* 860 F. App'x 354, 357-58 (5th Cir. 2021), and while Blueacorn is prepared to test Scammell's account through cross examination, "[t]he trier of fact need not credit any witness' testimony, even if unimpeached." *U.S. v. Samples*, 897 F.2d 193, 198 (5th Cir. 1990); *see also Archer v. Comm'r of Internal Revenue*, 227 F.2d 270, 273 (5th Cir. 1955) (similar). The Court may reject Scammell's testimony on the papers.

[6] Womply included the transmittal email in the exhibits to its opposition, but omitted the attachments. Scammell Decl. Ex. 6, Appx. 110. Movants supply here the full email, including the draft contracts, which are not only independently admissible but must also be accepted under the rule of completeness. *See* Fed. R. Evid. 106.

- on the May 11 phone call that Blueacorn and Capital Plus shared a "joint account" flies in the face of his own emails and texts.  Moreover, his attempt to corroborate his account of the May 11 call with Calhoun and Donnelly by saying he "would have had no way of knowing that Blueacorn and Capital Plus had a Joint Account or that they used Evolve Bank & Trust unless they told me" on the call, Scammell Decl. ¶ 33(a), falls flat because the record shows that Scammell referenced Evolve Bank in an email to Calhoun *the day before* the May 11 call.  Scammell Decl. Ex. 9, Appx. 117.

- On its face, it is inherently implausible that two unrelated business entities would maintain a "joint account"; the type of account held by related co-owners, like spouses or other family members, not companies engaged in arms-length business transactions who do not co-own the funds in the account.  *See, e.g.*, *Leininger v. Leininger*, 705 F.2d 727, 732 (5th Cir. 1983) ("[F]unds in a joint account are presumed to belong one-half to each of the persons in whose name the account is carried.").

- Scammell now claims he took "assurance" from the supposed representations on the May 11 call that "Capital Plus would not be able to withhold funds from Blueacorn." Scammell Decl. ¶ 56.  But Womply did not behave at the time as though it had received any such assurance, instead asking Blueacorn on May 12 how it would "typically" ensure that a lender like Capital Plus "will fulfill its rev[enue] share obligations[.]" *Id.* at ¶ 37.

- If, as he claims, Scammell had cared about and received assurance about a joint account, that assurance would undoubtedly have appeared in the Contracts.  But not only is there no suggestion of any such assurance in the Contracts, Womply agreed to contract language affirmatively disclaiming all prior communications.

- Scammell's self-serving claim that he subjectively agreed to arbitration only because he had been assured that funds would be deposited into a "joint account" and therefore would be available to satisfy a judgment is nonsensical and incredible on its face. Opp. 17; Scammell Decl. ¶ 56.  Whether funds will be available to satisfy a judgment has nothing to do with whether a party chooses to arbitrate or to litigate, since both options equally suppose the possibility of being able to recover.  Any question of availability *vel non* of funds will be the same whether a party obtains a judgment from a court or from an arbitrator.

- Scammell is a demonstrated liar.  Not *only* is he a convicted securities fraudster, *see U.S. v. Scammell*, No. 13-cr-733 (C.D. Cal. Aug. 7, 2014), but before pleading guilty and admitting his crime he *first* embarked on a public disinformation campaign on the internet in which he falsely denied his guilt, falsely alleged that the agency investigating him had "concocted an imaginative story that's not supported by the facts," and called that agency "incompetent" and "filled with bumbling lawyers."  *See* https://dealbook.nytimes.com/2011/08/17/insider-trading-defendant-in-disney-case-fights-back/.  Scammell's willingness to commit fraud and then deny it through aggressive, self-serving lies makes clear that he has little regard for the truth and that his uncorroborated, self-serving and implausible assertions here should not be credited.

For all of these reasons, Womply's factual showing fails to meet its burden to overcome the "strong presumption in favor of arbitration," *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004), and its Complaint must be dismissed in favor of arbitration.

## III. The Amended Complaint Must Be Dismissed for Failure to State a Claim

**A. Fraud and Negligent Misrepresentation**. Blueacorn demonstrated that the complaint does not state these claims for four reasons. Womply fails to rebut any of them:

- **Integration Clauses**. Womply claims that the Contracts do not contain "negation-of-warranties clauses" (Opp. 20), but that blinks reality: the clauses "supersede[] any and all prior communications . . . between [the parties]." Contracts § 16. The point is not whether these clauses say the word "warranty" but that reliance on a prior oral representation would "directly contradict[]" them. *Barrow-Shaver*, 590 S.W.3d at 499. Womply's lone Texas authority on this issue is irrelevant. *See infra* at II.B n.4.[7]

- **Particularity.** Womply never seriously engages with Rule 9(b)'s requirement that it allege with particularity what was specifically and separately said. See Mot. 16 (citing cases). Its allegation that two individuals "each" (Opp. 21) made identical representations to Womply, which it paraphrases but does not quote, is not enough.

- **Lumping.** Womply's only response to its lumping problem is this Court's holding that a RICO plaintiff need not "assert that each defendant personally made fraudulent mailings or wires." *Bridgewater v. Double Diamond-Del., Inc.*, 09-cv-1758-B, 2010 WL 1875617, at *8 (N.D. Tex. May 10, 2010) (Boyle, J.). But that is because RICO conspirators need not each have personally committed a predicate act, while Womply asserts fraud claims against Calhoun and Donnelly but lumps them together in alleging that they both made the same (paraphrased) false statement at the same time.

- **Scienter.** Finally, Womply bolsters its conclusory scienter allegations only by citing its allegation that "Blueacorn is hoping that Capital Plus prevails in this action." Compl. ¶ 99. But that allegation of Blueacorn's present state of mind does not speak to Blueacorn's state of mind at the time of the alleged fraud (when this "action" did not exist, so Blueacorn could not have "hoped" anything about it).

**B. Oral Contract.** Womply's contention that the parties formed an oral contract on May 11 is not serious. Womply's brief literally claims that Womply orally agreed to provide its

---

[7] While California law governs the contracts' construction (Mot. at 12 n.5), Texas law presumptively governs the fraud claims (Mot. 15 n.9). Womply's concession that California law is the same as in Texas (Opp. 20 n.11, 22 n.14) means that "no choice-of-law analysis is necessary," and the Court "simply appl[ies] the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

referral and technology services in exchange for Blueacorn providing visibility into a joint account. That does not even make sense: why would Womply agree to provide valuable services in exchange for no money, just seeing into a bank account? But in truth the putative oral deal identified in the *brief* is not what Womply alleges in its *Complaint*: to show consideration for the oral contract, Womply cites allegations about the *written agreements*. *See* Opp. 22-23 (citing Compl. ¶¶ 59, 166). That does not support its oral-contract theory, and instead underscores that the putative oral contracts touch the same "subject matter" (*West v. Quintanilla*, 573 S.W.3d 237, 245, 247 (Tex. 2019)) as the written Contracts, confirming that oral terms are barred by the parol evidence rule and would be superseded by the Contracts' integration clause.

C.   **Implied Covenant.** Womply could have negotiated for a must-sue provision in the Contracts; it cites no case suggesting that the Court may impose on Blueacorn a duty to "initiate an[] action against" a third party. Compl. ¶ 182; *see* Opp. 23-24. *Hollister* imposes no general duty to "cooperate"—it holds only that one party's cooperation may be required if it is "'necessary for successful performance' by the other." *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 490 (2008) (emphasis added). Womply does not allege that its own performance of the contract has been frustrated, so its implied duty claim fails.

D.   **Civil Conspiracy.** As for civil conspiracy, the motion was correct that it is not a tort under Texas law: cases like Womply's 2009 case were abrogated by *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) ("not an independent tort").

## CONCLUSION

For the foregoing reasons and those stated in the opening brief, the Court should dismiss and award "costs and attorneys' fees" (Contracts § 10) to Blueacorn.

Dated: February 28, 2022

                                                Respectfully submitted,

                                                */s/ Michael A. Levy*

Penny P. Reid
Texas Bar No. 15402570
preid@sidley.com
Claire Homsher
Texas Bar No. 24105899
chomsher@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave No. 2000
Dallas, Tex. 75201
(214) 981-3300
(214) 981-3400 (facsimile)

Michael A. Levy
(admitted *pro hac vice*)
mlevy@sidley.com
Christopher M. Egleson
(admitted *pro hac vice*)
cegleson@sidley.com
Katelin Everson
(admitted *pro hac vice*)
keverson@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, N.Y. 10019
TEL: (212) 839-5300
FAX: (212) 839-5599

*Attorneys for the Blueacorn Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on this day, February 28, 2022.

*/s/ Michael A. Levy*
Michael A. Levy