UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OTO ANALYTICS, INC. d/b/a WOMPLY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2636-B |
| | § | |
| CAPITAL PLUS FINANCIAL, LLC, | § | |
| CROSSROADS SYSTEMS, INC., and | § | |
| ERIC DONNELLY, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are Plaintiff Oto Analytics, Inc. d/b/a Womply ("Womply")'s response (Doc. 17) and Defendants Capital Plus Financial, LLC ("Capital Plus"), Crossroads Systems, Inc. ("Crossroads") and Eric Donnelly ("Donnelly")'s reply (Doc. 30) to the Court's order directing the parties "to file responsive briefing, including legal authority, responding to Defendants' subject-matter-jurisdiction arguments." Doc. 7, Order, 3. Having considered Plaintiff's and Defendants' arguments for why this Court has jurisdiction over this action, the Court concludes that it has subject-matter jurisdiction over the claims.

Womply originally filed this action in the 95th Judicial District, Dallas County, Texas. Doc. 1, Notice of Removal, ¶ 1. Defendants removed the action to this Court on October 25, 2021. *Id.* Defendants claim that "removal is proper pursuant to . . . federal-question jurisdiction, . . . the federal officer removal statute," and the Declaratory Judgment Act. *Id.* ¶ 4; Doc. 30, Defs.' Reply, 2–3. According to Defendants, federal-question jurisdiction exists because "[a]lthough [Womply] asserts only state common law claims, the viability of each claim depends on interpretation of federal

law—both statutory and regulatory—governing the [Paycheck Protection Program]." Doc 1, Notice of Removal, ¶ 4. Defendants state that federal-question jurisdiction may lie "over state-law claims that implicate significant federal issues," and argue that this federal issue "is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance approved by Congress." *Id.* ¶¶ 18, 22–41 (first quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); then quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)); Doc. 30, Defs.' Reply, 1–2. In its response, Plaintiff agrees with Defendants that this Court has federal-question jurisdiction over their state law claims under the four-element test described above. Doc. 17, Pl.'s Resp., 10–13. Plaintiff also argues that the Declaratory Judgment Act establishes this Court's federal-question jurisdiction. *Id.* at 8–9.

"Federal courts are courts of limited jurisdiction." *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). Thus, courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* And "if the record does not contain sufficient evidence to show that subject-matter jurisdiction exists, [then] 'a federal court does not have jurisdiction over the case.'" *Id.*

A federal court has federal-question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, a federal question exists only where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.–E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721–22 (5th Cir. 2017) (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–338 (5th Cir. 2008)). But, "even where a claim finds its origins in state rather than federal law . . . federal

jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

Here, the Court agrees with the parties that this four-element test is satisfied. First, the federal issue is necessarily raised. A federal issue is necessarily raised when the resolution of that issue determines whether an element of the state claim is present. *See id.* For Plaintiff's state law tortious interference and fraudulent inducement claims to survive, the parties must first have entered into a valid contract. *See Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) (tortious interference); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (fraudulent inducement). In this case, the existence of a valid contract depends on interpretation and application of the federal Small Business Administration ("SBA") rules.[1] Doc. 17, Pl.'s Resp., 10. Because this federal issue is dispositive of Womply's state law claims, it is necessarily raised.

Second, the parties actually dispute whether the contracts violate federal law and SBA regulations. *See* Doc. 17, Pl.'s Resp., 11 ; Doc. 30, Defs.' Reply, 2. A federal issue is actually disputed when it is the central point of dispute in a case. *Gunn*, 568 U.S. at 259. Defendant argues that there was no contract, as the purported contract's terms would violate federal SBA rules. Doc. 1, Notice of Removal, ¶ 28. Meanwhile, Plaintiff argues that a contract exists between the parties and that contract is not subject to the rules that Defendants believe make the contract illegal. Doc. 17, Pl.'s Resp., 7. By presenting opposing legal arguments regarding this central point, the parties actually dispute the federal issue.

---

[1] Assuming a valid contract, this Court would then decide whether Womply was an "agent" under the SBA definition, which is another question of federal law. For the purposes of today's order, the Court does not need to decide this issue.

Third, this federal issue is substantial. A federal issue can be substantial for multiple reasons, including when the issue is nearly a pure issue of law that would apply in other federal cases, or because resolving the issue has broad significance for the federal government. *Bd. of Comm'rs*, 850 F.3d at 724. Both are true in this case. This Court's interpretation of SBA rules is a "nearly pure issue of law . . . that could be settled once and for all," and would apply to other cases with similar facts. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (quoting Hart and Wechsler's *The Federal Courts and the Federal System* 65 (Supp. 2005)). Moreover, this Court's determination of the contract dispute is substantial to the federal government. It will promote consistency with future cases involving the federal Paycheck Protection Program ("PPP"), which provided hundreds of billions of dollars in small business loans across the country, resulting in billions of dollars of fees for various service providers. Doc. 17, Pl.'s Resp., 12. For both of these reasons, this federal issue is substantial.

Lastly, this Court can resolve this issue without disrupting the federal-state balance. This inquiry is concerned with keeping the "appropriate 'balance of federal and state judicial responsibilities.'" *Gunn*, 538 U.S. at 264 (quoting *Grable*, 545 U.S. at 314). The federal-state balance is at risk of disruption when allowing federal jurisdiction might "enormous[ly] shift . . . traditionally state cases into federal courts." *Grable*, 545 U.S. at 319. This case, involving SBA regulations of PPP loans, turns on "the scope and limitations of a complex federal regulatory framework." *Bd. of Comm'rs*, 850 F.3d at 725. Although contract disputes may generally lie in state law domain, the meaning of a federal regulation "is an important issue of federal law that sensibly belongs in federal court." *Grable*, 545 U.S. at 315. Because this case concerns the novel application of federal regulations to a contract, the Court finds that adjudicating this case will not upset the federal-state judicial balance.

For the above reasons, this Court finds that it has subject-matter jurisdiction over the claims in this case. Because the Court concludes that the federal issue related to Womply's contract claims sufficiently justifies federal jurisdiction, the Court does not reach the question of whether the declaratory judgment claim or the federal officer removal statute also justify federal-question jurisdiction.

**SO ORDERED.**

**SIGNED: March 1, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE