UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OTO ANALYTICS, INC. d/b/a WOMPLY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-2636-B |
| CAPITAL PLUS FINANCIAL, LLC, CROSSROADS SYSTEMS, INC., ERIC DONNELLY, BA FIN ORION LLC d/b/a BLUEACORN, and BARRY CALHOUN, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants Blueacorn and Barry Calhoun ("Calhoun") (collectively the "Blueacorn Defendants")'s Motion to Dismiss in Favor of Arbitration and Under Rules 12(b)(2) and 12(b)(6) (Doc. 31). For the reasons that follow, the Court **GRANTS** the Blueacorn Defendants' motion and dismisses all claims against Blueacorn and Calhoun **WITHOUT PREJUDICE**.

## I.

## BACKGROUND

A.    *Statutory Framework*

The Small Business Administration ("SBA") provides financing to small businesses through private "Section 7(a) loans" under the Small Business Act. *Springfield Hosp., Inc. v. Guzman*, 2022 WL 790689, at *2 (2d Cir. Mar. 16, 2022) (citing 15 U.S.C. § 636(a)). In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") that authorized the SBA to guarantee loans to businesses with fewer than 500 employees, known as the Paycheck

Protection Program ("PPP"). 15 U.S.C. § 636(a)(36). The PPP loan program fell under the Section 7(a) loan program from the Small Business Act, but the CARES Act relaxed many of the conditions for qualification and forgave the loan if sixty percent of the loaned funds covered payroll expenses. *See id.*

In March 2021, Congress authorized a "second draw" of PPP loans and amended the CARES ACT to incentivize lenders to authorize smaller PPP loans. *See id.* § 636(a)(37). For loans under $50,000, lenders received reimbursement from the SBA of the lesser of fifty percent of the PPP loan amount or $2,5000. *Id.* § 636(a)(37)(L). These smaller loans are at the core of this case.

B.      *Factual Background*[1]

This dispute involves three parties who agreed to process PPP loans and divide the SBA fees earned from processing these loans. Womply is a technology company incorporated in Delaware that "developed . . . an internet portal through which borrowers searching for PPP assistance could . . . submit an application to PPP lenders[,] and . . . provided lenders and their partners . . . with a technology platform . . . to manage the . . . reviewing, approving, and servicing . . . of small dollar PPP loans." Doc. 20, Am. Compl., ¶¶ 3, 11. Womply's website allowed Womply to direct PPP loan applications to lenders and their partners for processing. *Id.* ¶ 39. Significantly, the website "made it substantially easier and more cost-effective for lenders to process, manage, and track . . . the smaller PPP loans to the smallest businesses." *Id.* ¶ 40. Womply spent over $268 million developing its website. *Id.* ¶ 66.

"Blueacorn is a Wyoming limited liability company with its principal place of business in Wyoming . . . that helps compile loan application paperwork for the PPP and partners with banks

---

[1] The facts are as alleged by Oto Analytics ("Womply") in the First Amended Complaint (Doc. 20).

to apply for and secure loans" *Id.* ¶¶ 15, 46 (quotation marks omitted). Calhoun is the CEO of Blueacorn and resides in Scottsdale, Arizona. *Id.* ¶ 16.

"Capital Plus [Financial ("Capital Plus")] was a small regional lender with less than $40 million in annual revenue," prior to the PPP loan program, and is a Texas limited liability company with its principal place of business in Texas. *Id.* ¶¶ 5, 12. Blueacorn contracts with Capital Plus and one other lender and has received "more than $500 million in fees" for its PPP loan facilitation with Capital Plus. *Id.* ¶ 9. Crossroads Systems Inc. ("Crossroads") owns Capital Plus and "is a Delaware corporation with its principal place of business . . . in Dallas, Texas." *Id.* ¶ 13. Eric Donnelly is the CEO of Crossroads. *Id.* ¶ 14.

In January 2021, Capital Plus announced a partnership with Blueacorn to process first and second draw PPP loan applications. *Id.* ¶ 46. Blueacorn earned over $314 million in PPP loan processing fees in the first quarter of 2021 through the partnership with Capital Plus. *Id.* ¶ 47. Crossroads earned $464.1 million with "$1.1 billion in deferred gross origination fees from the [PPP]." *Id.* ¶ 48.

In May 2021, Blueacorn approached Womply with a proposal for Womply to "refer PPP applicants to Capital Plus through Blueacorn . . . and . . . provide access to the Womply Technology Platform directly to Capital Plus" in return for "certain fees from Blueacorn for each Womply-referred PPP loan." *Id.* ¶ 55. As part of the proposal, Womply contracted with only Blueacorn after assurances that Womply would have visibility of a joint Blueacorn and Capital Plus SBA fee deposit account with Evolve Bank & Trust (the "Joint Account"). *Id.* ¶¶ 56–58, 87.

Womply entered two separate agreements with Blueacorn: one providing Womply one percent "for each referred loan"; and a second providing Blueacorn with various documents from

PPP applicants and integrated various third-party service providers in return for "the first $250 from any Lender Processing Fee, plus 1/3 of the remaining Lender Processing Fee after the first $250 is subtracted." *Id.* ¶¶ 62–67; Ex. 3, ¶ 2.2; Ex. 4, at 1, ¶ 3.3. Both agreements require Blueacorn to pay Womply within five business days of Blueacorn's receipt of its fees from the lender—Capital Plus. *Id.* Ex. 3, ¶ 2.3; Ex. 4, ¶ 3.5. Pursuant to the agreements, Capital Plus funded 86,521 PPP loans worth over $950 million and received $186,882,948 in Lender Processing Fees for Womply-referred loans. *Id.* ¶¶ 72, 76.

Final PPP loan applications were due to the SBA on May 31, 2021, and the PPP loan program officially ended on June 30, 2021. *Id.* ¶ 75. The SBA typically pays the lender processing fee within two to three weeks of funding the PPP loan. *Id.* ¶ 74. Because Womply had yet to receive any fees from Blueacorn as required by either agreement, Womply sent invoices to Blueacorn in July and August 2021 tallying the $76,714,482.67 in fees owed to Womply. *Id.* ¶¶ 77–79, 88. Blueacorn continues to insist that Capital Plus has not paid them and thus, payment to Womply is not yet due. *Id.* ¶¶ 6, 84–85, 97. Blueacorn has also refused to take any legal action against Capital Plus to compel payment of the fees. *Id.* ¶¶ 9, 97, 99. Womply has not received any payment from Blueacorn and has been denied visibility into the Joint Account. *Id.* ¶ 73. Womply believes that Blueacorn and Capital Plus have acted in concert with each other to deny payment to Womply. *Id.* ¶¶ 94–100.

Womply filed its initial complaint on October 25, 2021. *See* Doc. 1, Compl. Womply subsequently amended its original complaint on December 23, 2021, and now brings claims for fraud, negligent misrepresentation, and civil conspiracy against the Blueacorn Defendants and breach of contract claims against Blueacorn.[2] Doc. 20, Am. Compl., ¶¶ 131–48, 164–71, 178–90. The

---

[2] Womply also brings declaratory judgment, tortious interference with contracts, fraud, negligent misrepresentation, promissory estoppel, unjust enrichment, breach of contract, quantum meruit, and civil

Blueacorn Defendants filed this motion to dismiss on January 24, 2022. *See* Doc. 31, Defs.' Mot. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD[3]

When defendants move under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff "bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). When determining whether the plaintiff establishes a prima facie case, the court must "must accept as true the [p]laintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219–20 (5th Cir. 2012) (alterations incorporated) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir.2004)). In deciding whether the plaintiff has established personal jurisdiction, "[t]he district court may consider the contents of the record at the time of the motion[.]" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343–44 (5th Cir. 2002) (citation omitted).

Personal jurisdiction exists when "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "Because the Texas long-arm statute extends to the limits of federal due process,

---

conspiracy claims against Capital Plus, Crossroads, and Donnelly (the "Capital Plus Defendants"). Doc. 20, Am. Compl., ¶¶ 116–77, 186–90.

[3] The Court only provides the legal standard for a motion to dismiss for lack of personal jurisdiction because personal jurisdiction must be decided before addressing the substance of any claims and the personal jurisdiction issue is dispositive of the motion before the Court.

the two-step inquiry collapses into one federal due process analysis." *Id.* (citing *Johnston*, 523 F.3d at 609).

To satisfy due process, two elements must be met: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being brought to court there; and (2) the exercise of jurisdiction over the defendant must "comport[] with fair play and substantial justice." *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (citations omitted).

The "minimum contacts" prong of the due process analysis can be met through contacts that give rise to either general or specific jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). In contrast, specific jurisdiction exists "only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Gundle*, 85 F.3d at 205.

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha*, 882 F.3d at 102 (citation omitted). In determining whether the assertion of jurisdiction is fair, the Court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in

furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

## III.

## ANALYSIS

The Blueacorn Defendants seek dismissal of Womply's claims against it in favor of arbitration, under Rule 12(b)(2) for a lack of personal jurisdiction, and under Rule 12(b)(6) because of Womply's failure to state a claim. Doc. 31, Defs.' Mot. Because personal jurisdiction is dispositive of the motion and must be decided before the addressing the substance of the claims, the Court only addresses the Blueacorn Defendant's personal jurisdiction arguments.[4] *See Pervasive Software*, 688 F.3d at 231 ("Personal jurisdiction, [like subject matter jurisdiction], is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" (quoting *Ruhrgas*, 526 U.S. at 584)).

Personal jurisdiction can be either general or specific. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 312 n.2 (5th Cir. 2007). General jurisdiction requires a defendant to be "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Specific jurisdiction requires a defendant to have certain "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Court begins its analysis with general jurisdiction and because the Court finds this lacking, the Court then analyzes whether the Court may exercise specific jurisdiction over the Blueacorn Defendants.

---

[4] The Blueacorn Defendants did not submit to the Court's personal jurisdiction for the limited purpose of compelling arbitration, which the Fifth Circuit recognizes as not "waiving challenges to personal jurisdiction for other purposes." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 529 n.2 (5th Cir. 2019). Thus, the Court must address the issue of personal jurisdiction first.

A.      *General Jurisdiction*

For general personal jurisdiction, "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," generally, its place of incorporation or principal place of business. *Goodyear*, 564 U.S. at 924; *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is "at home" when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 919).

The Blueacorn Defendants argue that the Court lacks personal jurisdiction over them because they are not a resident of Texas and are thus, not "at home in Texas." Doc. 31, Defs.' Mot., 6. Womply asserts that the Court may exercise general jurisdiction over the Blueacorn Defendants[5] because "Blueacorn's nearly exclusive relationship with Capital Plus" resulted in Capital Plus becoming "one of the largest PPP lenders in the country" and Blueacorn is Capital Plus's agent under SBA regulations. Doc. 45, Pl.'s Resp., 11–12 n.3. Thus, according to Womply, the Blueacorn Defendants are essentially "at home" in Texas. *Id.*

But the Blueacorn Defendants are not "at home" in the State of Texas. Calhoun is a resident of Scottsdale, Arizona. Doc. 20, Am. Compl., ¶ 16; *see Goodyear*, 564 U.S. at 924. Blueacorn is neither incorporated nor is its principal place of business in Texas. *See Daimler*, 571 U.S. at 137. Nor

---

[5] Womply raises the same personal jurisdiction arguments for Blueacorn and Calhoun, Doc. 45, Pl.'s Resp., 13 ("[Calhoun] is subject to personal jurisdiction in Texas for the same reasons as Blueacorn."). Accordingly, the Court considers the Blueacorn Defendants collectively.

does Blueacorn have such continuous and systematic contacts with Texas to render it at home. This case is not like the seminal *Perkins v. Benguet Consolidated Mining Co.* case where the Supreme Court found general jurisdiction existed over the defendant because it conducted its business operations from the forum state. 342 U.S. 437, 448 (1952). While the Court views the allegation that Blueacorn had a "nearly exclusive relationship with Capital Plus" as true at this stage of the case, Doc. 45, Pl.'s Resp., 11 n.3, Blueacorn conducted all business operations outside of Texas. Blueacorn transmitted loan applications to one recipient in Texas, Capital Plus, but this cannot form the basis for general personal jurisdiction.[6] Thus, the Court turns to analyze whether the Court has specific jurisdiction over the Blueacorn Defendants.

B.      *Specific Jurisdiction*

For specific jurisdiction, a "nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks omitted). The "minimum contacts" inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 284 (internal quotation marks omitted). The Fifth Circuit applies a three-step analysis focusing on:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

---

[6] Under 13 C.F.R. § 103.1(a), Blueacorn possibly qualifies as Capital Plus's agent because Blueacorn is a "lender service provider" for Capital Plus under the Womply Agreements. Regardless of this determination, Womply has not shown the Court how this would extend general personal jurisdiction over Blueacorn. *See Goodyear*, 564 U.S. at 929 (finding no general personal jurisdiction over foreign defendants that were subsidiaries of the domestic defendant); *Daimler*, 571 U.S. at 139 (finding no general personal jurisdiction existed over a foreign defendant based on its agent's activities within the forum state).

*Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

The Court will now address the parties' arguments in context of the Fifth Circuit's three-part test for specific jurisdiction.

1.      The Blueacorn Defendant's Minimum Contacts

"Capital Plus is a Texas limited liability company with its principal place of business . . . in Bedford, Texas." Doc. 20, Am. Compl., ¶ 12. Blueacorn is a Wyoming limited liability company with its principal place of business in Wyoming.[7] *Id.* ¶ 15. Blueacorn initiated the negotiations to contract with Womply and Capital Plus for the PPP referral loan program. *Id.* ¶ 55. Under the agreements, Womply collected the PPP loan applications through its technology platform, referred these applications to Blueacorn for compilation and evaluation, and Blueacorn would forward "all Womply-referred PPP loan[] [applications] to Capital Plus for origination." *Id.* ¶¶ 46, 55, 58; Doc. 31, Defs.' Mot., 1. Capital Plus also gained access to Womply's technology platform. *Id.* ¶ 55. In return for Womply's referrals, "the SBA fees for all Womply-referred PPP loans funded by Capital Plus would be deposited directly into the Joint Account." *Id.* ¶ 58. Womply referred 86,521 PPP loans through Blueacorn to Capital Plus. *Id.* ¶ 166. Any alleged contact with Texas occurred through Capital Plus, which conducted all loan origination from Texas. *Id.* ¶ 12. Thus, the issue is whether

---

[7] Womply asserts that Blueacorn might have been restructured to Blueacorn PPP, LLC as an Arizona limited liability company with its principal place of business in Arizona. Doc. 20, Am. Compl., ¶ 15. Whether Blueacorn is a Wyoming or Arizona company with its principal place of business in either is irrelevant for the Court's inquiry. What is relevant is that Blueacorn is not a Texas company with its principal place of business in Texas (i.e. Blueacorn is foreign to Texas) and either location provides the Court with this relevant information.

Blueacorn and Calhoun purposely availed themselves of the laws of Texas through the business relationship with Capital Plus.

The Blueacorn Defendants argue that the Court lacks specific personal jurisdiction because they did not purposefully direct their activities toward Texas or injure Womply in Texas. Doc. 31, Defs.' Mot., 6–11. According to the Blueacorn Defendants, "Blueacorn has had no contractual duties to perform" and the contractual relationship between Blueacorn and Capital Plus "is an insufficient basis for jurisdiction." Doc. 47, Reply, 3 (quoting *Walden*, 571 U.S. at 285).

Womply counters that its "contract claims . . . arise out of Blueacorn's substantial activities directed at Texas," which establishes specific personal jurisdiction. Doc. 45, Resp., 11. Specifically, Womply contends that Blueacorn's CEO induced Womply's CEO "to enter into the Agreements, . . . [where] Womply provided . . . services to Capital Plus in Texas." *Id.* at 11–12. After entering into the agreements, Womply referred 86,521 PPP loans to Blueacorn "and then referred *all* of those loans to Capital Plus in Texas." *Id.* at 12; Doc. 46-1, Pl.'s App., Scammell Decl. ¶ 57. Blueacorn, acting on behalf of Capital Plus, subsequently coordinated with Womply to handle various individual PPP loan matters. Doc. 45, Resp., 12.

The facts of this case resemble those of *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). In *Burger King*, the Supreme Court found the forum state had personal jurisdiction over a respondent who never physically entered the forum state. 471 U.S. at 479. The center of the dispute revolved around "a contract which had a substantial connection with [the forum state.]" *Id.* The respondent reached out to a corporation in the forum state to establish a "20-year relationship that envisioned continuing and wide-reaching contacts." *Id.* at 480. Thus, after examining the "prior negotiations and contemplated future consequences, along with the terms of the contract and the

parties' actual course of dealing," the Court found sufficient minimum contacts to establish personal jurisdiction in the forum state. *Id.* at 479–80.

Similar to the respondent in *Burger King*, Blueacorn and its CEO might never have physically entered Texas. *See Burger King*, 471 U.S. at 476; Doc. 45, Resp., 13 n.4. However, Blueacorn entered an agreement centered in Texas. The negotiations centered around drawing Womply into an agreement to facilitate the origination of loans through Capital Plus in Texas. Doc. 46-1, App., Scammel Decl., ¶¶ 17–19 (citing 46-1, App., Ex. 2). Blueacorn facilitated and individually transmitted 86,521 PPP loans from Womply to Capital Plus in Texas. Doc. 20, Am. Compl., ¶ 72. In effect Blueacorn directed these loan applications to Texas. *See Burger King*, 471 U.S. at 473 ("[A] forum legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' his activities toward forum residents."); *see also Walden*, 571 U.S. at 290 (discussing the importance of the defendant's contacts to the forum state).

Additionally, the Court focuses on the "contacts that the 'defendant *himself*' create[d] with the forum State" and "not the defendant's contacts with persons who reside there." *Id.* at 284–85 (first quoting *Burger King*, 471 U.S. at 475; and then citing *Int'l Shoe*, 326 U.S. at 319). Every application that Blueacorn sent to Capital Plus created a new contact with Texas, regardless of whether Blueacorn made contact with Womply in the State. For these reasons, the Court finds the Blueacorn Defendants have enough minimum contacts with Texas to warrant personal jurisdiction and turns to the second step of the analysis.

    2.    <u>Whether the Causes of Action Arise From the Blueacorn Defendants' Minimum Contacts</u>

Womply brings three tort claims and two breach-of-contract claims against the Blueacorn Defendants. Doc. 20, Am. Compl., ¶¶ 131–48, 164–71, 178–90. Count Three is a fraud claim

regarding the May 11 phone call where Blueacorn and Capital Plus allegedly made comments about their Joint Account. *Id.* ¶¶ 131–39. Count Four is a negligent misrepresentation claim for the same May 11 phone call. *Id.* ¶¶ 140–48. Count Seven is a breach-of-contract claim for an oral agreement stemming from the negotiations for processing the PPP loans. *Id.* ¶¶ 164–71. Count Nine is a breach-of-contract claim for Blueacorn's refusal to pay Womply under the written agreements. *Id.* ¶¶ 178–85. And Count Ten is a civil conspiracy claim[8] alleging the Blueacorn Defendants conspired together and with the Capital Plus Defendants to commit tortious and unlawful acts against Womply. *Id.* ¶¶ 186–90.

Womply needs to make a prima facie showing that each cause of action "arose out of or resulted from each defendant's minimum contacts with the forum state," *see Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999), "[b]ut when multiple claims arise from the same contacts, specific jurisdiction does not need to be established for each claim." *Sedillo as Tr. of Filo & Fran Sedillo Revocable Tr. v. Team Techs., Inc.*, 2020 WL 6870711, at *3 (N.D. Tex. Nov. 23, 2020) (citing *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007)). The fraud, negligent misrepresentation, breach-of-contract, and civil conspiracy claims all allegedly arose from the Blueacorn Defendants' contacts with Texas: the transmission of loan applications to Capital Plus in Texas. But, even though all the claims arise from the same forum contacts, the Court analyzes the tort and breach-of-contract claims separately because the analysis slightly differs and Womply provides different theories that are more appropriate for each type of claim. The Court analyzes the tort claims before addressing the breach-of-contract claims.

---

[8] Under Texas law, a plaintiff must "state a separate underlying claim" for a conspiracy claim because civil conspiracy is a derivative tort. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996)). Thus, the Court analyzes the conspiracy claim with the tort claims.

> i.       *Womply's tort claims*

The Blueacorn Defendants contend that the Court lacks specific personal jurisdiction over

the Blueacorn Defendants because the tort claims do not suggest that they caused a tort in Texas

or committed an act outside of Texas that caused a tortious injury in Texas. Doc. 47, Defs.' Reply,

1.

For the tort claims, Womply argues that the Court has personal jurisdiction over the

Blueacorn Defendants because "the facts relating to the contract and fraudulent inducement claims

are intertwined" and the Blueacorn Defendants' "tortious activity . . . had a substantial impact in

Texas." *Id.* at 13–14 (quoting *Sedillo*, 2020 WL 6870711, at *3).

The Court finds the *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.* case instructive

for the issue of whether the causes of action arose from the Blueacorn Defendants' contacts with

Texas. 24 F.4th 491 (5th Cir. 2022). In *Danziger*, the plaintiff brought various tort claims—including

fraud—and a breach-of-contract claim against Ohio-based defendants for violation of an attorneys'

fee arrangement. *Id.* at 494–95. None of the defendants resided in Texas, but the plaintiff alleged the

defendants conduct affected them in Texas. *Id.* at 495. The court analyzed the tort and breach-of-

contract claims separately because the claims arose from separate forum contacts. *Id.* at 495. For the

tort claims, the Fifth Circuit found specific personal jurisdiction lacking because "none of th[e]

conduct *occurred* in Texas." *Id.* at 497. "The only act or omission . . . plausibly *connected* to Texas"

was an unsolicited reply to an email by the defendant. *Id.* The court held that answering one

unsolicited email, like answering one unsolicited phone call, could not "*meaningfully* connect" a

defendant to Texas. *Id.* at 497–98. In sum, Texas courts lacked jurisdiction because none of the tort

claims "occurred in Texas or was otherwise meaningfully connected to the state." *Id.* at 500.

Here, none of the conduct for the tort claims "*occurred* in Texas." *See id.* at 497. All of the communications occurred between parties in states other than Texas. The Blueacorn Defendants communicated with Womply outside of Texas while Womply was outside of Texas. *See* Doc. 20, Am. Compl., ¶¶ 55–79. The Blueacorn Defendants did not direct any fraudulent or negligent misrepresentations to Texas. Doc. 31, Defs.' Mot., 8 ("[T]he Complaint does not allege that anyone on the call was in Texas."). The only acts of the Blueacorn Defendants *connected* to Texas are the submissions of loan applications to Capital Plus in Texas, which did not involve Womply. Further, Womply suffered the alleged injuries outside of Texas. Womply was not in Texas when the Blueacorn Defendants committed any of these contacts with Texas, nor did Womply suffer any "effects" from the Blueacorn Defendant's actions in Texas. *See Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (emphasizing the "effects" of the defendant's conduct when analyzing specific personal jurisdiction). Because "none of th[e] conduct *occurred* in Texas," nor was it directed toward Texas, the Court lacks personal jurisdiction over the Blueacorn Defendants for the tort claims. *See Danziger*, 24 F.4th at 497. Stated more succinctly, the forum state lacks a relationship to the defendant and the litigation. *Walden*, 571 U.S. at 284.

### ii. *Womply's breach-of-contract claims*

The Blueacorn Defendants argue that the agreements did not "involve[] Blueacorn directing activity at Texas with the intent to avail itself of the benefits and protections of Texas's laws." Doc. 31, Defs.' Mot., 9. Further, relying on *Walden*, the Blueacorn Defendants contend that Blueacorn's business relationship with Capital Plus is irrelevant to the personal jurisdiction analysis. *Id.* at 9–11.

Womply counters that the dispute between the parties grew out of the agreements "'which had a *substantial* connection with' Texas" and provide a basis for personal jurisdiction for the breach-of-contract claims. Doc. 45, Resp., 13 (quoting *Burger King*, 471 U.S. at 479–80).

The breach-of-contract claims do not allow this Court to exert personal jurisdiction over the Blueacorn Defendants because "the contract underlying the business transaction at issue in the lawsuit was not signed in the state *and* did not call for performance in the state." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (emphasis added) (quoting *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014)). Womply and the Blueacorn Defendants negotiated their agreements and conducted all discussions during the course of performance of the agreements outside of Texas, and the Blueacorn Defendants mostly performed outside of Texas (reviewing the applications outside of Texas and sending the approved application to Capital Plus in Texas). Doc. 20, Am. Compl. However, neither party signed the agreement in the state. *Id.* The Fifth Circuit has repeatedly made clear that a party must sign *and* perform in the forum state for personal jurisdiction to exist. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 212; *Sangha*, 882 F.3d at 103; *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014); *Seiferth*, 472 F.3d at 273; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("[The plaintiff] must show that the defendant . . . enter[ed] a contractual relationship centered there.").

Further, the Court finds Womply's reliance on *Burger King* unavailing for this prong of the specific personal jurisdiction analysis. The Court in *Burger King* noted that the "franchise dispute grew directly out of 'a contract which had a *substantial* connection with that State.'" 471 U.S. at 479 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The Court further noted the defendant "deliberately 'reach[ed] out beyond'" his home state, "entered into a carefully structured

20-year relationship that envisioned continuing and wide-reaching contacts with Burger King," "caused foreseeable injuries to the corporation in Florida," and "the agreements were made in and enforced from Miami." *Id.* at 479–80.

In the abstract, it would appear that Womply and Blueacorn's agreements had a "*substantial* connection with [Texas]" because of the large number of applications and the actual monetary value of these contacts. *See id.* at 479. But the case quoted by the *Burger King* Court for this factor, *McGee v. International Life Insurance Company*, shows otherwise. In *McGee*, the Court found an insurance contract had a "substantial connection" with the forum state—California—because "[t]he contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died." 355 U.S. at 223.

At the outset, this Court notes that the contacts in *McGee* flowed into and out of the forum state. This highlights how the *McGee* Court focused on the substance of the connections and not the number or monetary value of the connections. *Id.* (listing the types of connections to the forum state and not the number); *see also Substantial*, Black's Law Dictionary (4th ed. 1951) ("Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable.").[9] Here, the contacts flowed purely from Blueacorn to Texas. Doc. 20, Am. Compl., ¶ 55. Thus, even though Blueacorn sent 86,521 loan applications with a value of over $950 million, Doc. 20, Am. Compl., ¶ 72, the substance of the connections to Texas is what matters for the personal jurisdiction analysis. Blueacorn's one-way contacts, while numerically and monetarily high, were not "substantial" in that the contacts did not solidly connect Blueacorn to Texas. Additionally, here,

---

[9] Black's Law Dictionary also defines substantial as "[o]f real worth and importance; of considerable value; valuable" and "[s]omething worth while as distinguished from something without value or merely nominal." *Substantial*, Black's Law Dictionary (4th ed. 1951). The Court finds these definitions inapplicable because of the context of the term's use in the *McGee* case.

none of the *McGee* connections with the forum state exist. The agreements were not delivered in Texas, no premiums were sent to Texas, and neither Blueacorn nor Womply reside in Texas. *See* Doc. 20, Am. Compl. However, viewing the complaint most favorably to Womply, Blueacorn did send the loan applications to Texas, the equivalent of sending premiums into a state. *See McGee*, 355 U.S. at 223. However, this case lacks the other connections—or similar connections—to establish that the agreements between Womply and Blueacorn had a "substantial connection" with Texas for the breach-of-contract causes of action to arise from Blueacorn's contacts with Texas.

Because the Court finds Womply's causes of action do not arise from the Blueacorn Defendants's connections to Texas, the Court does not need to address the third prong of the personal jurisdiction analysis. And because the Court lacks personal jurisdiction over the Blueacorn Defendants, the Court **DISMISSES** the claims against Blueacorn and Calhoun.

## IV.

## CONCLUSION

For the foregoing reasons, the Blueacorn Defendant's motion to dismiss (Doc. 31) is **GRANTED**, and Womply's claims against Blueacorn and Calhoun are **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED.

SIGNED: April 11, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE