UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OTO ANALYTICS, INC. d/b/a WOMPLY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2636-B |
| | § | |
| CAPITAL PLUS FINANCIAL, LLC, | § | |
| CROSSROADS SYSTEMS, INC., and | § | |
| ERIC DONNELLY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Capital Plus Financial, LLC ("Capital Plus"), Crossroads Systems, Inc., and Eric Donnelly (collectively, the "Capital Plus Defendants")'s Motion to Dismiss Under Rule 12(b)(6) (Doc. 42). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Capital Plus Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** counts 4, 5, 6, 7, and 8 in Oto Analytics, Inc. d/b/a Womply ("Womply")'s Amended Complaint.

## I.

## BACKGROUND

A.   *Statutory Framework*

The Small Business Administration ("SBA") provides financing to small businesses through private "Section 7(a) loans" under the Small Business Act. *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 408–09 (2d Cir. 2022) (citing 15 U.S.C. § 636(a)). In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), a provision of which—known

as the Paycheck Protection Program ("PPP")—authorized the SBA to guarantee loans to businesses with fewer than 500 employees. 15 U.S.C. § 636(a)(36). The PPP loan program fell under the SBA's Section 7(a) loan program, but relaxed many of the conditions for qualification and forgave an underlying loan if sixty percent of the loaned funds covered payroll expenses. *See id.*

In March 2021, Congress authorized a "second draw" of PPP loans and amended the CARES ACT to incentivize lenders to authorize smaller PPP loans. *See id.* § 636(a)(37). For loans under $50,000, lenders received reimbursement from the SBA of the lesser of fifty percent of the PPP loan amount or $2,5000. *Id.* § 636(a)(37)(L). These smaller loans are at the core of this case.

B.     *Factual Background*[1]

This dispute involves three parties who agreed to process PPP loans and divide the SBA Fees earned from processing these loans. Womply is a technology company incorporated in Delaware that "developed . . . an internet portal through which borrowers searching for PPP assistance could . . . submit an application to PPP lenders[,] and . . . provided lenders and their partners . . . with a technology platform . . . to manage the . . . reviewing, approving, and servicing . . . of small-dollar PPP loans." Doc. 20, Am. Compl., ¶¶ 3, 11. Womply's technology platform allowed it to direct PPP loan applications to lenders and their partners for processing. *Id.* ¶¶ 39, 40. Significantly, the technology platform "made it substantially easier and more cost-effective for lenders to process, manage, and track . . . the smaller PPP loans to the smallest businesses." *Id.* ¶ 40. Womply spent over $268 million developing its technology platform. *Id.* ¶ 66.

"Blueacorn is a Wyoming limited liability company with its principal place of business in Wyoming . . . that helps compile loan application paperwork for the PPP and partners with banks

---

[1] The facts are as alleged by Womply in the First Amended Complaint (Doc. 20).

to apply for and secure loans" *Id.* ¶¶ 15, 46 (quotation marks omitted). Calhoun is the CEO of Blueacorn and resides in Arizona. *Id.* ¶ 16.

"Capital Plus was a small regional lender with less than $40 million in annual revenue" before the PPP loan program, and is a Texas limited liability company with its principal place of business in Texas. *Id.* ¶¶ 5, 12. Blueacorn contracts with Capital Plus and one other lender and has received "more than $500 million in fees" for its PPP loan facilitation with Capital Plus. *Id.* ¶ 9. Crossroads Systems Inc. ("Crossroads") owns Capital Plus and "is a Delaware corporation with its principal place of business . . . in Dallas, Texas." *Id.* ¶ 13. Eric Donnelly is the CEO of Crossroads. *Id.* ¶ 14.

In January 2021, Capital Plus announced a partnership with Blueacorn to process first and second draw PPP loan applications. *Id.* ¶ 46. Blueacorn reportedly earned over $314 million in PPP loan processing fees in the first quarter of 2021 through the partnership with Capital Plus. *Id.* ¶ 47. Crossroads reportedly earned $464.1 million with "$1.1 billion in deferred gross origination fees from the [PPP]." *Id.* ¶ 48.

In May 2021, Blueacorn approached Womply with a proposal for Womply to "refer PPP applicants to Capital Plus through Blueacorn . . . and . . . provide access to the Womply Technology Platform directly to Capital Plus" in return for "certain fees from Blueacorn for each Womply-referred PPP loan." *Id.* ¶ 55. As part of the proposal, Womply contracted with only Blueacorn after assurances that Womply "would have visibility into" a joint Blueacorn and Capital Plus SBA Fee deposit account with Evolve Bank & Trust (the "Joint Account"). *Id.* ¶¶ 56–58, 87.

Womply entered two separate agreements with Blueacorn: one providing Womply one percent "for each referred loan"; and a second providing Blueacorn with various documents from PPP applicants and integrated various third-party service providers in return for "the first $250 from any Lender Processing Fee, plus 1/3 of the remaining Lender Processing Fee after the first $250 is

subtracted." *Id.* ¶¶ 62–67; Ex. 3, ¶ 2.2; Ex. 4, at 1, ¶ 3.3. Both agreements require Blueacorn to pay Womply within five business days of Blueacorn's receipt of its fees from the lender—Capital Plus. *Id.* Ex. 3, ¶ 2.3; Ex. 4, ¶ 3.5. Pursuant to the agreements, Capital Plus funded 86,521 PPP loans worth over $950 million and received $186,882,948 in Lender Processing Fees for Womply-referred loans. *Id.* ¶¶ 72, 76, 176.

Final PPP loan applications were due to the SBA on May 31, 2021, and the PPP loan program officially ended on June 30, 2021. *Id.* ¶ 75. The SBA typically pays the lender processing fee within two to three weeks of funding the PPP loan. *Id.* ¶ 74. Because Womply had yet to receive any fees from Blueacorn as required by either agreement, Womply sent invoices to Blueacorn in July and August 2021 tallying the $76,714,482.67 in fees owed to Womply. *Id.* ¶¶ 77–79, 88. Blueacorn continues to insist that Capital Plus has not paid them and thus, payment to Womply is not yet due. *Id.* ¶¶ 6, 84–85, 97. Blueacorn has also refused to take any legal action against Capital Plus to compel payment of the fees. *Id.* ¶¶ 9, 97, 99. Womply has not received any payment from Blueacorn and has been denied visibility into the Joint Account. *Id.* ¶ 73. Womply believes that Blueacorn and Capital Plus have acted in concert with each other to deny payment to Womply. *Id.* ¶¶ 94–100.

Womply filed its Original Petition on September 9, 2021. *See* Doc. 1-4, Original Pet. The Capital Plus Defendants timely removed the case to this Court on October 25, 2021, based on federal question jurisdiction and the federal officer removal statute. *See* Doc. 1, Notice of Removal, ¶¶ 2, 4. Womply subsequently amended its Original Petition on December 23, 2021, and now brings claims for declaratory judgment, tortious interference with contracts, fraud, negligent misrepresentation, promissory estoppel, unjust enrichment, quantum meruit, and civil conspiracy

against the Capital Plus Defendants and breach of contract against Capital Plus.[2] Doc. 20, Am. Compl., ¶¶ 116–77, 186–90. The Capital Plus Defendants filed this motion to dismiss on January 31, 2022. *See* Doc. 42, Defs.' Mot. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

A.  *Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2] The Court previously dismissed all claims against the other defendants in this case, BA Fin Orion LLC d/b/a Blueacorn and Barry Calhoun, for lack of personal jurisdiction. *Oto Analytics, Inc. v. Capital Plus Financial, LLC*, 2022 WL 1082368, at *9 (April 11, 2022).

liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

To decide this motion, the Court must make three determinations: (1) whether Womply is an "agent" as defined by the SBA regulations, (2) whether this determination caps recovery for SBA Fees, and (3) whether this determination also caps recovery for Technology Fees. The Court individually addresses the first and second determinations, then addresses the third determination in Section III(C)(1), the declaratory judgment claim.

A.      *Whether Womply Was an Agent*

Capital Plus contends that Womply is an "agent" as that term is defined in SBA regulations, which negates or caps Womply's recovery for SBA and Technology Fees. Doc. 43, Defs.' Br., 13, 19–24. Capital Plus argues that Womply acted as both "an authorized representative" and "any other person representing an Applicant or Participant by conducting business with the SBA." *Id.* at 13–14 (quoting 13 C.F.R. § 103.1(a)). For the first definition, Womply was "'endowed with authority' by another," according to Defendants, when referring PPP applications to PPP lenders on behalf of the applicants. *Id.* at 14 (quoting *Colson Servs. Corp. v. Ins. Co. of N. Am.*, 874 F. Supp. 65, 68 (S.D.N.Y. 1994). For the second definition, Capital Plus avers that the "eliminat[ion]" of the word "authorized" expanded the category to include "anyone acting even in an informal capacity," which would include someone who—like Womply—"'represented' both Applicants and Participants" by assisting in the

preparation of PPP loan applications. *Id.* at 15. Womply also conducted business with the SBA because Womply "processed" loan applications, Defendants argue. *Id.* Per the contractual obligations with Blueacorn, Womply also "prepared" and "submitted" the loan applications, Defendants contend. *Id.* Lastly, Defendants argue that Womply's "claim[] . . . it is a 'technology service' provider . . . is meritless" because Womply provided underwriting services and human services, which fall outside the "technology services" exception. *Id.* at 16–18.

Womply contends that: (1) it did not "conduct business with the SBA" as an agent of an applicant or participant because borrowers and Capital Plus—not Womply—"submitted" their applications to the SBA, while Womply merely "[r]eferred applicants to lenders"; (2) Capital Plus incorrectly reads the definition of agent to include two separate categories of individuals; (3) the Referral Agreement between Womply and Blueacorn makes clear that Womply did not "represent" Blueacorn; (4) Womply did not "prepare" applications for the loan borrowers because Womply only verified information as a "fraud check" of the applications; and (5) "conducting business with the SBA" is not so broad as to include "anyone who applied any 'process' to a loan application." Doc. 61, Pl.'s Resp., 8–12. Womply also argues that its collecting of loan application documents did not constitute "underwriting" as the SBA defines the term and that the Referral Agreement makes clear that Capital Plus would conduct the underwriting. *Id.* at 12–15. Finally, Womply argues that the SBA Standard Operating Procedure provides a valid technology services exception that applies to at least some of Womply's services. *Id.* at 15.

The Court agrees in part with both parties. First, Capital Plus incorrectly bifurcates the definition of "agent." "*Agent* means an authorized representative, including an attorney, accountant, consultant, packager, lender service provider, or any other person representing an Applicant or Participant by conducting business with SBA." 13 C.F.R. § 103.1(a). Capital Plus's bifurcation

incorrectly separates "any other person representing an Applicant or Participant by conducting business with [the] SBA" from "an authorized representative," which would broaden the definition beyond its intended scope. The SBA's definition does not define "agent" as either "an authorized representative, including an attorney, accountant, consultant, packager, lender service provider" or "any other person representing an Applicant or Participant by conducting business with SBA." *See id.* The definition places an Oxford comma before the word "or" after providing specific examples of an "agent." After the comma and the word "or," the regulation provides a general or collective phrase which "calls for the application of the maxim *ejusdem generis*, the statutory canon that '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001). Bifurcating the definition would run afoul of this canon. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008) ("The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase.").

Further, the second half of the definition uses the word "representing" in the phrase "any other person representing," mirroring the first half's use of the word "representative." *See* 13 C.F.R. § 103.1(a). This indicates that "any other person representing an Applicant or Participant" is an example of "an authorized representative," an inference that is supported by two prior SBA rule change proposals. *See id.* The SBA in 2014 proposed a rule change to define the term "agent" as "a representative authorized to conduct business on behalf of another, including but not limited to an attorney, accountant, consultant, loan agent (such as a packager, referral agent, or lender service provider), or any other person representing an Applicant or Participant by conducting business with SBA." Agent Revocation and Suspension Procedures, 79 Fed. Reg. 62060-01 (proposed Oct. 16,

2014) (to be codified at 13 C.F.R. § 103.1(a)). The current definition also largely mirrors the 2020 proposed rule change, which was intended to "mov[e] the definitions of LSP, Packager, and Referral Agent into § 103.1(a) . . . which will clarify that these are different types of Agents for purposes of the business loan programs." Express Loan Programs; Affiliation Standards, 85 Fed. Reg. 7622-01 (proposed Feb. 10, 2020) (to be codified at 13 C.F.R. § 103.1(a)). Neither rule change implies a bifurcation in the definition of "agent." These proposed definitions and later adopted definition further support the Court's holding that the current definition includes one long illustrative list and not two bifurcated definitions of the same word. *See United States v. Kaluza*, 780 F.3d 647, 660–61 (5th Cir. 2015) (quoting *Garcia v. United States*, 469 U.S. 70, 74 (1984)) ("[W]here general words follow an enumeration of specific terms, the general words are read to apply only to other items like those specifically enumerated.").

Second, because the definition consists of one long illustrative list, the second half of the definition does not include those acting in an informal capacity. Capital Plus contends that "any other person representing an Applicant or Participant by conducting business with SBA" does not include the word "authorized" before "representative/representing," broadening the definition to include those acting in an informal capacity. Doc. 43, Defs.' Mot. Dismiss, 15. As discussed above, Capital Plus misreads the definition by asking the Court to read a comma as a semicolon and bifurcate the catch-all phrase from the first half of the "agent" definition. The definition cannot be read in such a manner and does not include those acting in an informal capacity. *See* 13 C.F.R. § 103.1(a).

Applying the definition thus construed, the Court finds Womply was an "agent." Capital Plus does not allege that Womply is an "attorney, accountant, consultant, packager, [or] lender service provider." *See* Doc. 43, Defs.' Mot. Dismiss. According to the information before the Court, Womply

never held itself out as an attorney, accountant, or consultant for any of the applicants. Womply also was not a "packager" as § 103.1 defines that term[3] because Womply was not "employed *and* compensated by an Applicant or lender" since Blueacorn—who is not a lender—is supposed to compensate Womply. *See* 13 C.F.R. § 103.1(e). Womply was also not a lender service provider[4] according to the SBA definition because Womply did not "originat[e], disburs[e], service[e], or liquidat[e]" loans. *See* 13 C.F.R. § 103.1(d); Doc. 46-1, Pl.'s App., Referral Agreement ¶ 1.3. Thus, whether Womply is an "agent" turns on whether Womply "represented an Applicant or Participant by conducting business with SBA."

Significantly, the SBA definitions provide a separate definition for "referral agent,"[5] which "means a person or entity who identifies and refers an Applicant to a lender or a lender to an Applicant. The Referral Agent may be employed and compensated by either an Applicant or a lender." 13 C.F.R. § 103.1(f). This definition accurately defines Womply's role in the relationship between it, Blueacorn, and Capital Plus. Womply and Blueacorn entered into a Referral Agreement "whereby Womply provides referrals to Blueacorn in connection with potential loan applicants seeking loans under the PPP from third-party lenders." Doc. 46-1, Pl.'s App., Referral Agreement.

---

[3] "Packager means an Agent who is employed and compensated by an Applicant or lender to prepare the Applicant's application for financial assistance from SBA. SBA determines whether or not one is a 'Packager' on a loan-by-loan basis." 13 C.F.R. § 103.1(e).

[4] "Lender Service Provider means an Agent who carries out lender functions in originating, disbursing, servicing, or liquidating a specific SBA business loan or loan portfolio for compensation from the lender. SBA determines whether or not one is a 'Lender Service Provider' on a loan-by-loan basis." 13 C.F.R. § 103.1(d).

[5] The parties partially addressed this definition. *See* Doc. 42, Defs.' Mot. Dismiss, 24 (referencing Womply's one-paragraph referral-agent argument in its response to the Court's Order questioning subject matter jurisdiction); Doc. 17, Pl.'s Resp. Order Show Cause, 16 (arguing the SBA regulations do not mention referral agents so the regulations do not apply to referral agenst). *But see* Doc. 61, Pl.'s Resp. (failing to address the argument); Doc. 65, Defs.' Reply (dropping the argument). For the above reason, the Court rejects Womply's argument.

Thus, under the Referral Agreement, Womply "identifie[d] and refer[red] an Applicant to a lender" through Blueacorn who "submi[tted] to third-party lenders" PPP loans. *Id.*; *see also* Doc. 20, Am. Compl., ¶ 40 ("The Technology Platform provided lenders with similar PPP loan application collection and referral services that Womply provided before."). Accordingly, Womply is a "referral agent," which is a type of "agent" under the SBA regulations. *See* 13 C.F.R. § 103.1. *See generally* Express Loan Programs; Affiliation Standards, 85 Fed. Reg. 7622-01 (proposed Feb. 10, 2020) (to be codified at 13 C.F.R. § 103.1(a)) (proposing an interim final rule to change the definition of agent and clarify that a "referral agent" is an agent).

The "referral agent" definition firmly fits into the general or collective phrase "any other person representing an Applicant[6] or Participant[7] by conducting business with SBA." *See* 13 C.F.R. § 103.1(a). During the application process, Womply compiled documents that Applicants provided and verified certain information before sending the applications to Blueacorn. *See* Doc. 46-1, Pl.'s App., Referral Agreement, Ex. A. Thus, Womply represented the Applicants or Participants in the initial phase of their application before sending the applications to Blueacorn.

Womply also conducted business with the SBA according to the regulation. The regulation provides five separate definitions for the phrase "conduct business with SBA" and Capital Plus relies on the first and second definitions,[8] arguing Womply "[p]repar[ed] or submit[ed] on behalf of an

---

[6] An Applicant is "any person, firm, concern, corporation, partnership, cooperative or other business enterprise applying for any type of assistance from SBA." 13 C.F.R. § 103.1(c).

[7] A Participant is "a person or entity that is participating in any of the financial, investment, or business development programs authorized by the Small Business Act or Small Business Investment Act of 1958." 13 C.F.R. § 103.1(g).

[8] The other definitions are:

(3) Participating with or communicating in any way with officers or employees of SBA on an applicant's, participant's, or lender's behalf;
(4) Acting as a lender service provider; and

applicant an application" or "prepar[ed] or process[ed] on behalf of a lender or a participant . . . an application for federal financial assistance." *Id.* § 103.1(b)(1–2); *see* Doc. 43 Defs.' Br., 15. Notably, none of the definitions require a party to *directly* interact with the SBA. But the SBA regulations do not define the terms "prepare," "submit," or "process." Thus, the Court looks to context provided by the SBA regulations, statutes, and traditional dictionaries to determine whether Womply prepared, submitted, or processed SBA loan applications.

The Oxford English Dictionary defines prepare as "[t]o bring into a suitable condition for some future action or purpose; to make ready in advance; to fit out, equip." *Prepare*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/150447?rskey=7KQAL0&result=2#eid (last visited May 5, 2022). This definition makes sense in the context of the regulation and accurately describes Womply's actions during the initial application phase. Womply "br[ought] into a suitable condition for some future action or purpose" or "ma[d]e ready" applications for approval by Blueacorn and Capital Plus by verifying information to prevent fraud. *See* Doc. 46-1, Pl.'s App., Referral Agreement, Ex. A. At the very least, Womply prepared the applications for review by Blueacorn.[9] According to the regulation, Womply conducted business with the SBA and is an "agent" as so defined.[10]

---

(5) Such other activity as SBA reasonably shall determine.

13 C.F.R. § 103.1(b).

[9] Because the Court finds Womply prepared applications, the Court does not address whether Womply also submitted or processed loan applications.

[10] The Court also need not address the "technology services" exception raised by Womply because this determination only applies to the referral services provided by Womply. As the Court determined above, Womply's activities exceeded that of one who provides only technology services. Thus, the technology services exception is inapplicable for the SBA Fees analysis.

B.     *Whether Womply Was Required to Directly Contract with Capital Plus Financial*

Because the Court determined that Womply is an agent according to SBA regulation, the Court must next determine whether Womply is statutorily barred from recovering the SBA Fees from Capital Plus. The relevant statutory provision provides:

> An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator.[11] If an eligible recipient has knowingly retained an agent, such fees shall be paid by the eligible recipient and may not be paid out of the proceeds of a covered loan. *A lender shall only be responsible for paying fees to an agent for services for which the lender directly contracts with the agent.*

15 U.S.C. § 636(a)(36)(P)(ii) (emphasis added). The statute limits the fee an agent may collect and holds the lender responsibly for paying such fee to an agent only if "the lender directly contracts with the agent." *Id.* The supporting regulation reinforces this requirement because "[a]ny . . . Agent . . . must execute and provide to SBA a compensation agreement. Each agreement governs the compensation charged for services rendered or to be rendered to the Applicant or lender in any matter involving SBA assistance." 13 C.F.R. § 103.5(a). The "SBA provides the form of compensation agreement," Form 159, which can be found on the SBA website. *Id.*; Small Business Administration, Fee Disclosure and Compensation Agreement, https://www.sba.gov/sites/default/files/2021-11/SBAForm159-508.pdf.

Womply did not directly contract with Capital Plus and did not submit Form 159. Doc. 20, Am. Compl., ¶¶ 55–56; Doc. 61, Pl.'s Resp., 24; *see* Doc. 46-1, Pl.'s App., Referral Agreement. But Womply directly contracted with Blueacorn, *id.*, and Blueacorn directly contracted with Capital Plus. Doc. 20, Am. Compl., ¶ 6.

---

[11] SBA regulation limits "the total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan" to "[o]ne (1) percent for loans of not more than $350,000." Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3,709, (Jan. 14, 2021).

Capital Plus argues that Womply cannot recover fees from Capital Plus because Womply did not comply with the relevant statute and regulation, which caps fees for agents and requires the agent to file a compensation agreement with the SBA. Doc. 43, Defs.' Br., 19, 21. This warrants dismissal of all claims premised on an agreement to pay SBA Fees, according to Capital Plus. *Id.* at 19–21.

Womply counters that because "Capital Plus directly contracted with Blueacorn," which requires Capital Plus to pay Blueacorn, which is then required to pay Womply, so any "direct contracting" requirement between Womply and Capital Plus is irrelevant. Doc. 61, Pl.'s Resp., 22. Additionally, Womply argues that its tort claims "seek redress for breach of a duty that exists independently of any contractual obligation to pay fees" and "are not . . . subject to the 'direct contracting' requirement." *Id.* Lastly, Womply avers that the "quasi-contract and oral contract claims based on its direct relationship with Capital Plus . . . satisf[y] the 'direct contracting' requirement." *Id.* at 23.

The Court agrees with the Capital Plus Defendants that Womply may not seek payment from the Capital Plus Defendants for SBA Fees absent an agreement between Womply and Capital Plus.[12] A lender is "only . . . responsible for paying fees to an agent for services for which the lender directly contracts with the agent" and Capital Plus did not contract with Womply for the SBA Fees. 15 U.S.C. § 636(a)(36)(P)(ii). Form 159 also makes clear that an agent and lender must complete the form. Small Business Administration, Fee Disclosure and Compensation Agreement, https://www.sba.gov/sites/default/files/2021-11/SBAForm159-508.pdf ("This form must be completed and signed by the SBA Lender and the Applicant whenever an Agent is paid by either the Applicant

---

[12] This determination in no way impacts whether Womply may still seek fees from Blueacorn for their agreements.

or the SBA Lender in connection with the SBA loan application. . . . When an Agent is paid by the SBA Lender, the SBA Lender must complete this form and the SBA Lender and Applicant must both sign the form."). Further, Womply and Capital Plus did not submit Form 159 to the SBA and courts uniformly hold this precludes any recovery of SBA Fees. *Daniel T.A. Cotts PLLC v. Am. Bank, N.A.*, 2021 WL 2196636, at \*4 (S.D. Tex. Feb. 9, 2021) (listing cases). Thus, the statutory and regulatory framework forecloses Womply's claims for SBA Fees from Capital Plus, since Womply did not directly contract with Capital Plus.

C.     *The Other Claims*

As Womply points out, the Court must next determine whether Womply's other claims arise from the breach of a duty independent of the above contractual breach. *See* Doc. 61, Pl.'s Resp., 22–23. Womply brings claims for declaratory judgment, tortious interference with contracts, fraud, negligent misrepresentation, promissory estoppel, unjust enrichment, breach of contract, quantum meruit, and civil conspiracy against the Capital Plus Defendants. Doc. 20, Am. Compl., ¶¶ 116–77, 186–90. The Court will now address each claim separately.

1.     Declaratory Judgment

"Womply requests a declaration from this Court that the SBA Agent Fee Cap does not apply to fees for technology services . . . ." Doc. 20, Am. Compl., ¶ 120.

Under the Declaratory Judgment Act, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "[D]eclaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). "At a minimum, . . . the dispute must 'be "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state

of facts.'"'" *Id.* at 2115–16 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–127 (2007) (quoting *Aetna Life Ins. Co. of Hartford Conn. v. Haworth*, 300 U.S. 227, 241 (1937))).

Capital Plus urges the Court to dismiss this claim because the SBA regulatory cap also applies to the Technology Fees. Doc. 43, Defs.' Br., 22–24. Capital Plus makes four arguments. First, "the 'Technology Fee' compensated Womply for processing applications and referrals[,] . . . the same bundle of services." *Id.* at 22. Second, the Technology Fee covered services for preparing PPP applications and compensation was tied to the number of loans referred and the SBA Agent Fee Cap does not provide an exception "for 'the development' of the technology used by the agent." *Id.* at 22–23. Third, the Agreement provides for an additional post-loan Referral Fee, confirming that the Technology Fee is for preparing applications. *Id.* at 23. Fourth, the relevant SBA regulation caps the "total amount" an agent can receive for preparing a PPP loan application, including any Technology Fee. *Id.*

Womply responds that the Technology Fee covers the use of the PPP Portfolio Loan Management System, which is not assistance in preparing loan applications. Doc. 61, Pl.'s Resp., 16, Further, Womply contends the services that it provided per the Developer Order Form, such as verifying information, "are not 'preparing an application' or 'referral' of an applicant to a lender." *Id.* at 16–17. Additionally, Capital Plus's "reading [of the SBA Agent Fee Cap regulation] would . . . lead to absurd results," capping fees for a service provider if it provided technology and referral services, but not if the service provider only provided technology services. *Id.* at 19. Womply then argues, based on the history and text of the regulation, that the SBA Agent Fee Cap only applies to services that agents provide to borrowers. *Id.* at 20–21. Lastly, the SBA Agent Fee Cap only applies to the fees an agent collects from a lender and Capital Plus, not Blueacorn, was the lender so the Cap does not apply to Blueacorn, according to Womply. *Id.* at 21–22.

Before turning to the merits, the Court finds the declaratory judgment claim is independent of the SBA Fee contractual breach, so the lack of direct contracting does not preclude this claim. Further, the Court finds that there is a live controversy between the parties regarding the application of the SBA Fee Cap and the Technology Fees with a threat of harm to Womply if the SBA Fee Cap applies. *See California*, 141 S. Ct. at 2114–15.

First, the Court finds the Referral Fees and Technology Fees are for distinct services. Womply entered into two separate agreements with Blueacorn—the Developer Order Form and the Referral Agreement. *See* Doc. 46-1, Pl.'s App., Developer Order Form; Doc. 46-1, Pl.'s App., Referral Agreement. The Referral Agreement provides for a 1% Referral Fee for each referred loan. *Id.* ¶ 2.2. The Developer Order Form incorporates this Referral Fee language but adds an additional Technology Fee. Doc. 46-1, Pl.'s App., Developer Order Form, ¶ 3.4. Under the Developer Order Form with Blueacorn, "Womply shall receive the first $250 from any Lender Processing Fee, plus 1/3 of the remaining Lender Processing Fee after the $250 is subtracted." Doc. 46-1, Pl.'s App., Developer Order Form, ¶ 3.3. The Order Form further provides:

> The Technology Fee payable to Womply for any Referred Loan shall be reduced by any Referral Fee paid to Womply in respect of such Referred Loan. By way of example, if the Referred Loan has a principal amount of $50,000 and if Client receives a Lender Processing Fee of $2,500, then the Technology Fees payable to Womply shall be as follows:
>
> *Lender Fee*: $2,500
> *Referral Fee*: $500 (i.e., 1% of the value of the Referred Loan, as defined the by the PPP Loan Referral Agreement)
> *Technology Fee*: $499.99 (i.e., $250 plus 1/3 of the $2,250 Lender Processing Fee less $500 Referral Fee (paid separately))

*Id.* ¶ 3.4. Thus, while connected to each other, the Developer Order Form specifically provides for an additional Technology Fee for separate services. *See id.*

Second, under the Developer Order Form, Womply agreed to provide tax documents, bank data, identity and account verification, and access to the PPP Portfolio Management System. *Id.* at 1. Whereas under the Referral Agreement, Womply verified the email, phone number, required information for the SBA form, business activity, tax documents, identity, bank account and limits, absence of fraud, and lack of duplicate applications. Doc. 46-1, Pl.'s App., Referral Agreement, Exhibit A. Many of these tasks overlap, but Womply and Blueacorn nevertheless entered into two separate agreements for what the parties perceived, at the time of contracting, as separate services. And parties are presumed to understand the meaning of their agreements when they entered into them. 11 Williston on Contracts § 31:4 (4th ed.). Thus, Blueacorn intended to pay a Referral Fee and a separate Technology Fee.

Third, the post-loan Referral Fee does not support a finding that the Technology Fee was compensation for preparing applications. The provision in the Developer Order Form states:

> If Womply collects forgiveness information and submits such info to the SBA on behalf of the Client or the Client's lender, then the Client shall pay Womply $100 per loan. Womply will only participate in this activity if both it and the Client agree.

Doc. 46-1, Pl.'s App., Developer Order Form, ¶ 3.2. This provision provides for a separate fee, based on a separately contracted-for service that Womply provided. *See id.* Further, the provision specifies a fee for a post-referral action, not an action for preparing an application. *See supra* Section III(A) (discussing the definition of "prepare" as including "to make ready in advance."). This fee provision applied after the application was already prepared.

Fourth, the regulatory language does not foreclose a Technology Fee like the one in the Developer Order Form. The applicable regulation provides:

> Agent fees may not be paid out of the proceeds of a PPP loan. If a borrower has knowingly retained an agent, such fees will be paid by the borrower. A lender is only responsible for paying fees to an agent for services for which the lender directly

contracts with the agent. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:

a. One (1) percent for loans of not more than $350,000;
b. 0.50 percent for loans of more than $350,000 and less than $2 million; and
c. 0.25 percent for loans of at least $2 million.

The Act authorizes the Administrator to establish limits on agent fees. The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans.

Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3,709–10, (Jan. 14, 2021). The regulation limits the fee for "preparing an application for a PPP loan," but not for any other reason. *See id.* The Developer Order Form provided Blueacorn with access to technology, specifically the PPP Portfolio Management System. Doc. 46-1, Pl.'s App., Developer Order Form, 1. Further, the services provided by Womply—providing tax documents, bank data, identity and account verification—do not directly relate to a PPP loan application so these services do not prepare, or make ready, a PPP loan application for submission to the SBA.

Based on the information before the Court at this stage of litigation, the Court does not find the SBA regulation clearly precludes the collection of a Technology Fee. Therefore, the Court **DENIES** the Capital Plus Defendants' motion to dismiss the declaratory judgment claim.

2. Tortious Interference with Contracts

The elements for tortious interference with an existing contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Rev. Serv., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Womply alleges that Capital Plus "willfully and intentionally interfere[ed] with the [agreements with Blueacorn] by withholding payment from Blueacorn." Doc. 20, Am. Compl., ¶ 129.

The Court finds this claim does not depend on any contract between Womply and Capital Plus and does not turn on Womply's failure to file a Form 159. The Capital Plus Defendants allegedly caused injury to Womply by interfering with the contract between Blueacorn and Womply independent of any right to SBA Fees from Capital Plus. *See CoreALM, LLC v. Keen Fusion, Inc.*, 2018 WL 6072154, at *3 (Tex. App.—Austin Nov. 21, 2018, pet. denied). Further, Womply alleges all four elements of a tortious interference claim: (1) a contract between Womply and Blueacorn, (2) the Capital Plus Defendants interfered by withholding SBA Fees from the Account, (3) denying Womply payment from Blueacorn, and (4) resulting in over $76 million in damages to Womply. Doc. 20, Am. Compl., ¶¶ 128–30. Thus, the Court **DENIES** the Capital Plus Defendants' motion to dismiss the tortious-interference-with-contracts claim.

### 3.    Fraud

"The elements of fraud are a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990) (emphasis omitted) (citing *Stone v. Laws. Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977)).

Womply alleges that the Capital Plus Defendants made several false representations about the Joint Account and how the SBA Fees would be deposited into this account, to induce Womply to refer PPP loan applications to Blueacorn and then to Capital Plus. Doc. 20, Am. Compl., ¶¶ 132, 138. Womply further alleges that the Capital Plus Defendants never intended to provide Womply visibility of the Joint Account, did not provide visibility, and did not deposit the SBA Fees into the

account. *Id.* ¶¶ 134–37. As a result, Womply relied on these misrepresentations and sustained a loss of over $76 million. *Id.* ¶¶ 138–39.

The Capital Plus Defendants do not directly attack the fraud claim. *See* Doc. 43, Defs.' Br.; Doc. 65, Defs.' Reply, 10 (addressing the negligent misrepresentation, promissory estoppel, and oral contract claims).

The Court finds this claim sufficiently pleaded. Womply alleges that Donnelly misrepresented the facts surrounding the Joint Account and knew these statements to be false to induce Womply into contracting with Blueacorn to provide its services to Blueacorn and Capital Plus, which Womply relied to its detriment of more than $76 million. Doc. 20, Am. Compl., ¶¶ 132–39. These allegations plead the elements of a Texas common-law-fraud claim. The Court also finds this claim relies on a separate duty—"a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations"—from a right to SBA Fees. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). The Court **DENIES** the Capital Plus Defendants' motion to dismiss this claim.

### 4.    Negligent Misrepresentation

The elements for a negligent-misrepresentation claim in Texas are:

> (1) the representation is made by a defendant in the course of [its] business, or in a transaction in which [it] has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The "false information" must consist of a then-existing fact and not a promise of future conduct. *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In support of this claim, Womply realleges the same representations that Donnelly made (as discussed in the fraud claim) about the Joint Account. Doc. 20, Am. Compl., ¶¶ 137, 141. Womply further alleges that the Capital Plus Defendants never intended to provide Womply visibility of the Joint Account, did not provide visibility, and did not deposit the SBA Fees into the account. *Id.* ¶¶ 144–47. As a result, Womply relied on these misrepresentations and sustained a loss of over $76 million. *Id.* ¶¶ 148–39.

The Capital Plus Defendants argue the Court should dismiss Womply's negligent-misrepresentation claim for two reasons: (1) the "'representations' . . . are promises of future performance," and (2) Womply seeks legally impermissible benefit-of-the-bargain damages—not detrimental-reliance or out-of-pocket damages. Doc. 43, Defs.' Br., 25 (first citing *Roof Sys.*, 130 S.W.3d at 439; then citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998); and then citing *Fretz Constr. Co. v. S. Nat. Bank of Hous.*, 626 S.W.2d 478, 483 (Tex. 1981)); Doc. 65, Defs.' Reply, 10. Womply responds that it seeks "the pecuniary loss suffered" because of Donnelly's "misstatement of existing fact" and that this stems from a breach of an independent legal duty. Doc. 61, Pl.'s Resp., 22, 25 (first citing *Roof Sys.*, 130 S.W.3d at 439; then citing *Formosa Plastics*, 960 S.W.2d at 49; and then citing *D.S.A.*, 973 S.W.2d at 663–64).

The Capital Plus Defendants are correct that two of the alleged misrepresentations rely on promises of future action; however the misrepresentation about the ownership of the Joint Account relied on a then-existing fact. *See* Doc. 20, Am. Compl., ¶ 141 (alleging Defendants misrepresented the existence of the Joint Account, the SBA Fees *would be* deposited in the Joint Account, and that Womply *would be* provided visibility of the Joint Account). Either Bluacorn and Capital Plus owned the Joint Account on May 11 or they did not. Thus, the Court rejects the Capital Plus Defendants first argument.

"[T]he benefit of the bargain measure of damages is not available for a claim of negligent misrepresentation." *D.S.A.*, 973 S.W.2d at 663. Texas follows the Restatement (Second) of Torts in this area, *id.*, which reads:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
>> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>> (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

Restatement (Second) of Torts § 552B. Unlike a fraudulent-inducement claim, a negligent-misrepresentation claim must have an independent injury from the contract dispute because "[n]egligent misrepresentation implicates only the duty of *care*," while fraudulent inducement requires honesty. *D.S.A.*, 973 S.W.2d at 664. Thus, a party may not obtain benefit-of-the-bargain damages for a negligent misrepresentation but may obtain out-of-pocket damages.[13] *Id.*

Womply seeks "$76 million in fees and finance charges due under the [Blueacorn agreements]." Doc. 20, Am. Compl., ¶ 148. These damages are not "the difference between the value of that which [Womply] has parted with, and the value of that which [Womply] has received" because Womply did not expend the $76 million it seeks in damages. *See* Doc. 61, Pl.'s Resp., 25 (quoting *Formosa Plastics*, 960 S.W.2d at 49). The benefit that Womply hoped to obtain from the negotiations with Blueacorn and Capital Plus was the current "$76 million in fees and finance charges." *See* Doc. 20, Am. Compl., ¶ 148. Womply's damage calculation is for the benefit-of-the-

---

[13] "[B]enefit-of-the-bargain damages measure the difference between the value as represented and the value received," while "[o]ut-of-pocket damages measure the difference between the value the buyer has paid and the value of what he has received." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997).

bargain and is not recoverable for a negligent-misrepresentation claim. Therefore, the Court **DISMISSES** the negligent-misrepresentation claim.

  5.  Promissory Estoppel

  The elements of promissory estoppel are: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). "Damages recoverable in a case of promissory estoppel are not the profit that the promisee expected, but only the amount necessary to restore him to the position he would have been in had he not acted in reliance on the promise." *Fretz*, 626 S.W.2d at 483.

  The Capital Plus Defendants raise the same argument regarding damages that they raised for negligent misrepresentation: that Womply seeks legally impermissible benefit-of-the-bargain damages—not detrimental reliance or out-of-pocket damages. Doc. 43, Defs.' Br., 25. The Capital Plus Defendants also argue that Womply "fails to explain when Capital Plus" made the promise to pay Technology Fees "in excess of 1%." *Id.*; Doc. 65, Defs.' Reply, 10.

  Womply argues that its claim satisfies all the elements for promissory estoppel. Doc. 61, Pl.'s Resp., 25.

  Womply's Amended Complaint alleges "$76 million in fees and finances charges," but these fees are the net expected profit from the Blueacorn Agreements and are not recoverable under a claim for promissory estoppel. *See Fretz*, 626 S.W.2d at 483. Under promissory estoppel, Womply may only recover reliance damages, which "includ[e] expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 978 (5th Cir. 2014) (quoting *Hart v. Moore*, 952 S.W.2d 90, 97 (Tex. App.—Amarillo 1997, pet. denied)). Womply does not provide an estimate of its reliance damages.

*See* Doc. 20, Am. Compl. Because Womply failed to plead reliance damages, the Court **DISMISSES**

this claim. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (affirming the district

court's dismissal because plaintiff failed to allege reliance damages).

 6. Unjust Enrichment

 Unjust enrichment allows recovery "when one person has obtained a benefit from another

by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*,

832 S.W.2d 39, 41 (Tex. 1992). "The doctrine applies the principles of restitution to disputes where

there is no actual contract, based on the equitable principle that one who receives benefits that

would be unjust . . . to retain ought to make restitution." *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d

229, 246–47 (Tex. App.—Fort Worth 2007, no pet.). However, unjust enrichment arises from an

"unjust" profit, not recompense for unfortunate loss or because a beneficiary received a windfall.

*Casstevens v. Smith*, 269 S.W.3d 222, 229–30 (Tex. App.—Texarkana 2008, pet. denied).

 Womply alleges that the Capital Plus Defendants received benefits from Womply's loan

referrals, including SBA Fees, accruing interest from those SBA Fees, and access to the technology

platform for processing loans. Doc. 20, Am. Compl., ¶ 158. The Capital Plus Defendants continue

to withhold the fees owed to Blueacorn and "it would be unjust to allow [them] to retain these

benefits." *Id.* ¶¶ 161–62.

 At least two district courts in the Fifth Circuit have dismissed unjust enrichment claims for

the retention of SBA Fees when the plaintiff did not complete Form 159. *See Daniel T.A. Cotts PLLC

v. Am. Bank, N.A.*, 2021 WL 2196636, at *6 (S.D. Tex. Feb. 9, 2021); *Juan Antonio Sanchez, PC v.

Bank of S. Tex.*, 494 F. Supp. 3d 421, 440–41 (S.D. Tex. 2020). The Court finds no reason why it

should not also do the same. Just as these two courts found, the retention of SBA Fees by Capital

Plus was not "unjust" because Womply did not comply with the applicable statute and regulations

that require a compensation agreement. *Daniel T.A. Cotts*, 2021 WL 2196636, at *6 ("[Defendant's] retention of the alleged agent fees is not unconscionable because Plaintiff failed to execute the required compensation agreement."); *Juan Antonio Sanchez*, 494 F. Supp. 3d at 441 ("The Court declines to exercise its equitable powers to award Plaintiff fees when Plaintiff did not comply with the proper procedure to demonstrate its entitlement to agent fees."). Thus, the Court **DISMISSES** the unjust enrichment claim.

    7.    Breach of Contract

The elements for breach of an oral contract are: "(1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach, and (4) the plaintiff's damages as a result of the breach." *Porter-Garcia v. Travis L. Firm, P.C.*, 564 S.W.3d 75, 87 (Tex. App.— Houston [1st Dist.] 2018, pet. denied).

Capital Plus argues that the oral contract fails to satisfy the statutory and regulatory requirements for direct contracting. Doc. 43, Defs.' Br., 19. Further, the oral contract lacks "mutuality of obligation, consideration, and acceptance by either party," according to the Capital Plus Defendants. *Id.* at 25 (citing *Ironshore Eur. DAC v. Schiff Harding, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007)).

Womply contends its allegations satisfy the "direct contracting" requirement because "Capital Plus concedes that Womply brings quasi-contract and oral contract claims based on its direct relationship with Capital Plus." Doc. 61, Pl.'s Resp., 23.

Womply alleges that it entered into an oral contract with Capital Plus regarding visibility into the Joint Account. Doc. 20, Am. Compl., ¶¶ 165–67. Womply performed under the contract, but Capital Plus breached the contract, causing Womply over $76 million in damages, according to Womply. *Id.* ¶¶ 169–71. These allegations do not state a claim for a breach of a duty independent

of a contractual breach for the SBA Fees. Womply does not identify an independent duty that the Capital Plus Defendants supposedly breached. *See* Doc. 61, Pl.'s Resp. Therefore, the Court finds this claim premised on the SBA Fees, which requires a direct contract between Womply and Capital Plus. The Court **DISMISSES** this claim.

8.     Quantum Meruit

The elements of a quantum meruit claim are:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.

*Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018).

In the Amended Complaint, Womply alleges that it referred 86,521 PPP loan applications to Capital Plus, which earned fees and interest on those loans, in expectation of compensation that Capital Plus never provided. Doc. 20, Am. Compl., ¶¶ 173–76. The Capital Plus Defendants argue that Womply failed to directly contract with Capital Plus, as required by the applicable statute and regulation, so the claim should be dismissed. Doc. 43, Defs.' Br., 20. Womply asserts that it was not required to directly contract with Capital Plus. Doc. 61, Pl.'s Resp., 23.

Just like the unjust enrichment claim, the Court finds this claim seeks the SBA Fees from Capital Plus that required Womply to directly contract with Capital Plus. Because Womply did not directly contract with Capital Plus, Womply cannot seek these fees from Capital Plus. Accordingly, the Court **DISMISSES** this claim.

9.     Civil Conspiracy

The elements for civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Conspiracy is a derivative tort that relies on an underlying tort for recovery. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Civil conspiracy holds co-conspirators vicariously liable for the acts of fellow co-conspirators. *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 140–42 (Tex. 2019).

The Capital Plus Defendants do not directly address the civil conspiracy claim. *See* Doc. 43, Defs.' Mot.

The Court finds this claim adequately pleaded. Womply alleges a conspiracy between Blueacorn, Calhoun, and the Capital Plus Defendants to commit unlawful and tortious acts against Womply that resulted in $76 million in damages. Doc. 20, Am. Compl., ¶¶ 187–90. Also, two of Womply's tort claims survive the Capital Plus Defendants' motion to dismiss. Therefore, the Court **DENIES** the motion to dismiss this claim.

D.     *Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of Womply's allegations, the Court deems it appropriate to provide it one chance to amend its pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). This second amended complaint shall be filed within **THIRTY (30)** days of the date of this Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Capital Plus Defendants' Motion to Dismiss (Doc. 42). Specifically, the Court **DISMISSES WITHOUT PREJUDICE** counts 4, 5, 6, 7, and 8. Further, the Court **DENIES** the Motion for counts 1, 2, 3, and 9. Within **THIRTY (30)** days of the date of this Order, Womply may file a second amended complaint as permitted in Part D, *supra*. From the date of Womply's filing, Defendants have twenty-one (21) days to file an answer or motion to dismiss pursuant to Federal Rule of Civil Procedure 12.

SO ORDERED.

SIGNED: May 11, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE